United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 24, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CONN'S, INC., *et al.*[1] | Case No. 24-33357 (ARP) |
| Debtors. | (Joint Administration Requested) |
| | (Emergency Hearing Requested) |

### INTERIM ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, (IV) AUTHORIZING CUSTOMER BONUSES FOR NON-INSIDER EMPLOYEES OF CLOSING STORES, AND (V) GRANTING RELATED RELIEF

(Related to Docket No. ___)

Upon the motion ("Motion")[2] of Conn's, Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (a) authorizing the Debtors to assume and perform under the Consulting Agreement, attached hereto as **Exhibit 1**; (b) authorizing the Debtors to conduct closings or similarly themed sales (the "Store Closing Sales") at the Debtors' retail locations (the "Closing Stores") in accordance with the terms of the Store Closing Procedures attached hereto as **Exhibit 2**, with any such related sales to be free and clear of all liens, claims and encumbrances (collectively, the "Encumbrances"); (c) approving modifications to certain customer programs, including the return policy and acceptance of gift

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Conn's, Inc. (2840), Conn Appliances, Inc. (0706), CAI Holding, LLC (2675), Conn Lending, LLC (9857), Conn Credit I, LP (0545), Conn Credit Corporation, Inc. (9273), CAI Credit Insurance Agency, Inc. (5846), New RTO, LLC (6400), W.S. Badcock LLC (2010), W.S. Badcock Credit LLC (5990), and W.S. Badcock Credit I LLC (6422).  The Debtor's service address is 2445 Technology Forest Blvd., Suite 800, The Woodlands, TX 77381.

[2]   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

certificates, resulting from the Store Closing Sales; (d) authorizing the sale or disposition of the Store Closing Assets free and clear of Encumbrances; (e) authorizing the abandonment of certain burdensome Merchandise, FF&E, and personal property; and (f) granting related relief, each as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, the Court finds as follows:

A.      The findings and conclusions set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors have sound business reasons for seeking to continue their conduct of the Store Closing Sales, assume and perform under the Consulting Agreement, and adopt the Store Closing Procedures on an interim basis subject to the Final Hearing (defined below), as set forth in the Motion and at the Hearing, and assumption of

the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

C.     The continued conduct of the Store Closings in accordance with the Store Closing Procedures will provide an efficient means for the Debtors to dispose of the Store Closing Assets.

D.     The Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith, and from arm's-length bargaining positions.

E.     The Debtors' assumption of the Consulting Agreement is a sound exercise of the Debtors' business judgment.

F.     The sale of the Closing Stores Assets through the continued conduct of the Store Closing Sales in the Closing Stores is in the best interest of the Debtors' estates.

G.     The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

H.     The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

I.     The entry of this Interim Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein.

**IT IS HEREBY ORDERED THAT**:

1.     Omitted.


2.     The final hearing on the Motion shall be held on _____, 2024 at _____ (prevailing Eastern Time) (the "Final Hearing").  Any objections or responses to entry of the proposed final order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2024.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter a final order without need for the Final Hearing.

3.     The Debtors' implementation and effectuation of the Store Closing Sales is approved as set forth herein, pursuant to section 105(a) and 363(b) of the Bankruptcy Code.

4.     The Debtors are authorized, pursuant to sections 105(a), 363(b), and 365 of the Bankruptcy Code and without further notice or relief from the Court except as provided herein, to take any and all actions consistent with this Order that are necessary or appropriate in the exercise of their reasonable business judgment to implement the Store Closing Sales.

5.     The Debtors are authorized to fund and make payments under the Store Closing Bonus Plan; provided, however, that such authority shall not extend to any Insider without further order of this Court.

6.     The Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Interim Order.

7.     Notwithstanding anything to the contrary contained in the Motion or this Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the DIP Motion filed substantially contemporaneously with the Motion (the "DIP Orders"), including compliance with any approved budget or cash flow forecast in connection therewith (and any permitted variances thereto) and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders or any approved budget set forth therein.

8.     To the extent of any conflict between this Interim Order, the Store Closing Procedures, any Side Letter (as defined below), and the Consulting Agreement, the terms of any Side Letter shall control over this Interim Order, this Interim Order shall control over all other documents and the Store Closing Procedures shall control over the Consulting Agreement.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective upon its entry.

**I.      Authority to Assume and Perform under the Consulting Agreement.**

11.      The Debtors are authorized to assume and perform under the Consulting Agreement pursuant to sections 363 and 365 of the Bankruptcy Code, on an interim basis including: (a) making payments to the Consultant of its Fees, reimbursements of costs and expenses, and, subject to the provisions contained herein, payments of indemnification amounts (if any), in each case, as required by the Consulting Agreement without the need for any application of the Consultant or a further order of the Court and (b) allowing the sale of Additional Goods.

12.      Consultant's fees and expenses shall be paid from the gross proceeds of the Store Closing Sales but shall be subject to the terms of the Consulting Agreement itself, including as to any expense budget attached thereto.

13.      Consultant is hereby granted a first-priority security interest and lien upon (i) the Additional Goods and (ii) Consultant's portion of the Additional Goods proceeds, which security interest shall be deemed perfected on an interim basis pursuant to this Interim Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Consultant is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Consultant's interest in the Additional Goods (and any proceeds thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and Consultant's security interest in such Additional Goods and Consultant's portion of the Additional Goods proceeds). Notwithstanding anything in Paragraph

7 to the contrary, as part of each weekly reconciliation, the Debtors shall turn over all proceeds from the sale of Additional Goods to the Consultant, net of any fee payable to the Debtors pursuant to the Consulting Agreement.  For the avoidance of doubt, the turn over of the Additional Goods proceeds shall not be considered disbursements for purposes of calculating quarterly fees payable by the Debtors pursuant to 28 U.S.C. § 1930(a)(6).

14.     Subject to the restrictions set forth in this Interim Order and the Store Closing Procedures, the Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Store Closing Sales; and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Store Closing Sales prior to the date of this Interim Order, hereby are approved and ratified.

15.     The Debtors shall indemnify the Consultant under the terms of the Consulting Agreement, as modified and limited by this Order.  Notwithstanding the foregoing, the Consultant is not indemnified for, and may not receive any contribution or reimbursement with respect to any matter that arises from the Consultant's gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of fiduciary duty.

16.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these chapter 11 cases, the Consultant believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Consulting Agreement (as modified by this Order), including the advancement of defense costs, the Consultant must file an application

therefor in this Court, and the Debtors may not pay any such amounts to the Consultant before the entry of an order by this Court approving the payment. All parties in interest shall retain the right to object to any demand by the Consultant for indemnification, contribution, or reimbursement.

II.    **Authority to Engage in Store Closing Sales.**

17.    The Debtors are authorized, but not directed, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue and immediately conduct the Store Closing Sales at the Stores in accordance with this Interim Order, the Store Closing Procedures and the Consulting Agreement.

18.    The Store Closing Procedures are approved in their entirety on an interim basis.

19.    The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Interim Order and the Store Closing Procedures.

20.    All persons and entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Interim Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or, if applicable, the Consultant.  Debtors shall immediately serve a copy of this Interim Order on any party alleged to be in possession of said Merchandise or FF&E.

21.    Subject to Section IV of this Interim Order, neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Store Closing Sales and to take the related actions authorized herein.

III.     **Conduct of the Store Closing Sales.**

22.     All newspapers and other advertising media in which the Store Closing Sales may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors or the Consultant to conduct the Store Closing Sales and the sale of Merchandise, FF&E and Additional Goods pursuant to the Store Closing Procedures and, if applicable, Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise, FF&E, and Additional Goods in the manner contemplated by and in accordance with this Interim Order, the Store Closing Procedures, and, if applicable, the Consulting Agreement.

23.     Subject to (i) the Dispute Resolution Procedures (as defined below) provided for in this Interim Order and (ii) any Side Letter, the Debtors and the Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closing Sales without necessity of further order of this Court as provided in the Consulting Agreement or the Store Closing Procedures, including, but not limited to, advertising the sale as a "store closing," "going out of business," "sale on everything," "everything must go," or other mutually agreed upon themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of sign-walkers, A-Frames and street signage.

24.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, A-Frames, banners, and other advertising to the sale of the Merchandise, FF&E and Additional Goods, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, A-Frames, banners, or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually,

any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (a) the Final Hearing or (b) within five business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

25.     Nothing in the Consulting Agreement, the Store Closing Procedures or this Interim Order releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order.

26.     Except as expressly provided in the Consulting Agreement, the sale of the Merchandise, FF&E and Additional Goods shall be conducted by the Debtors notwithstanding any restrictive provision of any lease, sublease, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of leases, abandonment of assets (which is hereby authorized pursuant to section 554 of the Bankruptcy Code), or "going dark" provisions.  The Debtors and/or the Consultant, on the one hand, and dealers and landlords of the Stores, on the other hand, are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures without further order of the Court, and such Side Letters shall be binding as among the Debtors and/or the Consultant, on the one hand, and dealers and any such landlords, on the other hand.  Upon request (which may be by email), copies of any Side Letters will be provided to (i) the U.S. Trustee; (ii) JP Morgan Chase Bank, N.A. and counsel thereto; (iii) BRF Finance Co., LLC and counsel thereto; (iv) Stephens Investments Holdings LLC and counsel thereto; and/or (v) any statutory committee of unsecured creditors at

such point as to provide the reasonable opportunity to object; provided that such party is subject to or agrees to become bound by reasonable confidentiality obligations to the extent requested.

27.     Except as expressly provided for herein or in the Store Closing Procedures, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers and A-Frames) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, or creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court (other than in the Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, dealers, or the landlords at the Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

28.     All sales of Store Closing Assets shall be "as is" and final.  However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

29.     The Consultant shall accept return of any goods that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for

a full refund, provided that the consumer must return the merchandise within the time period proscribed by the Debtors' return policy that was in effect when the merchandise was purchased, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect, which goods shall not be resold by the Debtors.

30.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultant shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Consulting Agreement.  This Interim Order does not enjoin, suspend, or restrain the assessment, levy or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

31.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell, and all sales of Store Closing Assets, whether by the Consultant or the Debtors, shall be, free and clear of any and all of any liens, claims, encumbrances, and other interests; provided, however, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Store Closing Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closing Assets, subject to any claims and defenses that the Debtors

11

may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

32.     Neither the Store Closing Procedures, Consulting Agreement, nor this Interim Order authorize the transfer or sale of personal identifying information (which means information which alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number ("PII") of any customers or employees unless such sale or transfer is permitted by the Debtors' privacy policy and state, provincial or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws"). The foregoing shall not limit the Consultant's use of the Debtors' customer lists and mailing lists in accordance with the Consulting Agreement solely for purposes of advertising and promoting the Sales.  To the extent that the Debtors propose to sell or abandon FF&E which may contain PII or confidential information about the Debtors' employees and/or customers, the Debtors shall cause the removal of the PII from such items of FF&E before such sale or abandonment.

33.     The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Store Closing Assets among the Closing Stores.  The Consultant is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement, provided that, to the extent prohibited by applicable law, the Debtors are not authorized to abandon, and the Debtors are directed to remove and properly dispose of, any hazardous materials defined under applicable law of the jurisdiction

in which the materials are located from any leased premises as and to the extent required by applicable law of the jurisdiction in which the leased premises lies.

34.     Notwithstanding this or any other provision of this Interim Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from bidding on the Debtors' assets not subject to the Consulting Agreement, pursuant to a consulting agreement, or otherwise ("Additional Assets").   The Consultant and/or its affiliates are hereby authorized to bid on and guarantee or otherwise acquire such Additional Assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee, transaction or acquisition is approved by separate order of this Court and provided further that the rights of the U.S. Trustee and all other parties in interest to object to any guarantee, transaction or acquisition are fully preserved.

**IV.     Dispute Resolution Procedures with Governmental Units.**

35.     Nothing in this Interim Order, the Consulting Agreement, or the Store Closing Procedures, releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order.   Nothing contained in this Interim Order, the Consulting Agreement, or the Store Closing Procedures shall in any way (a) diminish the obligation of any entity to comply with environmental laws or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code.   The Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and

consumer protection laws, including local laws, regulations, ordinances, or police powers of general applicability regarding matters such as regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this Interim Order, the Consulting Agreement or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise, pursuant to paragraph 31 herein. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

36.    To the extent that the sale of Store Closing Assets is subject to Applicable Sale Laws, including any federal, state, or local statute, ordinance, or rule, or licensing requirement directed at regulating "store closings," "going out of business" sales, similar inventory liquidation sales, or bulk sale laws, including laws restricting safe, professional, and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers and A-Frames solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closing Assets, or any similar laws, the dispute resolution procedures in this section shall apply:

a.  Provided that the Store Closing Sales are conducted in accordance with the terms of this Interim Order and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Applicable Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order and the Store Closing Procedures without the necessity of further showing compliance with any Applicable Sale Laws.

b.  Within two business days after entry of this Interim Order, the Debtor shall serve copies of this Interim Order, the Consulting Agreement and the Store Closing Procedures via email, facsimile, or regular mail, on the following: (i) the United States Trustee; (ii) the state attorney general's office for each state where the Store Closing Sales are being held; (iii) the county consumer protection agency or similar agency for each county where the Store Closing Sales will be held; (iv) the division of consumer protection for each state where the Store Closing Sales will be held; (v) the chief legal counsel for the local jurisdiction; and (vi) the landlords for the stores.

c.  To the extent there is a dispute arising from or relating to the Store Closing Sales, this Interim Order, the Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Applicable Sale Laws (a "Reserved Dispute"), this Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten (10) days following entry of this Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (which may be by e-mail) to counsel for the Debtors so as to ensure delivery thereof within one business day thereafter. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.  In the event a Dispute Resolution Motion is filed, nothing in this Interim Order shall preclude the Debtors, a landlord, or other interested party from asserting (i) that the provisions of any Applicable Sale Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Interim Order nor the conduct of the Debtors pursuant to this Interim Order, violates such Applicable Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Interim Order, absent further order of this Court. This Court grants authority for the Debtors and the Consultant to conduct the Store Closing Sales pursuant to the terms of this Interim Order, the Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Applicable Sale Laws or the lack of any preemption of such Applicable Sale

Laws by the Bankruptcy Code.  Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e.  If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is an Applicable Sale Law, and subject to any provisions contained in this Interim Order related to the Applicable Sale Laws, then any party to that dispute may utilize the provisions hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is an Applicable Sale Law shall be made *de novo*.

37.  Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 31 and 32 shall apply), no person or entity, including, but not limited to, any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs or the use of sign walkers) of the Store Closing Sales, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding, the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

38.  Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these Chapter 11 Cases constitute a default under a lease or provide a basis to terminate the lease; provided, that the Store

16

Closing Sales are conducted in accordance with the terms of this Interim Order and the Store Closing Procedures.

39.     Subject to Paragraphs 31 and 32 above, each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any governmental unit shall be required, nor shall the Debtors be required to post any bond, to conduct the Store Closing Sales.

40.     Provided that the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Consulting Agreement, and the Store Closing Procedures, and in light of the provisions in any applicable laws that exempt court-ordered sales from their provisions, the Debtors and the Consultant shall be presumed to be in compliance with any Applicable Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order and the Store Closing Procedures without the necessity of further showing compliance with any such Applicable Sale Laws.

41.     To the extent that between the Petition Date and the date of the Final Hearing there is Reserved Dispute, the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute which such Reserved Dispute will be heard at the Final Hearing, absent a party obtaining expedited relief.  Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised with respect to a Reserved Dispute.  Any Governmental Unit may assert a Reserved Dispute by sending a written notice (which may be by e-mail) explaining the nature of the dispute to: (a) the Debtors, Attn: Legal Dept.; (b) proposed counsel to the Debtors, Sidley Austin, LLP, Attn.: Duston McFaul (dmcfaul@sidley.com), Jackson Garvey (jgarvey@sidley.com), and Michael Sabino

(msabino@sidley.com); (c) the United States Trustee for the Southern District of Texas, Attn.: Jayson B. Ruff (jayson.b.ruff@usdoj.gov); (d) counsel to any statutory committee appointed in these Chapter 11 Cases; (e) the Consultant, Attn: Timothy J. Shilling (tshilling@brileyfin.com) and Rebecca Hollander (rhollander@brileyfin.com) and (f) any affected landlord and their counsel of record (if known).

## V.    Consumer Provisions.

42.    For the first 14 days following the Petition Date, the Debtors shall accept returns of merchandise sold by the Debtors in the ordinary course prior to any Store Closing Sales; provided that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered in the Store Closing Sales; provided, further, that (a) returns of items sold on a "final" basis, including items sold in the Initial Closing Stores on a "final" basis pursuant to this Order, shall not be accepted, and (b) gift certificates may not be returned for cash.

43.    Notwithstanding anything herein, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Debtors shall accept return of any goods purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund; provided, that the consumer must return the merchandise within 30 days of their purchase, the consumer must provide a receipt for the purchase to the Debtors, and the asserted defect must in fact be a "latent" defect, which goods shall not be resold by the Debtors.

44.    For the first fourteen (14) days following the Petition Date, the Stores will continue to accept the Debtors' validly-issued gift certificates issued prior to the Store Closing Sales for in-

18

person (and only in person) purchases in the ordinary course of business.  After the expiration of the 14 days to utilize gift certificates in-store, all such validly-issued gift certificates will no longer be accepted by the Debtors and deemed to have no remaining value.  Notwithstanding any policy or state law to the contrary, the gift certificates are not redeemable for cash at any time.

45.     The Debtors and the Consultant shall post conspicuous signs in the Stores, including at their cash registers, explaining the above "consumer provisions" to customers, including the return policies and gift certificates policy, which shall remain posted throughout the duration of the Store Closing Sales.  In addition, the Debtors will post notice of the changes to gift certificates and customer programs on the Debtors' website.

**VI.     Other Provisions.**

46.     The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against the Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

47.     Within 30 days of conclusion of the Store Closing Sales, the Debtors shall (a) file with the Court a summary report of the store closing process that will include (i) a list of the stores closed and (ii) gross revenue from the Store Closing Assets sold, and (b) file with the Court and serve on the U.S. Trustee and any statutory committee report showing payment of the Consultant's fees, setting forth detail and information regarding the calculation of such fees paid to the Consultant and expenses reimbursed to the Consultant.

48.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Interim Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the use of banners, sign-walkers, and A-frame advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive

manner, (b) any claim of or against the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closing Sales, (c) any other disputes related to the Store Closing Sales, and (d) to protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests in or to the Store Closing Assets and/or the Additional Agent Merchandise. No such parties or person shall take any action against the Debtors, the Consultant, the landlords or the Store Closing Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

49.     Nothing in this Interim Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Any payment made pursuant to this order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

50.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

51.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this order.

52.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order.

53.  The hearing on the final order will be on August 20, 2024.  Any objections are due on August 14, 2024.

   Signed: July 24, 2024

Alfredo R Pérez
United States Bankruptcy Judge

**<u>Exhibit 1</u>**

**Consulting Agreement**

DocuSign Envelope ID: C428FBE4-0A83-459F-B56F-AAF619212DED

## CONSULTING AGREEMENT

This Consulting Agreement (collectively with all Exhibits hereto, the "Agreement") is made as of **June 27, 2024**, by and between **Conn Appliances, Inc.,** a Texas corporation ("Merchant"), and **B. Riley Retail Solutions, LLC**, a California limited liability company ("Consultant" and together with Merchant, the "Parties" and each a "Party").

## RECITALS

WHEREAS, Merchant operates retail stores and desires that Consultant act as Merchant's Consultant for the limited purposes of (i) selling all of the Merchandise (as hereinafter defined) from Merchant's retail store locations, factories, warehouses, distribution centers, corporate headquarters, and/or eCommerce sites listed on **Exhibit A** attached hereto (each individually a "Store," and collectively the "Stores"), which list may be amended by Merchant in writing from time to time (including by adding or removing Stores), by means of a "store closing", "location closing", "everything on sale", "everything must go", or similar themed sale, as agreed between the Parties in writing, and (ii) disposing of the FF&E (defined below) in the Stores, in each case on the terms and conditions set forth in this Agreement (the "Sale").

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**Section 1.     Appointment of Consultant**

Effective as of the date hereof, Merchant hereby appoints Consultant, and Consultant hereby agrees to serve, as Merchant's exclusive agent for the limited purpose of conducting the Sale and assisting Merchant in the sale of the Merchandise and FF&E (each as defined below) in accordance with the terms and conditions of this Agreement. Subject to the above, and to Merchant's prior approval of any sale signage and advertising messaging, Consultant shall be authorized to advertise the Sale as a "store closing", "location closing", "everything on sale", "everything must go", or similar-themed sale approved in writing by Merchant.

**Section 2(a).     Merchandise**

As used in this Agreement, "Merchandise" means all first quality goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date (defined below) or delivered thereto after the Sale Commencement Date pursuant to the terms of this Agreement. "Merchandise" excludes (1) goods that belong to sublessees, licensees, or concessionaires of Merchant, as identified by Merchant prior to the Sale Commencement Date; (2) FF&E (defined below) and improvements to real property that are located in the Stores; (3) damaged or defective goods; (4) goods held by Merchant on memo, on consignment, or as bailee as identified by

1

DocuSign Envelope ID: C428EBE4-0A83-459F-B56F-AAF619212D5D

Merchant prior to the Sale Commencement Date (defined below); and (5) gift cards (third party and Merchant branded).

## Section 2(b).  FF&E

As used in this Agreement, "FF&E" means the furniture, furnishings, trade fixtures, machinery, equipment, office supplies, supplies, conveyor systems, racking, rolling stock, and other tangible personal property, including raw materials, owned by Merchant and located in the Stores.

## Section 3.  Sale Term

The Sale shall commence on or about **June 26th, 2024**, or such other date as agreed upon by Merchant and Consultant with respect to each store (the "Sale Commencement Date"), and conclude no later than **September 30th, 2024** (the "Sale Termination Date"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Sale at any Store(s) prior to the Sale Termination Date. The date on which the Sale has concluded at all of the Stores is the "Sale Termination Date" and the period between the Sale Commencement Date and the Sale Termination Date, inclusive, is the "Sale Term". To the extent that the Sale in one or more Stores is delayed or interrupted because such Store(s) is required to be closed due to the issuance of an order, rule, restriction, recommendation or regulation by a federal, state or local government agency, or similar regulatory or authoritative agency that may be imposed on any aspect of Merchant's ability to operate the Stores in response to any health-related outbreak or pandemic ("Health Regulations"), the Sale Termination Date as to the affected Store may be extended by the time period for which the Sale was delayed or interrupted by the agreement of the Parties. At the conclusion of the Sale for each Store, Consultant shall surrender the premises for such Store to Merchant in broom clean condition with any unsold FF&E to be left in place at the Stores.

## Section 4.  Project Management

(A)  Consultant's Undertakings

During the Sale Term, Consultant shall, in collaboration with Merchant: (i) provide qualified supervisors (the "Supervisors") engaged by Consultant to oversee the Sale and management of the Stores in an effort to maximize revenue and sell all of the Merchandise prior to the end of the Sale; (ii) determine appropriate point-of-sale and external advertising, subject to the reasonable advance approval of Merchant; (iii) determine appropriate discounts of Merchandise, staffing levels, and appropriate bonus and incentive programs, if any, for the Stores' employees, each subject to the reasonable advance approval of Merchant; (iv) oversee display of Merchandise for the Stores; (v) evaluate sales of Merchandise by category, provide sales reporting (but only if, and to the extent that, Merchant provides Consultant access to the point of sale data in the normal course), and monitor expenses; (vi) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (vii) to the extent necessary, assist Merchant in obtaining any required permits and governmental consents required to conduct the Sale; (viii) price, market, and sell the FF&E on behalf of Merchant; and (ix) provide such other related services

deemed necessary or appropriate by Merchant and Consultant, including but not limited to arranging wholesale sales of the Merchandise.

Merchant shall be responsible for all reasonable costs and expenses incurred by Consultant in connection with the sale of FF&E in accordance with a mutually agreed budget to be determined at a later time; for the sake of clarity, such expenses are not included in the Expense Budget attached hereto as **Exhibit B**. For the avoidance of doubt, Consultant reserves the right to amend Exhibit B to reflect changes in the Sale Term for any Store. Consultant shall have the right to abandon at the Stores any unsold FF&E. Unless otherwise agreed to by Merchant, the sale of the FF&E in each Store shall conclude at the same time as Merchandise Sales conclude.

The Parties expressly acknowledge and agree that Merchant shall have no liability (other than reimbursing Consultant for the cost of supervision as an expense hereunder) to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination, or any other liability arising from Consultant's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

The Parties further acknowledge that Consultant does not warranty or guarantee that it will be able to assist Merchant in obtaining all of the permits and governmental consents required to conduct the Sale, and Consultant shall have no liability to Merchant or any permitting or governmental agencies for the payment of any fines, costs or assessments that may be charged to Merchant or Consultant to the extent that any such required permits or governmental consents are not properly or timely obtained.

(B)     Merchant's Undertakings

During the Sale Term, Merchant shall (i) be the employer of the Store's employees, other than the Supervisors; (ii) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of Merchant; (iii) prepare and process all tax forms and other documentation; (iv) collect all sales taxes and pay them to the appropriate taxing authorities; (v) use reasonable efforts to cause Merchant's employees to cooperate with Consultant and the Supervisors; (vi) execute all agreements determined by Merchant and/or Consultant to be necessary or desirable for the operation of the Stores during the Sale; (vii) arrange for the ordinary maintenance in order to maintain in good working order all point-of-sale equipment, HVAC systems, other mechanical devices and overall facilities reasonably required to allow for the conduct of the Sale and operation of the Stores; (viii) provide peaceful use and occupancy of, and full access (including reasonable before and after hours access and normal utilities/phone service) to, the Stores, for the purpose of preparing for, conducting, and completing the Sale, and performing its obligations under this Agreement; and (ix) with Merchant's consent, Consultant shall have access, right, and ability to use, until the Sale Termination Date, the trade names, logos, e-mail lists, mailing lists, customer lists, including wholesale customer lists, social media sites such as Facebook, and Twitter relating to and used in connection with the operation of the e-Store, solely for the purposes of advertising the Sale, selling Merchandise and FF&E, and otherwise conducting the Sale in accordance with the terms of the Agreement.

DocuSign Envelope ID: C428EBE4-0A83-459F-B56F-AAF619212DFD

Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including internal payroll processing, MIS services, cash and inventory reconciliation, data processing and reporting, email preparation and distribution, information technology updates, functionality, and maintenance, and accounting, all at no cost to Consultant.

Consultant shall have no liability to, and Merchant shall indemnify and hold Consultant harmless from, any claim by or on behalf of Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Consultant.

The Parties acknowledge the ongoing nature of the COVID-19 pandemic, as well as other emerging infectious diseases and health-related outbreaks, and that local, state and national laws and responses are continuously developing, often in unpredictable ways. Merchant hereby agrees that, while Consultant will fully cooperate with Merchant to adhere to any health regulations, the responsibility and expense of complying with any such laws, regulations, or orders, including their enforcement and implementation, shall be the sole responsibility of Merchant. Examples of such restrictions, regulations or recommendations may include, without limitation: (i) providing protective gear (such as masks, sanitizers, and similar items) aimed at reducing the spread of the virus to Merchant's employees, customers, vendors, etc.; (ii) implementing physical restrictions with regard to Store operations, including monitoring the number of customers allowed into a Store at any given time; and (iii) enforcing daily cleaning and sanitizing procedures at the Stores. Merchant and its employees shall be solely responsible to facilitate, enforce, and implement any such restrictions or regulations, at Merchant's sole cost and expense.

**Section 5.     The Sale**

All sales of Merchandise and FF&E shall be made on behalf of, and solely in the name of, Merchant. Consultant does not have, nor shall it have, any right, title, or interest in Merchandise or FF&E. All sales of Merchandise or FF&E shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.

**Section 6.     Consultant Fee and Expenses in Connection with the Sale**

(A)     Gross Proceeds.

With respect to Merchandise or FF&E, as applicable, that is sold through the Sale, whether sold at retail or wholesale, "Gross Proceeds" means the sum of all gross proceeds thereof (including, as a result of the redemption of any gift card, gift certificate, merchandise credit, or loyalty vouchers (i.e., $10 off) (collectively, "Gift Cards") as well as wholesale sales to third parties) during the Sale Term, after the application of all discounts and net only of sales taxes.

During the Sale Term, Merchant will allow customers to elect to take advantage of either (i) the discounts afforded to customers in connection with Merchant's loyalty/membership program benefits and/or Merchant's coupons that are valid at the time of sale (collectively, "Merchant Discounts") or the then-prevailing discounts being offered. For the avoidance of doubt; Merchant will not allow customers to apply both forms of discounts at the time of purchase, on a cumulative basis. Merchant will accept Gift Cards and Merchant Discount for the first thirty (30) days of the Sale Term. For the avoidance of doubt, during the Sale, Merchant shall not allow its customers to purchase merchandise using Merchant's inhouse credit programs, aka Conn's "YesMoney" or allow purchases using Merchant's lease to own program, aka "Improvement Financial". Third party financing offered by Synchrony, American First Finance ("AFF") and other third-party lease-to-own providers will continue to be offered during the Sale Term.

(B)   Consultant's Fee

   a. As consideration for its services under this Agreement, Merchant shall pay to Consultant a fee equal to a percentage of all Gross Proceeds of Merchandise and FF&E, in accordance with the fee structure below, each calculated from the first dollar recovered:

   i. For the sale of Merchandise during the Sale, Merchant shall pay Consultant a base fee ("Base Fee") based upon gross recoveries on cost as set forth below:

| Consultant's Fee | Gross Recovery on Cost Thresholds (calculated as Gross Proceeds divided by cost of Merchandise sold) |
|---|---|
| 1.75% | Below 105% of Cost |
| 2.0% | Between 105.1% and 109.9% of Cost |
| 2.25% | 110% of Cost or More |

   ii. For the sale of FF&E during the Sale, a fee equal to fifteen percent (15.0%) of all Gross Proceeds of FF&E sales ("FF&E Fee").

"Cost Value" shall mean the unit cost set forth in the following file "Store Retail Data", "Store Data v2", or any updated files (subject to the Parties' consent, email being sufficient):

Calculations for Consultant's Fees shall exclude customers' purchases of (i) merchandise delivery costs, (ii) Repairs Service Agreements, and (iii) additional product warranties.

(C)   Gross Rings

For purposes of calculating Gross Proceeds, the Base Fee, and FF&E Fee, the Parties shall use the "Gross Rings" method, wherein Consultant and Merchant shall jointly keep (i) a strict

count of gross register receipts less applicable sales taxes, (ii) cash reports of sales within each Store, and (iii) invoices of sales made through wholesale channels, if any. Register receipts show for each item sold the retail price (as reflected on Merchant's books and records) for such item, and the markdown or other discount granted in connection with such sale. All such records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

(D)     Expenses

Merchant shall be responsible for all costs and expenses of the Sale, including but not limited to all Store-level operating expenses. To control the Sale expenses, Merchant and Consultant have established a budget (the "Expense Budget") of certain expenses in connection with the Sale, including payment of the costs of supervision (including Supervisors' wages, fees, travel, and deferred compensation), advertising costs, and Consultant's corporate travel/legal expenses, which aggregate sum Consultant shall not exceed absent Merchant's prior written consent. The Expense Budget is attached hereto as **Exhibit B**. The Expense Budget may only be modified by mutual written agreement of the Parties. The Parties acknowledge that the Expense Budget will be updated in connection with any modification of the lists of Stores and agree to cooperate in good faith with respect to such updates.

(E)     Advance on Expenses

As an advance against the expenses of the Sale, and to secure payment of the same and any other amounts due Consultant, no later than one week before the Sale Commencement Date, Merchant shall pay to Consultant a deposit in the amount of **two-hundred and fifty thousand dollars ($250,000.00)**, which shall be applied against Consultant Expenses, Base Fee, and/or FF&E Fee at the end of the Sale Term and, to the extent not expended when the Sale concludes (assuming Consultant claims no other amounts are due under the Agreement to Consultant and no other damages were incurred), shall be returned to Merchant as part of the Final Reconciliation (defined below) or such other time that Merchant and Consultant mutually agree.

(F)     Reconciliation

Consultant shall submit invoices to Merchant on a weekly basis setting forth (i) the Base Fee and/or FF&E Fee earned during the preceding week, (ii) any expenses incurred by Consultant during the preceding week for which Consultant is entitled to reimbursement, and (iii) the Additional Goods Fee. No later than five (5) days after submission, the Base Fee, FF&E Fee, and any expenses shall be paid in full by Merchant via wire transfer to Consultant.

The Parties shall complete a final reconciliation and settlement of all amounts payable to Consultant under this Agreement (including, without limitation, Expense Budget items and fees) (the "Final Reconciliation") no later than forty-five (45) days following the Sale Termination Date for the last Store. The Parties shall cooperate in good faith to resolve any disputes with regard to such reconciliation.

**Section 7.**     **Additional Goods**

(A)     Subject to the written agreement of Merchant, Consultant may deliver to any Store certain items of merchandise (the "Additional Goods") of like kind and quality to the Merchandise in such Store.   Consultant and Merchant intend that the transactions relating to the Additional Goods are, and shall be construed as, a true consignment from Consultant to Merchant in all respects and not a consignment for security purposes. At all times and for all purposes, the Additional Goods and the proceeds thereof shall be the exclusive property of Consultant, and no other person or entity shall have any claim against any of the Additional Goods or its proceeds unless Consultant otherwise agrees with another person or entity, pursuant to a separate written agreement. The Additional Goods shall at all times remain subject to the exclusive control of Consultant.   Subject solely to Consultant's obligations to pay Merchant the Merchant's Share, the Additional Goods and the identifiable proceeds thereof are not property of Merchant (or Merchant's estate) and do not constitute property of Merchant (or Merchant's estate) subject to any lender's lien.   Merchant acknowledges that it does not acquire any property right or security interest in such Additional Goods. Merchant hereby grants Consultant a first priority security interest in the Additional Goods which security interest shall be deemed perfected without the requirement of filing Uniform Commercial Code financing statements or providing notifications to any prior secured parties.

(B)     Consultant shall be entitled to allow consignment third party vendors to sell Additional Goods at the Stores.

(C)     Merchant shall utilize distinct SKUs or other means in order to distinguish the Additional Goods from other Merchandise at the Stores.  The process for applying such distinct SKUs to the Additional Goods shall be mutually acceptable to the Parties.

(D)     Merchant shall collect all actual proceeds of all sales ("Gross Proceeds from Additional Goods") from the sale of the Additional Goods. Merchant shall be entitled to retain seven and one half percent (7.5%) ("Merchant's Share") of such Gross Proceeds from Additional Goods (net of any applicable sales taxes) and shall remit the remaining ninety two and one half percent (92.5%) ("Consultant's Share") of such Gross Proceeds from Additional Goods (net of any applicable sales taxes) to Consultant on a weekly basis as set forth in section 6(F).

(E)     Promptly following the Sale Termination Date, Consultant shall remove the remaining Additional Goods, if any, from the Store.

(F)     No later than forty-five (45) days following the Sale Termination Date, the Parties shall complete a final reconciliation and settlement of the sale of Additional Goods, including a summary of Gross Proceeds from Additional Goods, expenses incurred (including the cost of goods sold, shipping, ticketing, etc.), and any amounts paid pursuant to Section 7(c) against the final reconciliation of the sale

results (the "Final Reconciliation of Additional Goods"). Consultant shall submit
invoices or other reasonable documentation to Merchant as part of the Final
Reconciliation of Additional Goods setting forth expenses it has incurred with
respect to the sale of the Additional Goods. During the Sale, and until the Final
Reconciliation of Additional Goods is complete and all obligations under this
Agreement have been satisfied, Consultant shall have reasonable access to review
and audit Merchant's records with respect to Gross Proceeds from Additional
Goods, expenses, and other sale-related items. The Parties shall cooperate in good
faith to resolve any disputes with regard to such reconciliation. Upon completion
of the Final Reconciliation of Additional Goods, the Parties shall pay or be paid,
as applicable, any amounts remaining to equal to (i) any unpaid portion of
Consultant's Share and (ii) any unpaid portion of Merchant's Share. Any
expenses related to the sale of the Additional Good, which costs shall not
constitute expenses reimbursable pursuant to the Expense Budget under this
Agreement, shall be deducted from Consultant's Share, provided, however, that
such costs shall not include any occupancy expenses related to the Stores. For the
avoidance of doubt, Merchant shall not be entitled to any other fee or commission
for sale of the Additional Goods other than payment of Merchant's Share.

**Section 8.**    **Indemnification and Limitation on Liability**

(A)    Merchant's Indemnification

Merchant hereby indemnifies, defends, and holds Consultant and its affiliates and its and
their respective members, managers, partners, officers, directors, employees, attorneys, advisors,
principals, consultants and Supervisors (collectively, the "Consultant Indemnified Parties")
harmless from and against all liabilities, claims, demands, damages, costs, and expenses (including
reasonable attorneys' fees) (collectively, "Losses") arising from or related to (i) the acts or
omissions of Merchant or Merchant Indemnified Parties (as defined below); (ii) any liability or
other claims, including, without limitation, product liability claims, asserted by customers, any
Store employees (under a collective bargaining agreement or otherwise), or any other person
(excluding the Consultant Indemnified Parties) against Consultant or any Consultant Indemnified
Party, except claims arising from Consultant's own gross negligence or willful misconduct; (iii) any
harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious,
or otherwise actionable treatment of any Consultant Indemnified Parties or Merchant's customers
by Merchant or any Merchant Indemnified Parties; (iv) Merchant's failure to pay over to the
appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in
accordance with applicable law; (v) any claims of Merchant's employees for wages, benefits,
severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other
liability arising from Merchant's employment, hiring or retention of its employees; and/or (vi) any
liability or other claims arising out of liens, claims, interests and encumbrances asserted against the
Merchandise or FF&E by any third parties, in each case. Further, Merchant hereby agrees to
promptly reimburse the Consultant Indemnified Parties for any legal fees or other expenses
reasonably incurred by the Consultant Indemnified Parties in connection with such claims as they
are incurred. Such indemnification and expense advancement/reimbursement shall survive the

completion of the engagement and/or the expiration or termination of this engagement or this Agreement.

(B)     Consultant's Indemnification

Consultant hereby indemnifies, defends, and holds Merchant and its affiliates and its and their respective members, managers, partners, officers, directors, employees, attorneys, advisors, and principals and consultants (other than Consultant or the Consultant Indemnified Parties) (collectively, the "Merchant Indemnified Parties") harmless from and against all Losses arising from or related to (i) the willful misconduct or grossly negligent acts or omissions of Consultant, (ii) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of the Merchant Indemnified Parties or Merchant's customers by Consultant or any of the Consultant Indemnified Parties, and (iii) any claims made by any party engaged by Consultant as an employee, agent, representative or independent contractor arising out of Consultant's or any of the Consultant Indemnified Parties' acts or omissions.  Further, Consultant hereby agrees to promptly reimburse the Merchant Indemnified Parties for any legal fees or other expenses reasonably incurred by the Merchant Indemnified Parties in connection with such claims as they are incurred. Such indemnification and expense advancement/reimbursement shall survive the completion of the engagement and/or the expiration or termination of this engagement or this Agreement.

(C)     Limitation on Liability

NEITHER PARTY SHALL BE RESPONSIBLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR OTHER SPECIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS AND DAMAGE TO REPUTATION OR BUSINESS) ARISING UNDER OR BY REASON OF THIS AGREEMENT, THE SERVICES OR ANY ACT OR OMISSION HEREUNDER. FURTHERMORE, IN NO EVENT SHALL CONSULTANT'S LIABILITY PURSUANT TO THIS AGREEMENT EXCEED THE AMOUNT OF FEES PAID BY MERCHANT TO CONSULTANT HEREUNDER.

**Section 9.    Insurance**

(A)     Merchant's Insurance Obligations

Merchant shall maintain, throughout the Sale Term, liability insurance policies (including, without limitation, products liability, comprehensive commercial general liability insurance, and auto liability insurance), with at least the coverage limits currently existing thereunder, covering injuries to persons and property in or in connection with the Stores and/or the Merchandise, and shall cause Consultant to be named an additional insured with respect to all such policies. At Consultant's request, Merchant shall provide Consultant with a certificate or certificates evidencing the insurance coverage required hereunder and that Consultant is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it

currently has in effect, workers compensation insurance in compliance with all applicable statutory requirements.

    (B)    <u>Consultant's Insurance Obligations</u>

Consultant shall maintain, throughout the Sale Term, comprehensive commercial general liability insurance in an amount of at least one million dollars ($1,000,000) per occurrence and at least five million dollars ($5,000,000) in the aggregate covering injuries to persons and property in or in connection with Consultant's provision of services at the Stores.

**Section 10.**    <u>**Representations, Warranties, Covenants and Agreements**</u>

    (A)    <u>Merchant's Representations, Warranties, Covenants and Agreements</u>.

Merchant warrants, represents, covenants, and agrees that (i) Merchant is a company duly organized, validly existing, and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder and maintains its principal executive office at the address set forth herein; (ii) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein; (iii) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices; (iv) all normal course hard markdowns on the Merchandise have been, and will be, taken consistent with customary Merchant's practices; (v) the Stores will be operated in the ordinary course of business in all respects other than those expressly agreed to by Merchant and Consultant; (vi) Merchant has legal title to the Merchandise and FF&E and has legal authority to sell these items to the general public free and clear of any liens, claims or encumbrances; and (vii) in the event any third parties have recorded or asserted any lien or encumbrance against the Merchandise and/or FF&E, Merchant represents that it has obtained the consent of such parties to the sale of these assets free and clear of any such liens.

    (B)    <u>Consultant's Representations, Warranties, Covenants and Agreements</u>.

Consultant warrants, represents, covenants and agrees that: (i) Consultant is a company duly organized, validly existing, and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform Consultant's obligations hereunder, and maintains its principal executive office at the addresses set forth herein; (ii) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Consultant and this Agreement constitutes a valid and binding obligation of Consultant enforceable against Consultant in accordance with its terms and conditions, and the consent of no other entity or person is required for Consultant to fully perform all of its obligations

herein; (iii) Consultant shall conduct the sale in accordance with the terms of this Agreement; and (iv) Consultant will not take any disciplinary action against any employee of Merchant.

**Section 11.**     **Termination**

The following shall constitute "Termination Events" hereunder:

(A)    Merchant's or Consultant's failure to perform any of their respective material obligations hereunder, which failure remains uncured for seven (7) days after receipt of written notice thereof to the defaulting Party;

(B)    Any representation or warranty made by Merchant or Consultant is untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(C)    The Sale is terminated or materially interrupted or impaired for any reason other than an event of default by Consultant or Merchant.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing seven (7) days' written notice thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default. Notwithstanding anything to the contrary in this Agreement, Consultant, in its sole and reasonable business judgement, may elect to terminate this Agreement at any time. If this Agreement is terminated, Merchant shall be obligated to pay Consultant all undisputed amounts due under this Agreement through and including the termination date.

**Section 12.**     **Notices**

All notices and communications provided for pursuant to this Agreement shall be in writing, and sent by hand, facsimile, recognized overnight delivery service, or email, as follows:

If to Consultant:

B. Riley Retail Solutions, LLC
30870 Russell Ranch Road, Suite 250
Westlake Village, CA 91362
Attention: Scott K. Carpenter and Tim Shilling
Tel: (818) 746-9309
Email: scarpenter@brileyfin.com, tshilling@brileyfin.com, legal@brileyfin.com

If to the Merchant:

Conn's Inc.
2445 Technology Forest Boulevard, Suite 800
The Woodlands, TX 77381

DocuSign Envelope ID: C428EBE4-0A83-459F-B56F-AAF619212DED

Attention: Timothy Santo, CFO
Email: timothy.santo@conns.com

**Section 13.**     **Independent Consultant**

Consultant's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect, except with respect to ordinary course sales of Merchandise and FF&E through the Sale. No employer/employee, principal/agent, joint venture, or other such relationship is created by this Agreement. Merchant shall have no control over the hours that Consultant or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Consultant is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**Section 14.**     **Non-Assignment**

Merchant may not assign this Agreement without the express written consent of Consultant. No modification, amendment, or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon either Party unless made in writing and signed by a duly authorized representative or agent of such Party. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors, and permitted assigns. Upon written notice to Merchant, Consultant may syndicate the transactions contemplated by this Agreement with one or more third parties.

**Section 15.**     **Severability**

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative, or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable. If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**Section 16.**     **Governing Law, Venue, Jurisdiction, and Jury Waiver**

This Agreement and its validity, construction and effect shall be governed by and enforced in accordance with the internal laws of the State of Delaware (without reference to the conflict of laws provisions therein). The parties agree that all claims, controversies, or disputes arising with regard to this Agreement shall be tried and litigated only in the state courts or federal courts located in the State of Delaware located in New Castle County, subject to Section 19 hereof, and each party hereto submits to the exclusive jurisdiction and venue of such courts relative to any such claim, controversy or dispute. Merchant and Consultant waive their respective rights to trial by jury of any cause of action, claim, counterclaim, or cross-complaint in any action, proceeding, and/or

hearing brought by either Party against the other on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and Consultant, any claim of injury or damage or the enforcement of any remedy under any law, statute, or regulation, emergency or otherwise, now or hereafter in effect.

**Section 17.      Entire Agreement**

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement. All prior agreements, discussions, and negotiations with respect to the subject matter of this Agreement are entirely superseded by this Agreement.

**Section 18.      Execution**

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile, or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile, or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

**Section 19.      Bankruptcy Court Approval**

If Merchant commences a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), with a bankruptcy court (the "Bankruptcy Court"), or consents to relief in the event an involuntary petition for relief under the Bankruptcy Code is filed against Merchant, Merchant shall file a motion to assume this Agreement under section 365 of the Bankruptcy Code, and utilize its commercially reasonable efforts to ensure that such motion is approved by an order (the "Approval Order") that provides for, among other things, the following relief: (i) approval and/or assumption of this Agreement; (ii) the payment of all fees and reimbursement of expenses hereunder to Consultant without further order of the Bankruptcy Court, free and clear of all liens, claims and encumbrances, on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with this Agreement; (iv) approval of the transaction contemplated hereby; (iii) authorization of the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale; (iv) authorization of the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; and (v) authorization of Merchant to take such further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement. In the event of a bankruptcy filing, any legal action, suit, or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy

Court having jurisdiction over Merchant, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens. From and after entry of the Approval Order, Consultant shall conduct the Sale in accordance with the terms of the Approval Order in all material respects.

[remainder of page left intentionally blank]

IN WITNESS WHEREOF, Consultant and Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

**B. Riley Retail Solutions, LLC**

By: Timothy J. Shilling
Its: President


Conn Appliances, Inc.

By: Timothy Santo
Its: CFO

## Exhibit A

### Stores

# Conn's Home Plus / Badcock Furniture
## Store List
## Exhibit A

| Str | Banner | Type | Store Name | Address | City | ST | Zip |
|---|---|---|---|---|---|---|---|
| 29 | Conn's | Conn's | TX - Webster - Point Nasa | 1020 WEST NASA ROAD | WEBSTER | TX | 77598 |
| 71 | Conn's | Conn's | TX - Houston - Northway | 11051 NORTHWEST FREEWAY | HOUSTON | TX | 77092 |
| 81 | Conn's | Conn's | TX - Dallas - Central Royal | 11250 NORTH CENTRAL EXPY | DALLAS | TX | 75243 |
| 83 | Conn's | Conn's | TX - Dallas - Lewisville | 2422 S STEMMONS FWY | LEWISVILLE | TX | 75067 |
| 111 | Conn's | Conn's | OK - Oklahoma City - Midland Cente | MIDLAND CENTER SHOPPING C | OKLAHOMA CIT | OK | 73112 |
| 116 | Conn's | Conn's | OK - Oklahoma City - Penn Park | 1615 PENN PARK BLVD | OKLAHOMA CIT | OK | 73159 |
| 123 | Conn's | Conn's | AZ - Tucson - Broadway | 5530 E BROADWAY BLVD | TUCSON | AZ | 85711 |
| 127 | Conn's | Conn's | OK - Tulsa - Mingo Marketplace | 10143 E 71 ST | TULSA | OK | 74133 |
| 130 | Conn's | Conn's | AZ - Tempe - Arizona Mills | 5000 S ARIZONA MILLS CIR | TEMPE | AZ | 85282 |
| 135 | Conn's | Conn's | AZ - Yuma - Las Palmillas | 1190 S. CASTLE DOME AVE | YUMA | AZ | 85364 |
| 136 | Conn's | Conn's | LA - Shreveport - Kings Crossing | 7081 YOUREE DR | SHREVEPORT | LA | 71105 |
| 143 | Conn's | Conn's | AZ - Chandler | 2820 W. CHANDLER BLVD | CHANDLER | AZ | 85224 |
| 145 | Conn's | Conn's | CO - Aurora - City Place | 60 S ABILENE | AURORA | CO | 80012 |
| 147 | Conn's | Conn's | CO - Arvada - Marketplace | 7360 W 52ND AV | ARVADA | CO | 80002 |
| 148 | Conn's | Conn's | AZ - Tucson - Marana | 3742 W RIVER ROAD | TUCSON | AZ | 85741 |
| 149 | Conn's | Conn's | CO - Sheridan - River Point | 3950 RIVER POINT PARKWAY | ENGLEWOOD | CO | 80110 |
| 151 | Conn's | Conn's | TN - Madison - Rivergate Station | 1655 GALLATIN PIKE NORTH | MADISON | TN | 37115 |
| 154 | Conn's | Conn's | AZ - Phoenix - Metro Market Place | 2820 WEST DUNLAP | PHOENIX | AZ | 85051 |
| 157 | Conn's | Conn's | TN - Knoxville - Town & Country | 151 N PETERS RD | KNOXVILLE | TN | 37923 |
| 159 | Conn's | Conn's | MS - Jackson - County Line Plaza | 1051 E COUNTY LINE RD | JACKSON | MS | 39211 |
| 161 | Conn's | Conn's | TN - Memphis - Cross Creek | 3525 RIVERDALE ROAD | MEMPHIS | TN | 38115 |
| 164 | Conn's | Conn's | SC - Florence - Crossroads | 2530 DAVID MCLEOD | FLORENCE | SC | 29501 |
| 173 | Conn's | Conn's | CO - Ft Collins | 120 BOCKMAN DR | FORT COLLINS | CO | 80525 |
| 174 | Conn's | Conn's | CO - Colorado Springs | 345 N ACADEMY BLVD | COLORADO SPF | CO | 80909 |
| 177 | Conn's | Conn's | NC - Charlotte - Carolina Pavilion | 9567 SOUTH BOULEVARD | CHARLOTTE | NC | 28273 |
| 183 | Conn's | Conn's | CO - Thornton | 550 E 102ND AVE | DENVER | CO | 80229 |
| 189 | Conn's | Conn's | TN - Memphis - Austin Peay | 3260 AUSTIN PEAY HIGHWAY | MEMPHIS | TN | 38128 |
| 194 | Conn's | Conn's | OK - Tulsa - Admiral Place | 6921 E ADMIRAL PL | TULSA | OK | 74115 |
| 197 | Conn's | Conn's | NC - Charlotte - Independence | 5704 E. INDEPENDENCE BLVD | CHARLOTTE | NC | 28212 |
| 199 | Conn's | Conn's | AZ - Phoenix - Arcadia Crossing | ARCADIA CROSSING | PHOENIX | AZ | 85018 |
| 201 | Conn's | Conn's | MS - Southaven - Stateline Square | 570 MAIN STREET | SOUTHAVEN | MS | 38671 |
| 202 | Conn's | Conn's | NC - Greensboro | 3508 GATE CITY BLVD | GREENSBORO | NC | 27407 |
| 203 | Conn's | Conn's | LA - Monroe | 3650 MILLHAVEN RD | MONROE | LA | 71203 |
| 205 | Conn's | Conn's | SC - North Charleston | 4960 CENTRE POINTE DRIVE | NORTH CHARL | SC | 29418 |
| 211 | Conn's | Conn's | LA - Alexandria Mall | 3437 MASONIC DR | ALEXANDRIA | LA | 71301 |
| 214 | Conn's | Conn's | VA - Richmond - Eastgate | 4969 NINE MILE RD | RICHMOND | VA | 23223 |
| 224 | Conn's | Conn's | NC - Raleigh - Cap Crossing | 2900 E MILLBROOK ROAD | RALEIGH | NC | 27604 |
| 237 | Conn's | Conn's | VA - Portsmouth - Alexander's Corne | 2550 AIRLINE BLVD. | PORTSMOUTH | VA | 23701 |
| 238 | Conn's | Conn's | VA - Va Beach - Princess Anne Plaza | 3421 VIRGINIA BEACH BLVD | VIRGINIA BEAC | VA | 23452 |
| 240 | Conn's | Conn's | VA - Hampton - Riverpointe | 1082 W. MERCURY BLVD | HAMPTON | VA | 23666 |
| 244 | Conn's | Conn's | LA - Baton Rouge - Siegen Lane | 10780 N. MALL DRIVE | BATON ROUGE | LA | 70809 |
| 251 | Conn's | Conn's | VA - Col Hghts - Southgate Square | 120 SOUTHGATE SQUARE | COLONIAL HEI | VA | 23834 |
| 253 | Conn's | Conn's | AL - Birmingham - Roebuck | 9530 PARKWAY EAST ROEBUCK | BIRMINGHAM | AL | 35215 |
| 255 | Conn's | Conn's | LA - Slidell - Northshore | 150 NORTHSHORE BOULEVARD | SLIDELL | LA | 70460 |
| 258 | Conn's | Conn's | TX - Ft Worth - La Gran Plaza | 4200 S. FREEWAY | FORT WORTH | TX | 76115 |
| 272 | Conn's | Conn's | FL - Bradenton - Cortez Plaza | 4495 14TH STREET W. | BRADENTON | FL | 34207 |
| 280 | Conn's | Conn's | FL - Tampa - Horizon Park Shopping | 3908 W HILLSBOROUGH AVE | TAMPA | FL | 33614 |
| 281 | Conn's | Conn's | FL - Kissimmee | 105 W VINE STREET | KISSIMMEE | FL | 34741 |
| 284 | Conn's | Conn's | FL - Orlando - Highland Lakes | 7407 WEST COLONIAL DRIVE | ORLANDO | FL | 32818 |
| 285 | Conn's | Conn's | FL - Orlando - Colonial Plaza | 2628 EAST COLONIAL DRIVE | ORLANDO | FL | 32803 |
| 287 | Conn's | Conn's | TX - Wichita Falls | 3915-A KELL BLVD | WICHITA FALLS | TX | 76308 |
| 290 | Conn's | Conn's | TX - SA - Clearance Center | 5776 Stemmons Dr | San Antonio | TX | 78238 |
| 291 | Conn's | Conn's | FL - Orlando - Florida Mall | 1631 FLORIDA MALL AVE | ORLANDO | FL | 32809 |
| 292 | Conn's | Conn's | FL - Orange City Marketplace | 810 SAXON BLVD | ORANGE CITY | FL | 32763 |
| 293 | Conn's | Conn's | FL - Ocala - Boyd Market Center | 2800 SW 24TH AVE. | OCALA | FL | 34471 |
| 294 | Conn's | Conn's | FL - Port Richey - Embassy Crossing | 9642 US HIGHWAY 19 NORTH | PORT RICHEY | FL | 34668 |
| 295 | Conn's | Conn's | TX - Austin - Capital Plaza | 5431 N INTERSTATE 35 | AUSTIN | TX | 78723 |
| 296 | Conn's | Conn's | FL - Orlando - Daytona | 2500 W INTERNATIONAL | DAYTONA BEA | FL | 32114 |
| 297 | Conn's | Conn's | FL - Altamonte Springs | 130 E.ALTAMONTE DRIVE | ALTAMONTE S | FL | 32701 |
| 298 | Conn's | Conn's | TX - Texarkana | 2315 RICHMOND ROAD | TEXARKANA | TX | 75503 |
| 302 | Conn's | Conn's | FL - Pinellas Park - The Shoppes at | 7300 US HIGHWAY 19 N | PINELLAS PAR | FL | 33781 |
| 304 | Conn's | Conn's | GA - Stone Mountain | 1825 ROCKBRIDGE ROAD | STONE MOUNT | GA | 30087 |
| 305 | Conn's | Conn's | SC - Rock Hill | 548 JOHN ROSS PARKWAY | ROCK HILL | SC | 29730 |
| 307 | Conn's | Conn's | FL - HIALEAH | 3890 WEST 18TH AVE | HIALEAH | FL | 33012 |
| 308 | Conn's | Conn's | GA - Newnan - Newnan Pavilion | 1098 BULLSBORO DRIVE | NEWNAN | GA | 30265 |
| 309 | Conn's | Conn's | FL - WEST PALM BEACH | 4340 OKEECHOBEE | WEST PALM BE | FL | 33409 |
| 313 | Conn's | Conn's | LA - Houma | 1779 MARTIN LUTHER KING | HOUMA | LA | 70360 |
| 318 | Conn's | Conn's | FL - MELBOURNE | 1433 S BABCOCK STREET | MELBOURNE | FL | 32901 |
| 319 | Conn's | Conn's | FL - BOYNTON BEACH | 9903 S. MILITARY TRAIL | BOYNTON BEA | FL | 33436 |

# Conn's Home Plus / Badcock Furniture
## Store List
## Exhibit A

| Str | Banner | Type | Store Name | Address | City | ST | Zip |
|-----|--------|------|------------|---------|------|-----|-----|
| 321 | Conn's | Conn's | FL - Pembroke Pines | 500 N. UNIVERSITY DRIVE | HOLLYWOOD | FL | 33024 |
| WSB-131 | Badcock | Corporate | ST PETE MIDTOWN, FL | 2000 34TH ST N | St. Petersburg | FL | 33713 |
| WSB-137 | Badcock | Corporate | CEDARTOWN, GA | 304 N Main Street | Cedartown | GA | 30125 |
| WSB-202 | Badcock | Corporate | HENDERSONVILLE, TN | 291 New Shackle Island Road | Hendersonville | TN | 37075 |
| WSB-203 | Badcock | Corporate | MARIETTA, GA | 3701 Austell Road, Ste 101 | Marietta | GA | 30008 |
| WSB-204 | Badcock | Corporate | SILER CITY, NC | 100 Siler XING | Siler City | NC | 27344 |
| WSB-205 | Badcock | Corporate | LAWRENCEVILLE, GA | 860 Duluth Hwy, Ste 110 | Lawrenceville | GA | 30043 |
| WSB-206 | Badcock | Corporate | ROANOKE RAPIDS, NC | 1558 Julian R. Allsbrook Hwy. | Roanoke Rapids | NC | 27870 |
| WSB-208 | Badcock | Corporate | WAYNESBORO, VA | 1301 W Broad Street | Waynesboro | VA | 22980 |
| WSB-321 | Badcock | Corporate | MURFREESBORO, TN | 1264 NW Broad Street | Murfreesboro | TN | 37129 |
| WSB-354 | Badcock | Corporate | CHATTANOOGA, TN | 5856 Brainerd Road | Chattanooga | TN | 37411 |
| WSB-491 | Badcock | Corporate | EASLEY, SC | 5659 Calhoun Memorial Hwy | Easley | SC | 29640 |
| WSB-496 | Badcock | Corporate | TOCCOA, GA | 966 Big A Road S | Toccoa | GA | 30577 |
| WSB-519 | Badcock | Corporate | SYLACAUGA, AL | 258 W Ft. William Street | Sylacauga | AL | 35150 |
| WSB-635 | Badcock | Dealer-S | SAVANNAH SOUTH, GA | 37 W Montgomery Rd | Savannah | GA | 31406 |
| WSB-748 | Badcock | Dealer-S | SAVANNAH, GA | 4609 Ogeechee Rd | Savannah | GA | 31405 |
| WSB-810 | Badcock | Corporate | CLARKSVILLE EAST, TN | 1947 Madison Street, Ste D | Clarksville | TN | 37043 |
| WSB-825 | Badcock | Corporate | KINSTON, NC | 4150 W Vernon Ave, Ste A | Kinston | NC | 28504 |
| WSB-839 | Badcock | Corporate | PELL CITY, AL | 613 N Martin Street, Ste. 400 | Pell City | AL | 35125 |
| WSB-852 | Badcock | Corporate | CHARLOTTE, NC | 6021 S Blvd | Charlotte | NC | 28217 |
| WSB-856 | Badcock | Corporate | GROVETOWN, GA | 5107 Wrightsboro Road | Grovetown | GA | 30813 |
| WSB-859 | Badcock | Corporate | SCOTTSBORO, AL | 22991 John T. Reid Pkwy | Scottsboro | AL | 35768 |
| WSB-860 | Badcock | Corporate | HOMEWOOD, AL | 372 Palisades Blvd, Ste 24-B | Homewood | AL | 35209 |
| WSB-861 | Badcock | Corporate | CROSSVILLE, TN | 49 Cumberland Plaza | Crossville | TN | 38555 |
| WSB-862 | Badcock | Corporate | FORT PAYNE, AL | 101 Cracker Barrel Road | Fort Payne | AL | 35968 |
| WSB-864 | Badcock | Corporate | EDEN, NC | 220 W Kings Hwy, Ste C | Eden | NC | 27288 |
| WSB-870 | Badcock | Corporate | KNOXVILLE PIKE, TN | 9622 Kingston Pike | Knoxville | TN | 37922 |
| WSB-871 | Badcock | Corporate | HUNTSVILLE, AL | 4321 University Drive, Ste B | Huntsville | AL | 35816 |
| WSB-872 | Badcock | Corporate | KNOXVILLE CROSSROADS, TN | 7252 Norris Hwy, Ste 110 | Knoxville | TN | 37918 |
| WSB-874 | Badcock | Corporate | JASPER, AL | 714 US Hwy 78E STE 130 | Jasper | AL | 35501 |
| WSB-888 | Badcock | Corporate | ORLANDO, FL | 7873 S Orange Blossom Trail | Orlando | FL | 32809 |
| WSB-889 | Badcock | Corporate | WYTHEVILLE, VA | 1380 E Main Street | Ste 300, Wytheville | VA | 24382 |
| WSB-890 | Badcock | Corporate | FAIRLAWN, VA | 7327 Peppers Ferry Blvd, Ste B-1 | Fairlawn | VA | 24141 |
| WSB-894 | Badcock | Corporate | HENDERSON, NC | 1241 Dabney Drive | Henderson | NC | 27536 |
| WSB-895 | Badcock | Corporate | PULASKI, VA | 1130 E Main Street | Pulaski | VA | 24301 |
| WSB-899 | Badcock | Corporate | CLARKSVILLE WEST, TN | 700 N Riverside Drive | Clarksville | TN | 37040 |

105

## <u>Exhibit B</u>

### Expense Budget

Exhibit B
Consultant Expense Budget


105 Store Group - estimated 10 week average sale term

| | |
|---|---:|
| Consultant Advertising | 1,150,000 |
| Consultant Supervision | 1,110,000 |
| Misc / Legal | 25,000 |
| **Total Consultant Expense** | **$2,285,000** |

## AMENDMENT NO. 1 TO AGREEMENT

This AMENDMENT NO. 1 to CONSULTING AGREEMENT (this "Amendment"), is made and entered into as of July 19, 2024 (the "Effective Date"), by and between by and between **Conn Appliances, Inc.,** a Texas corporation ("Merchant"), and **B. Riley Retail Solutions, LLC**, a California limited liability company ("Consultant" and together with Merchant, the "Parties" and each a "Party").

WHEREAS, the Consultant and Merchant are parties to that certain Consulting Agreement for dated as of June 27, 2024 (the "Agreement") regarding the Sale of Merchandise and FF&E; and

WHEREAS, in light of the fact that Merchant intends to conduct a full-chain liquidation, the Parties now wish to amend certain provisions of the Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, agreements and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confirmed, the parties hereto (the "Parties") hereby agree to amend the Agreement as follows:

1.      **Interpretation.** All capitalized terms used but not defined in this Amendment shall have the meanings set forth in the Agreement.

2.      **Amendments.** The Agreement is hereby amended, effective as of the Effective Date, as follows:

2.1      Section 6(E) of the Agreement is hereby deleted in its entirety and replaced with the following:

As an advance against the expenses of the Sale, and to secure payment of the same and any other amounts due Consultant, no later than one week before the Sale Commencement Date, Merchant shall pay to Consultant a deposit in the amount of **one million and five hundred thousand dollars ($1,500,00.00)**, which shall be applied against Consultant Expenses, Base Fee, and/or FF&E Fee at the end of the Sale Term and, to the extent not expended when the Sale concludes (assuming Consultant claims no other amounts are due under the Agreement to Consultant and no other damages were incurred), shall be returned to Merchant as part of the Final Reconciliation (defined below) or such other time that Merchant and Consultant mutually agree.

2.2      The Store list attached to the Agreement as **Exhibit A** is hereby deleted in its entirety and replaced with **Amended Exhibit A**, a copy of which is attached hereto. As set forth in the agreement, this list may be amended by Merchant in writing from time to time (including by adding or removing Stores).

2.3      The Budget attached to the Agreement as **Exhibit B** is hereby deleted in its entirety and replaced with **Amended Exhibit B**, a copy of which is attached hereto. As set forth in the

1

Agreement, Consultant reserves the right to amend Exhibit B to reflect changes in the Sale Term for any Store.

3.      **Miscellaneous.**

       3.1      Counterparts.  This Amendment may be executed by the Parties on any number of separate counterparts, by facsimile or email, and all of those counterparts taken together will be deemed to constitute one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signatures are physically attached to the same document.  A facsimile or portable document format ("pdf") signature page will constitute an original for the purposes of this section.

       3.2      Ratification.  Except as amended hereby, the Agreement remains in full force and effect.

       **3.3      GOVERNING LAW.  THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE (WITHOUT REFERENCE TO THE CONFLICTS OF LAW PROVISIONS THEREIN).**

[SIGNATURE PAGES FOLLOW]

      **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first written above.

                            **B. Riley Retail Solutions, LLC**

                            *Timothy J. Shilling*

                            By:  Timothy J. Shilling
                            Its:  Executive Vice President

                            **Conn Appliances, Inc.**

                            By:    Timothy Santo
                            Its:
                                EVP & CFO

**<u>Amended Exhibit A</u>**

**Amended Store List**

**Conn's Home Plus / Badcock Furniture**
**Store List**
**Exhibit A**

| Str | Banner | Type | Address | City | ST | Zip |
|---|---|---|---|---|---|---|
| WSB-131 | Badcock | Corporate | 2000 34TH ST N | St. Petersburg | FL | 33713 |
| WSB-137 | Badcock | Corporate | 304 N Main Street | Cedartown | GA | 30125 |
| WSB-202 | Badcock | Corporate | 291 New Shackle Island Road | Hendersonville | TN | 37075 |
| WSB-203 | Badcock | Corporate | 3701 Austell Road, Ste 101 | Marietta | GA | 30008 |
| WSB-204 | Badcock | Corporate | 100 Siler XING | Siler City | NC | 27344 |
| WSB-205 | Badcock | Corporate | 860 Duluth Hwy, Ste 110 | Lawrenceville | GA | 30043 |
| WSB-206 | Badcock | Corporate | 1558 Julian R. Allsbrook Hwy. | Roanoke Rapid | NC | 27870 |
| WSB-208 | Badcock | Corporate | 1301 W Broad Street | Waynesboro | VA | 22980 |
| WSB-321 | Badcock | Corporate | 1264 NW Broad Street | Murfreesboro | TN | 37129 |
| WSB-354 | Badcock | Corporate | 5856 Brainerd Road | Chattanooga | TN | 37411 |
| WSB-491 | Badcock | Corporate | 5659 Calhoun Memorial Hwy | Easley | SC | 29640 |
| WSB-496 | Badcock | Corporate | 966 Big A Road S | Toccoa | GA | 30577 |
| WSB-519 | Badcock | Corporate | 258 W Ft. William Street | Sylacauga | AL | 35150 |
| WSB-810 | Badcock | Corporate | 1947 Madison Street, Ste D | Clarksville | TN | 37043 |
| WSB-825 | Badcock | Corporate | 4150 W Vernon Ave, Ste A | Kinston | NC | 28504 |
| WSB-839 | Badcock | Corporate | 613 N Martin Street, Ste. 400 | Pell City | AL | 35125 |
| WSB-852 | Badcock | Corporate | 6021 S Blvd | Charlotte | NC | 28217 |
| WSB-856 | Badcock | Corporate | 5107 Wrightsboro Road | Grovetown | GA | 30813 |
| WSB-859 | Badcock | Corporate | 22991 John T. Reid Pkwy | Scottsboro | AL | 35768 |
| WSB-860 | Badcock | Corporate | 372 Palisades Blvd, Ste 24-B | Homewood | AL | 35209 |
| WSB-861 | Badcock | Corporate | 49 Cumberland Plaza | Crossville | TN | 38555 |
| WSB-862 | Badcock | Corporate | 101 Cracker Barrel Road | Fort Payne | AL | 35968 |
| WSB-864 | Badcock | Corporate | 220 W Kings Hwy, Ste C | Eden | NC | 27288 |
| WSB-870 | Badcock | Corporate | 9622 Kingston Pike | Knoxville | TN | 37922 |
| WSB-871 | Badcock | Corporate | 4321 University Drive, Ste B | Huntsville | AL | 35816 |
| WSB-872 | Badcock | Corporate | 7252 Norris Hwy, Ste 110 | Knoxville | TN | 37918 |
| WSB-874 | Badcock | Corporate | 714 US Hwy 78E STE 130 | Jasper | AL | 35501 |
| WSB-888 | Badcock | Corporate | 7873 S Orange Blossom Trail | Orlando | FL | 32809 |
| WSB-889 | Badcock | Corporate | 1380 E Main Street | Ste 300, Wythe | VA | 24382 |
| WSB-890 | Badcock | Corporate | 7327 Peppers Ferry Blvd, Ste B-1 | Fairlawn | VA | 24141 |
| WSB-894 | Badcock | Corporate | 1241 Dabney Drive | Henderson | NC | 27536 |
| WSB-895 | Badcock | Corporate | 1130 E Main Street | Pulaski | VA | 24301 |
| WSB-899 | Badcock | Corporate | 700 N Riverside Drive | Clarksville | TN | 37040 |
| WSB-124 | Badcock | Corporate | 3318 MERCER UNIVERSITY DR | MACON | GA | 31204 |
| WSB-129 | Badcock | Corporate | 1138 S HARRIS ST | SANDERSVILLI | GA | 31082 |
| WSB-135 | Badcock | Corporate | 1409 N FLORIDA AVENUE | LAKELAND | FL | 33805 |
| WSB-136 | Badcock | Corporate | 6625 US HWY 98 NORTH | LAKELAND | FL | 33809 |
| WSB-153 | Badcock | Corporate | 1724 E MAIN ST STE B | PRATTVILLE | AL | 36066 |
| WSB-153 | Badcock | Corporate | 6100 SOUTH FLORIDA AVENUE | LAKELAND | FL | 33813 |
| WSB-157 | Badcock | Corporate | 5435 N 56TH STREET | TAMPA | FL | 33610 |
| WSB-168 | Badcock | Corporate | 6621 MEMORIAL HIGHWAY | TAMPA | FL | 33615 |
| WSB-168 | Badcock | Corporate | 1225 N COMBEE RD | LAKELAND | FL | 33801 |
| WSB-201 | Badcock | Corporate | 1585 N ASPEN STREET | LINCOLNTON | NC | 28092 |
| WSB-306 | Badcock | Corporate | 4370 ATLANTA HWY | ATHENS | GA | 30606 |
| WSB-346 | Badcock | Corporate | 12152 W COLONIAL DR | WINTER GARD | FL | 34787 |
| WSB-356 | Badcock | Corporate | 900 MISSOURI AVE N | LARGO | FL | 33770 |
| WSB-488 | Badcock | Corporate | 2000 CLOWDUS DRIVE | ONEONTA | AL | 35121 |
| WSB-632 | Badcock | Corporate | 6521 N MAIN STREET | JACKSONVILLE | FL | 32208 |
| WSB-645 | Badcock | Corporate | 435 S MAIN STREET | SWAINSBORO | GA | 30401 |
| WSB-685 | Badcock | Corporate | 3213 APALACHEE PKWY | TALLAHASSEE | FL | 32311 |
| WSB-725 | Badcock | Corporate | 124 BEACON DRIVE | WINTERVILLE | NC | 28590 |
| WSB-730 | Badcock | Corporate | 1580 INTERSTATE DR | COOKEVILLE | TN | 38501 |
| WSB-733 | Badcock | Corporate | 119 NASHVILLE HWY STE 115 | COLUMBIA | TN | 38401 |
| WSB-737 | Badcock | Corporate | 2116 S GLENBURNIE RD | NEW BERN | NC | 28562 |
| WSB-745 | Badcock | Corporate | 618 WEST 15TH STREET | WASHINGTON | NC | 27889 |
| WSB-756 | Badcock | Corporate | 100 ATLANTA AVE | LYNCHBURG | VA | 24502 |
| WSB-760 | Badcock | Corporate | 525 W BRANDON BLVD | BRANDON | FL | 33511 |
| WSB-762 | Badcock | Corporate | 703 SOUTH EVERS | PLANT CITY | FL | 33563 |
| WSB-769 | Badcock | Corporate | 2200 ML KING ST S | SAINT PETERS | FL | 33705 |
| WSB-812 | Badcock | Corporate | 1802 US HWY 1 SUITE 100 | ROCKLEDGE | FL | 32955 |
| WSB-817 | Badcock | Corporate | 1555 E HWY 50 | CLERMONT | FL | 34711 |
| WSB-844 | Badcock | Corporate | 2815 HIGHWAY 105 SOUTH | BOONE | NC | 28607 |
| WSB-845 | Badcock | Corporate | 4075 EASTERN BLVD | MONTGOMERY | AL | 36116 |
| WSB-865 | Badcock | Corporate | 7965 TARA BLVD SUITE 330C | JONESBORO | GA | 30236 |
| WSB-867 | Badcock | Corporate | 3500 N ROXBORO ST | DURHAM | NC | 27704 |
| WSB-849 | Badcock | Corporate | 2153 LEJEUNE BLVD SUITE B | JACKSONVILLE | NC | 28546 |
| WSB-212 | Badcock | Corporate | 815 RUSSELL PARKWAY | WARNER ROBI | GA | 31088 |
| WSB-635 | Badcock | Dealer-S | 37 W Montgomery Rd | Savannah | GA | 31406 |
| WSB-748 | Badcock | Dealer-S | 4609 Ogeechee Rd | Savannah | GA | 31405 |
| WSB-840 | Badcock | Dealer-S | 119 W Broadway Blvd | JEFFERSON CI | TN | 37760 |
| WSB-850 | Badcock | Dealer-S | 800 FAIRVIEW ROAD | ASHEVILLE | NC | 28803 |
| WSB-869 | Badcock | Dealer-S | 400 W Blackstock Road | SPARTANBUR | SC | 29301 |
| WSB-120 | Badcock | Dealer-S | 202 Homer Road | COMMERCE | GA | 30529 |
| WSB-121 | Badcock | Dealer-S | 683 MAIN STREET | THOMSON | GA | 30824 |
| WSB-122 | Badcock | Dealer-S | 3134 HIGHWAY 278 NW | COVINGTON | GA | 30014 |
| WSB-125 | Badcock | Dealer-S | 1388 WARREN C COLEMAN | CONCORD | NC | 28025 |
| WSB-128 | Badcock | Dealer-S | 1590 NORTHSIDE DR E | STATESBORO | GA | 30458 |
| WSB-128 | Badcock | Dealer-S | 1750 N TAMIAMI TRAIL | NORTH FORT | FL | 33903 |
| WSB-130 | Badcock | Dealer-S | 1701 ROANOKE RD | LAGRANGE | GA | 30240 |
| WSB-132 | Badcock | Dealer-S | 3001 AIRPORT THRUWAY | COLUMBUS | GA | 31909 |
| WSB-134 | Badcock | Dealer-S | 1405 IRIS DR. | CONYERS | GA | 30013 |
| WSB-139 | Badcock | Dealer-S | 925 NORTH BYPASS EAST | WASHINGTON | GA | 30673 |
| WSB-140 | Badcock | Dealer-S | 1319 W FLOYD BAKER BLVD | GAFFNEY | SC | 29341 |
| WSB-142 | Badcock | Dealer-S | 914 JOE FRANK HARRIS PKWY | CARTERSVILLE | GA | 30120 |
| WSB-145 | Badcock | Dealer-S | 1000 HWY 441 BYPASS | BALDWIN | GA | 30511 |
| WSB-146 | Badcock | Dealer-S | 1707 CHEROKEE AVE SW | CULLMAN | AL | 35055 |
| WSB-155 | Badcock | Dealer-S | 1106 RUCKER BOULEVARD | ENTERPRISE | AL | 36330 |
| WSB-159 | Badcock | Dealer-S | 921 DECATUR PIKE | ATHENS | TN | 37303 |
| WSB-160 | Badcock | Dealer-S | 33050 HWY 43 N | THOMASVILLE | AL | 36784 |
| WSB-161 | Badcock | Dealer-S | 1478 CHESTNUT STREET | ORANGEBURG | SC | 29115 |
| WSB-162 | Badcock | Dealer-S | 501 DAVIS LOOP | OXFORD | AL | 36203 |
| WSB-164 | Badcock | Dealer-S | 1150 SOUTH BOULEVARD | BREWTON | AL | 36426 |
| WSB-207 | Badcock | Dealer-S | 2730 N PINE HILLS RD | ORLANDO | FL | 32808 |
| WSB-209 | Badcock | Dealer-S | 1416 HUNTSVILLE HWY | FAYETTEVILLE | TN | 37334 |
| WSB-210 | Badcock | Dealer-S | 470 S HIGHWAY 29 STE 4 | CANTONMENT | FL | 32533 |
| WSB-211 | Badcock | Dealer-S | 3800 REYNOLDA RD STE 180 | WINSTON SAL | NC | 27106 |
| WSB-213 | Badcock | Dealer-S | 1215 SILAS CREEK PARKWAY | WINSTON SAL | NC | 27127 |
| WSB-214 | Badcock | Dealer-S | 246 FACTORY AVENUE | ELBA | AL | 36323 |
| WSB-215 | Badcock | Dealer-S | 1315 W SCREVEN STREET | QUITMAN | GA | 31643 |
| WSB-218 | Badcock | Dealer-S | 2301 HWY 17 S Unit -B | N MYRTLE BEA | SC | 29582 |
| WSB-219 | Badcock | Dealer-S | 1399 6TH ST NW | WINTER HAVE | FL | 33881 |
| WSB-220 | Badcock | Dealer-S | 1676 WEST COLLEGE ST | PULASKI | TN | 38478 |
| WSB-221 | Badcock | Dealer-S | 1000 BROADWAY DR | HATTIESBURG | MS | 39401 |
| WSB-222 | Badcock | Dealer-S | 3600 MAIN ST | JASPER | TN | 37347 |
| WSB-223 | Badcock | Dealer-S | 3800 WEST NEW HAVEN AVE | MELBOURNE | FL | 32904 |
| WSB-224 | Badcock | Dealer-S | 72 SOUTH VALDOSTA RD | LAKELAND | GA | 31635 |
| WSB-225 | Badcock | Dealer-S | 3490 SCHILLINGER ROAD | SEMMES | AL | 36575 |
| WSB-226 | Badcock | Dealer-S | 4430 US HIGHWAY 17 | MURRELLS INL | SC | 29576 |
| WSB-227 | Badcock | Dealer-S | 140 SKYLAND DR. | TUSCALOOSA | AL | 35405 |
| WSB-228 | Badcock | Dealer-S | 25665 SIERRA CENTER BLVD | LUTZ | FL | 33559 |
| WSB-230 | Badcock | Dealer-S | 9447 LEM TURNER ROAD | JACKSONVILLE | FL | 32208 |
| WSB-231 | Badcock | Dealer-S | 1435 S ORANGE AVENUE | GREEN CV SPI | FL | 32043 |

Conn's Home Plus / Badcock Furniture
Store List
Exhibit A

| Str | Banner | Type | Address | City | ST | Zip |
|---|---|---|---|---|---|---|
| WSB-232 | Badcock | Dealer-S | 311 S RIDGEWOOD AVENUE | EDGEWATER | FL | 32132 |
| WSB-302 | Badcock | Dealer-S | 1107 HWY 31 SOUTH | BAY MINETTE | AL | 36507 |
| WSB-303 | Badcock | Dealer-S | 717C E LIBERTY | YORK | SC | 29745 |
| WSB-308 | Badcock | Dealer-S | 3347 US HWY 441/27 | FRUITLAND PA | FL | 34731 |
| WSB-310 | Badcock | Dealer-S | 8900 KNOX BRIDGE HWY | CANTON | GA | 30114 |
| WSB-314 | Badcock | Dealer-S | 3609 RICHLAND AVE W | AIKEN | SC | 29801 |
| WSB-318 | Badcock | Dealer-S | 321A COLUMBIA AVE | RINCON | GA | 31326 |
| WSB-322 | Badcock | Dealer-S | 713 MAIN ST | LEAKESVILLE | MS | 39451 |
| WSB-323 | Badcock | Dealer-S | 3241 WASHINGTON ROAD | AUGUSTA | GA | 30907 |
| WSB-325 | Badcock | Dealer-S | 1975 COMMERCE DR | KINGSLAND | GA | 31548 |
| WSB-327 | Badcock | Dealer-S | 417 S MAIN STREET | HENDERSONV | NC | 28792 |
| WSB-328 | Badcock | Dealer-S | 761 MADISON STREET | SHELBYVILLE | TN | 37160 |
| WSB-329 | Badcock | Dealer-S | 1429 OHIO AVE NORTH | LIVE OAK | FL | 32064 |
| WSB-330 | Badcock | Dealer-S | 4075 CHARLES HARDY PWKY | DALLAS | GA | 30157 |
| WSB-332 | Badcock | Dealer-S | 736A ST ANDREWS RD | COLUMBIA | SC | 29210 |
| WSB-333 | Badcock | Dealer-S | 200 HOBSON ST STE 39 | MC MINNVILLE | TN | 37110 |
| WSB-334 | Badcock | Dealer-S | 1521 WATSON BLVD | WARNER ROBI | GA | 31093 |
| WSB-336 | Badcock | Dealer-S | 745 ALBRIGHT ROAD | ROCK HILL | SC | 29730 |
| WSB-336 | Badcock | Dealer-S | 1702 DARBY DRIVE | FLORENCE | AL | 35630 |
| WSB-337 | Badcock | Dealer-S | 405 BYPASS ROAD | WINCHESTER | TN | 37398 |
| WSB-338 | Badcock | Dealer-S | 2217 BATTLEFIELD PKWY | FORT OGLETH | GA | 30742 |
| WSB-339 | Badcock | Dealer-S | 2623 N COLUMBIA ST | MILLEDGEVILL | GA | 31061 |
| WSB-340 | Badcock | Dealer-S | 850 25TH STREET, NW | CLEVELAND | TN | 37311 |
| WSB-345 | Badcock | Dealer-S | 245 EAST DYKES ST | COCHRAN | GA | 31014 |
| WSB-350 | Badcock | Dealer-S | 1100 E. JOHN SIMS PARKWAY | NICEVILLE | FL | 32578 |
| WSB-353 | Badcock | Dealer-S | 2200 WESTCHESTER DR | HIGH POINT | NC | 27262 |
| WSB-360 | Badcock | Dealer-S | 18885 CORTEZ BLVD | BROOKSVILLE | FL | 34601 |
| WSB-364 | Badcock | Dealer-S | 4825 MOBILE HWY | PENSACOLA | FL | 32506 |
| WSB-365 | Badcock | Dealer-S | 417 ATKINSON STREET | LAURINBURG | NC | 28352 |
| WSB-366 | Badcock | Dealer-S | 160 HAMPTON ST | MCDONOUGH | GA | 30253 |
| WSB-367 | Badcock | Dealer-S | 1839 OPELIKA ROAD | AUBURN | AL | 36830 |
| WSB-371 | Badcock | Dealer-S | 805A W WADE HAMPTON BLVD | GREER | SC | 29650 |
| WSB-372 | Badcock | Dealer-S | 5580 HWY 90 W | THEODORE | AL | 36582 |
| WSB-374 | Badcock | Dealer-S | 21 HARDY COURT | GULFPORT | MS | 39507 |
| WSB-376 | Badcock | Dealer-S | 1525 NW FEDERAL HWY | STUART | FL | 34994 |
| WSB-450 | Badcock | Dealer-S | 410 S CAMELLIA BLVD | FORT VALLEY | GA | 31030 |
| WSB-451 | Badcock | Dealer-S | 1851 N EXPRESSWAY | GRIFFIN | GA | 30223 |
| WSB-452 | Badcock | Dealer-S | 111 OGLETHORPE RD | MONTEZUMA | GA | 31063 |
| WSB-454 | Badcock | Dealer-S | 423 N CENTER STREET | THOMASTON | GA | 30286 |
| WSB-455 | Badcock | Dealer-S | 2505 OLD CHATSWORTH HWY | DALTON | GA | 30721 |
| WSB-459 | Badcock | Dealer-S | 1145 HIGHWAY 64 WEST | MURPHY | NC | 28906 |
| WSB-464 | Badcock | Dealer-S | 1650 ATHENS HWY | MADISON | GA | 30650 |
| WSB-466 | Badcock | Dealer-S | 2215 LEXINGTON RD | ATHENS | GA | 30605 |
| WSB-467 | Badcock | Dealer-S | 114 FORSYTH ST | BARNESVILLE | GA | 30204 |
| WSB-469 | Badcock | Dealer-S | 1084 East Franklin Street | HARTWELL | GA | 30643 |
| WSB-471 | Badcock | Dealer-S | 940 CHESTERFIELD HWY | CHERAW | SC | 29520 |
| WSB-472 | Badcock | Dealer-S | 1202 HWY 9 BY-PASS W | LANCASTER | SC | 29720 |
| WSB-473 | Badcock | Dealer-S | 1506 SKYWAY DRIVE | MONROE | NC | 28110 |
| WSB-474 | Badcock | Dealer-S | 1220 E BROAD ST | ROCKINGHAM | NC | 28379 |
| WSB-475 | Badcock | Dealer-S | 216 HWY 52 SOUTH | WADESBORO | NC | 28170 |
| WSB-476 | Badcock | Dealer-S | 430 ALBEMARLE RD | TROY | NC | 27371 |
| WSB-477 | Badcock | Dealer-S | 206 BROAD STREET | BENNETTSVIL | SC | 29512 |
| WSB-478 | Badcock | Dealer-S | 217 S POPLAR ST | ELIZABETHTO | NC | 28337 |
| WSB-481 | Badcock | Dealer-S | 1950 N ROBERTS AVE | LUMBERTON | NC | 28358 |
| WSB-482 | Badcock | Dealer-S | 1210 S MADISON ST | WHITEVILLE | NC | 28472 |
| WSB-483 | Badcock | Dealer-S | 515 A SOUTH JEFFERSON ST | ATHENS | AL | 35611 |
| WSB-484 | Badcock | Dealer-S | 2019 6TH AVE SE STE 9 | DECATUR | AL | 35601 |
| WSB-486 | Badcock | Dealer-S | 416 HWY 12 W | STARKVILLE | MS | 39759 |
| WSB-489 | Badcock | Dealer-S | 1520 E GREENVILLE ST | ANDERSON | SC | 29621 |
| WSB-494 | Badcock | Dealer-S | 327 E 2ND STREET | JACKSON | GA | 30233 |
| WSB-499 | Badcock | Dealer-S | 716 HWY 28 BY-PASS | ABBEVILLE | SC | 29620 |
| WSB-501 | Badcock | Dealer-S | 1302 BY-PASS 72 NE | GREENWOOD | SC | 29649 |
| WSB-508 | Badcock | Dealer-S | 1930 US 70 EAST | MARION | NC | 28752 |
| WSB-509 | Badcock | Dealer-S | 1404 SOUTH LAFAYETTE | SHELBY | NC | 28152 |
| WSB-510 | Badcock | Dealer-S | 356 NORTH MAIN ST | WAYNESVILLE | NC | 28786 |
| WSB-512 | Badcock | Dealer-S | 201 W MAIN STREET | MANCHESTER | GA | 31816 |
| WSB-513 | Badcock | Dealer-S | 54 Bullsboro Drive | NEWNAN | GA | 30263 |
| WSB-514 | Badcock | Dealer-S | 535A BANKHEAD HWY | CARROLLTON | GA | 30117 |
| WSB-515 | Badcock | Dealer-S | 3075 HIGHWAY 431 | ROANOKE | AL | 36274 |
| WSB-516 | Badcock | Dealer-S | 3418 20TH AVE | VALLEY | AL | 36854 |
| WSB-523 | Badcock | Dealer-S | 230 BULTMAN DRIVE | SUMTER | SC | 29150 |
| WSB-525 | Badcock | Dealer-S | 2300 CHURCH ST UNIT 5 | CONWAY | SC | 29526 |
| WSB-526 | Badcock | Dealer-S | 216 RADFORD BLVD | DILLON | SC | 29536 |
| WSB-527 | Badcock | Dealer-S | 310 HARTSVILLE CROSSING | HARTSVILLE | SC | 29550 |
| WSB-528 | Badcock | Dealer-S | 209 NORTH CHURCH ST | LAKE CITY | SC | 29560 |
| WSB-529 | Badcock | Dealer-S | 2236F E Highway 76 | MARION | SC | 29571 |
| WSB-601 | Badcock | Dealer-S | 910 SOUTH 7TH ST | CORDELE | GA | 31015 |
| WSB-602 | Badcock | Dealer-S | 1927 HWY 441 S | DUBLIN | GA | 31021 |
| WSB-603 | Badcock | Dealer-S | 6377 OAK STREET | EASTMAN | GA | 31023 |
| WSB-605 | Badcock | Dealer-S | 903 N SUWANNEE AVE | BRANFORD | FL | 32008 |
| WSB-606 | Badcock | Dealer-S | 1480 NW 25TH AVE | CHIEFLAND | FL | 32626 |
| WSB-607 | Badcock | Dealer-S | 16302 SE HWY 19 | CROSS CITY | FL | 32628 |
| WSB-609 | Badcock | Dealer-S | 1225 S JEFFERSON ST | PERRY | FL | 32347 |
| WSB-610 | Badcock | Dealer-S | 1611 NORTH BRIDGE STREET | ELKIN | NC | 28621 |
| WSB-611 | Badcock | Dealer-S | 4325 NW 13TH STREET | GAINESVILLE | FL | 32609 |
| WSB-612 | Badcock | Dealer-S | 18759 HIGH SPRINGS MAIN | HIGH SPRINGS | FL | 32643 |
| WSB-615 | Badcock | Dealer-S | 150 S. SUNCOAST BLVD | CRYSTAL RIVE | FL | 34429 |
| WSB-616 | Badcock | Dealer-S | 20319 E PENNSYLVANIA AVE | DUNNELLON | FL | 34432 |
| WSB-618 | Badcock | Dealer-S | 2211 SW 19TH AVE RD | OCALA | FL | 34471 |
| WSB-619 | Badcock | Dealer-S | 530 E NOBLE AVE | WILLISTON | FL | 32696 |
| WSB-621 | Badcock | Dealer-S | 382 NW MAIN BLVD | LAKE CITY | FL | 32055 |
| WSB-622 | Badcock | Dealer-S | 701 S 5TH STREET | MACCLENNY | FL | 32063 |
| WSB-623 | Badcock | Dealer-S | 464 S DUVAL AVE | MADISON | FL | 32340 |
| WSB-624 | Badcock | Dealer-S | 2205 WILBORN AVE. | SOUTH BOSTC | VA | 24592 |
| WSB-625 | Badcock | Dealer-S | 710 E MAIN STREET | LAKE BUTLER | FL | 32054 |
| WSB-626 | Badcock | Dealer-S | 1946 KINGSLEY AVENUE | ORANGE PARK | FL | 32073 |
| WSB-627 | Badcock | Dealer-S | 1000 ST JOHNS AVE | PALATKA | FL | 32177 |
| WSB-628 | Badcock | Dealer-S | 14739 US HWY 301 SOUTH | STARKE | FL | 32091 |
| WSB-631 | Badcock | Dealer-S | 10965 BEACH BLVD | JACKSONVILLE | FL | 32246 |
| WSB-633 | Badcock | Dealer-S | 1762 TREE BOULEVARD | SAINT AUGUST | FL | 32084 |
| WSB-636 | Badcock | Dealer-S | 428 SARALAND BLVD S | SARALAND | AL | 36571 |
| WSB-637 | Badcock | Dealer-S | 1201 US HWY 98 | DAPHNE | AL | 36526 |
| WSB-638 | Badcock | Dealer-S | 510 S MCKENZIE ST | FOLEY | AL | 36535 |
| WSB-639 | Badcock | Dealer-S | 594 N. MAIN ST. | CRESTVIEW | FL | 32536 |
| WSB-640 | Badcock | Dealer-S | 981 U.S. HWY 90 W | DEFUNIAK SPR | FL | 32433 |
| WSB-641 | Badcock | Dealer-S | 512 MARY ESTHER CUTOFF NW | FT WALTON B( | FL | 32548 |
| WSB-642 | Badcock | Dealer-S | 4815 CLOVER LANE | MILTON | FL | 32570 |
| WSB-646 | Badcock | Dealer-S | 307 E 1ST ST | VIDALIA | GA | 30474 |
| WSB-647 | Badcock | Dealer-S | 247 ROBERT SMALLS PARKWAY | BEAUFORT | SC | 29906 |
| WSB-648 | Badcock | Dealer-S | 1381 WEST ELM STREET | HAMPTON | SC | 29924 |
| WSB-652 | Badcock | Dealer-S | 8990 Patterson St | Barnwell | SC | 29812 |
| WSB-653 | Badcock | Dealer-S | 1245 NORTH FRASER ST | GEORGETOWI | SC | 29440 |

**Conn's Home Plus / Badcock Furniture**
Store List
Exhibit A

| Str | Banner | Type | Address | City | ST | Zip |
|---|---|---|---|---|---|---|
| WSB-655 | Badcock | Dealer-S | 304 N IVANHOE DR | WALTERBORO | SC | 29488 |
| WSB-656 | Badcock | Dealer-S | 827 N WESTOVER BLVD | ALBANY | GA | 31707 |
| WSB-657 | Badcock | Dealer-S | 1607 E LAMAR ST | AMERICUS | GA | 31709 |
| WSB-658 | Badcock | Dealer-S | 640 E WASHINGTON AVE | ASHBURN | GA | 31714 |
| WSB-659 | Badcock | Dealer-S | 523 FORRESTER DR SE | DAWSON | GA | 39842 |
| WSB-660 | Badcock | Dealer-S | 622 E FRANKLIN STREET | SYLVESTER | GA | 31791 |
| WSB-661 | Badcock | Dealer-S | 1603 E SHOTWELL ST | BAINBRIDGE | GA | 39819 |
| WSB-662 | Badcock | Dealer-S | 11210 COLUMBIA ST | BLAKELY | GA | 39823 |
| WSB-663 | Badcock | Dealer-S | 302 S WILEY AVE | DONALSONVIL | GA | 39845 |
| WSB-664 | Badcock | Dealer-S | 404 SOUTH SHERMAN | FITZGERALD | GA | 31750 |
| WSB-665 | Badcock | Dealer-S | 726 WEST SECOND ST | TIFTON | GA | 31794 |
| WSB-666 | Badcock | Dealer-S | 2961 HWY 84 EAST | CAIRO | GA | 39828 |
| WSB-667 | Badcock | Dealer-S | 500 US 19 SOUTH | CAMILLA | GA | 31730 |
| WSB-668 | Badcock | Dealer-S | 530 EAST CRAWFORD ST | COLQUITT | GA | 39837 |
| WSB-669 | Badcock | Dealer-S | 404 LANE ST SE | MOULTRIE | GA | 31768 |
| WSB-671 | Badcock | Dealer-S | 14591 US HWY 19 SOUTH | THOMASVILLE | GA | 31792 |
| WSB-672 | Badcock | Dealer-S | 3204 S EUFAULA AVE | EUFAULA | AL | 36027 |
| WSB-673 | Badcock | Dealer-S | 4165 ROSS CLARK CIRCLE | DOTHAN | AL | 36303 |
| WSB-674 | Badcock | Dealer-S | 1548 US-231 SUITE C | OZARK | AL | 36360 |
| WSB-675 | Badcock | Dealer-S | 817 S 3 NOTCH STREET | TROY | AL | 36081 |
| WSB-676 | Badcock | Dealer-S | 1702 SOUTH WAUKESHA | BONIFAY | FL | 32425 |
| WSB-677 | Badcock | Dealer-S | 217 W WASHINGTON ST | CHATTAHOOC | FL | 32324 |
| WSB-678 | Badcock | Dealer-S | 1218 MAIN STREET | CHIPLEY | FL | 32428 |
| WSB-679 | Badcock | Dealer-S | 4102 WEST LAFAYETTE | MARIANNA | FL | 32446 |
| WSB-680 | Badcock | Dealer-S | 304 W JEFFERSON ST | QUINCY | FL | 32351 |
| WSB-681 | Badcock | Dealer-S | 20291 CENTRAL AVE W | BLOUNTSTOW | FL | 32424 |
| WSB-682 | Badcock | Dealer-S | 2591 CRAWFORDVILLE HWY | CRAWFORDVII | FL | 32327 |
| WSB-683 | Badcock | Dealer-S | 204 S MAIN ST | HAVANA | FL | 32333 |
| WSB-684 | Badcock | Dealer-S | 405 S JEFFERSON ST | MONTICELLO | FL | 32344 |
| WSB-686 | Badcock | Dealer-S | 197 HIGHWAY 98 | EASTPOINT | FL | 32328 |
| WSB-687 | Badcock | Dealer-S | 544 N TYNDALL PKWY | PANAMA CITY | FL | 32404 |
| WSB-688 | Badcock | Dealer-S | 617 OHIO AVE | LYNN HAVEN | FL | 32444 |
| WSB-690 | Badcock | Dealer-S | 515 CECIL G COSTIN SR | PORT SAINT J| FL | 32456 |
| WSB-691 | Badcock | Dealer-S | 1415 MLK JR EXPY | ANDALUSIA | AL | 36420 |
| WSB-692 | Badcock | Dealer-S | 501 EAST WATER ST | GENEVA | AL | 36340 |
| WSB-693 | Badcock | Dealer-S | 5264 BROWN STREET | GRACEVILLE | FL | 32440 |
| WSB-695 | Badcock | Dealer-S | 1104 S HUTCHINSON AVE | ADEL | GA | 31620 |
| WSB-696 | Badcock | Dealer-S | 542057 US HWY 1 | CALLAHAN | FL | 32011 |
| WSB-697 | Badcock | Dealer-S | 700 N PETERSON AVE | DOUGLAS | GA | 31533 |
| WSB-698 | Badcock | Dealer-S | 700 TIFTON ROAD | NASHVILLE | GA | 31639 |
| WSB-699 | Badcock | Dealer-S | 3406 N VALDOSTA ROAD | VALDOSTA | GA | 31602 |
| WSB-700 | Badcock | Dealer-S | 106 E PARKER ST, SUITE #6 | BAXLEY | GA | 31513 |
| WSB-701 | Badcock | Dealer-S | 908 N VETERANS BLVD | GLENNVILLE | GA | 30427 |
| WSB-702 | Badcock | Dealer-S | 104 SANDY RUN DR | HINESVILLE | GA | 31313 |
| WSB-703 | Badcock | Dealer-S | 1450 W MARION AVE | LAKE PARK | GA | 31636 |
| WSB-704 | Badcock | Dealer-S | 606 PENDLETON ST | WAYCROSS | GA | 31501 |
| WSB-705 | Badcock | Dealer-S | 1808 NORWICH ST | BRUNSWICK | GA | 31520 |
| WSB-707 | Badcock | Dealer-S | 13 Elm Street | FOLKSTON | GA | 31537 |
| WSB-708 | Badcock | Dealer-S | 205 N MACON ST | JESUP | GA | 31545 |
| WSB-711 | Badcock | Dealer-S | 18179 S THIRD ST | CITRONELLE | AL | 36522 |
| WSB-712 | Badcock | Dealer-S | 306 WEST COMMERCE ST | GREENVILLE | AL | 36037 |
| WSB-713 | Badcock | Dealer-S | 1392 E FRANKLIN BLVD | GASTONIA | NC | 28054 |
| WSB-715 | Badcock | Dealer-S | 3304 AUGUSTA RD | GREENVILLE | SC | 29605 |
| WSB-716 | Badcock | Dealer-S | 841 NC 24/27 BYP E | ALBEMARLE | NC | 28001 |
| WSB-717 | Badcock | Dealer-S | 1311 N SANDHILLS BLVD | ABERDEEN | NC | 28315 |
| WSB-718 | Badcock | Dealer-S | 4511 N MAIN STREET | SHALLOTTE | NC | 28470 |
| WSB-721 | Badcock | Dealer-S | 3710 HOSPITAL RD | PASCAGOULA | MS | 39581 |
| WSB-726 | Badcock | Dealer-S | 217 MACON PLAZA DR | FRANKLIN | NC | 28734 |
| WSB-728 | Badcock | Dealer-S | 1946-B S HORNER BLVD | SANFORD | NC | 27330 |
| WSB-732 | Badcock | Dealer-S | 76 E FRONTAGE ROAD | LUCEDALE | MS | 39452 |
| WSB-734 | Badcock | Dealer-S | 6737 MARKET ST | WILMINGTON | NC | 28405 |
| WSB-736 | Badcock | Dealer-S | 301 LOWES DRIVE | DANVILLE | VA | 24540 |
| WSB-738 | Badcock | Dealer-S | 3011 NC HWY 42 WEST | WILSON | NC | 27893 |
| WSB-739 | Badcock | Dealer-S | 837 E DIXIE DRIVE | ASHEBORO | NC | 27203 |
| WSB-740 | Badcock | Dealer-S | 3356 S CHURCH ST | BURLINGTON | NC | 27215 |
| WSB-741 | Badcock | Dealer-S | 3407-C WEST GATE CITY | GREENSBORO | NC | 27407 |
| WSB-742 | Badcock | Dealer-S | 38 SOUTH PARK DRIVE | GARNER | NC | 27529 |
| WSB-744 | Badcock | Dealer-S | 1473 N WESLEYAN BLVD | ROCKY MOUN | NC | 27804 |
| WSB-750 | Badcock | Dealer-S | 1350 N BROADWAY (US 98) | BARTOW | FL | 33830 |
| WSB-751 | Badcock | Dealer-S | 1401 HWY 17 NORTH | FORT MEADE | FL | 33841 |
| WSB-752 | Badcock | Dealer-S | 500 N SCENIC HWY | FROSTPROOF | FL | 33843 |
| WSB-753 | Badcock | Dealer-S | 126 HWY 60 W | LAKE WALES | FL | 33853 |
| WSB-754 | Badcock | Dealer-S | 765 N 6TH AVE | WAUCHULA | FL | 33873 |
| WSB-755 | Badcock | Dealer-S | 10737 SE US HWY 441 | BELLEVIEW | FL | 34420 |
| WSB-757 | Badcock | Dealer-S | 421 W BELT AVE | BUSHNELL | FL | 33513 |
| WSB-758 | Badcock | Dealer-S | 3690 E GULF TO LAKE | INVERNESS | FL | 34453 |
| WSB-759 | Badcock | Dealer-S | 350 SHOPPING CENTER DR | WILDWOOD | FL | 34785 |
| WSB-761 | Badcock | Dealer-S | 14009 7TH STREET | DADE CITY | FL | 33525 |
| WSB-764 | Badcock | Dealer-S | 5500 6TH STREET | ZEPHYRHILLS | FL | 33542 |
| WSB-766 | Badcock | Dealer-S | 7305 State Road 54 | NEW PORT RI( | FL | 34653 |
| WSB-768 | Badcock | Dealer-S | 1510 COLLEGE AVE E | RUSKIN | FL | 33570 |
| WSB-770 | Badcock | Dealer-S | 225 SW AVE B | BELLE GLADE | FL | 33430 |
| WSB-771 | Badcock | Dealer-S | 117 S. BOND ST | CLEWISTON | FL | 33440 |
| WSB-773 | Badcock | Dealer-S | 512 NORTHWEST PARK ST | OKEECHOBEE | FL | 34972 |
| WSB-776 | Badcock | Dealer-S | 6175 BABCOCK ST SE | PALM BAY | FL | 32909 |
| WSB-777 | Badcock | Dealer-S | 5045 US 1 SOUTH | FORT PIERCE | FL | 34982 |
| WSB-779 | Badcock | Dealer-S | 1610 US HWY 1 | VERO BEACH | FL | 32960 |
| WSB-780 | Badcock | Dealer-S | 594 US 27 NORTH | LAKE PLACID | FL | 33852 |
| WSB-781 | Badcock | Dealer-S | 2051 N HARBOR CITY B | MELBOURNE | FL | 32935 |
| WSB-783 | Badcock | Dealer-S | 1917 US 27 NORTH | SEBRING | FL | 33870 |
| WSB-785 | Badcock | Dealer-S | 521 HUGHES ROAD | AUBURNDALE | FL | 33823 |
| WSB-786 | Badcock | Dealer-S | 607 U.S. HWY 27 N | AVON PARK | FL | 33825 |
| WSB-787 | Badcock | Dealer-S | 35495 HWY 27 | HAINES CITY | FL | 33844 |
| WSB-789 | Badcock | Dealer-S | 1515 HIGHWAY 17 N | EAGLE LAKE | FL | 33839 |
| WSB-791 | Badcock | Dealer-S | 1750 E IRLO BRONSON MEM | SAINT CLOUD | FL | 34771 |
| WSB-793 | Badcock | Dealer-S | 14 W HICKORY ST | ARCADIA | FL | 34266 |
| WSB-795 | Badcock | Dealer-S | 6920 CORTEZ RD WEST | BRADENTON | FL | 34210 |
| WSB-796 | Badcock | Dealer-S | 1529 US 301 | PALMETTO | FL | 34221 |
| WSB-798 | Badcock | Dealer-S | 136 HANCOCK BRIDGE PKY | CAPE CORAL | FL | 33990 |
| WSB-800 | Badcock | Dealer-S | 3608 FOWLER ST | FORT MYERS | FL | 33901 |
| WSB-801 | Badcock | Dealer-S | 1039 TAMIAMI TRAIL | PORT CHARLC | FL | 33953 |
| WSB-806 | Badcock | Dealer-S | 575 S MAIN ST | LABELLE | FL | 33935 |
| WSB-807 | Badcock | Dealer-S | 2665 DAVIS BLVD | NAPLES | FL | 34104 |
| WSB-808 | Badcock | Dealer-S | 1530 MASON AVENUE | DAYTONA BEA | FL | 32117 |
| WSB-809 | Badcock | Dealer-S | 1631 S STATE ROAD 15-A | DELAND | FL | 32720 |
| WSB-811 | Badcock | Dealer-S | 650 LAKE MINNIE DRIVE | SANFORD | FL | 32773 |
| WSB-815 | Badcock | Dealer-S | 705 S. MAIN ST STE G | KING | NC | 27021 |
| WSB-818 | Badcock | Dealer-S | 400 N GROVE STREET | EUSTIS | FL | 32726 |
| WSB-819 | Badcock | Dealer-S | 2901 Cashwell Drive | GOLDSBORO | NC | 27534 |
| WSB-820 | Badcock | Dealer-S | 21 E MAIN STREET | TITUSVILLE | FL | 32796 |
| WSB-821 | Badcock | Dealer-S | 9909 STATE ROAD 52 | HUDSON | FL | 34669 |
| WSB-822 | Badcock | Dealer-S | 10213 S JACOB SMART BLVD | RIDGELAND | SC | 29936 |

Conn's Home Plus / Badcock Furniture
Store List
Exhibit A

| Str | Banner | Type | Address | City | ST | Zip |
|---|---|---|---|---|---|---|
| WSB-824 | Badcock | Dealer-S | 735 HELEN HWY | CLEVELAND | GA | 30528 |
| WSB-826 | Badcock | Dealer-S | 150 GILES DR | BOILING SPRIN | SC | 29316 |
| WSB-828 | Badcock | Dealer-S | 1117 YADKINVILLE ROAD | MOCKSVILLE | NC | 27028 |
| WSB-829 | Badcock | Dealer-S | 2445 N CENTER STREET | HICKORY | NC | 28601 |
| WSB-830 | Badcock | Dealer-S | 1422 BOONE HILL ROAD | SUMMERVILLE | SC | 29483 |
| WSB-831 | Badcock | Dealer-S | 189 HICKORY TREE RD | WINSTON SAL | NC | 27107 |
| WSB-832 | Badcock | Dealer-S | 2522 DAVID H MCLEOD BLVD | FLORENCE | SC | 29501 |
| WSB-833 | Badcock | Dealer-S | 1130 W PINE STREET | MOUNT AIRY | NC | 27030 |
| WSB-834 | Badcock | Dealer-S | 1720 SAM RITTENBERG BLVD | CHARLESTON | SC | 29407 |
| WSB-836 | Badcock | Dealer-S | 1665 E ANDREW JOHNSON | GREENEVILLE | TN | 37745 |
| WSB-838 | Badcock | Dealer-S | 1450 S KINGS HWY | MYRTLE BEAC | SC | 29577 |
| WSB-841 | Badcock | Dealer-S | 2507 WEST MEIGHAN BLVD | GADSDEN | AL | 35904 |
| WSB-842 | Badcock | Dealer-S | 1935 JAKE ALEXANDER | SALISBURY | NC | 28147 |
| WSB-843 | Badcock | Dealer-S | 721 E CUMBERLAND STREET | DUNN | NC | 28334 |
| WSB-846 | Badcock | Dealer-S | 2730 DECKER BLVD | COLUMBIA | SC | 29206 |
| WSB-847 | Badcock | Dealer-S | 6900 CLIFFDALE ROAD | FAYETTEVILLE | NC | 28314 |
| WSB-848 | Badcock | Dealer-S | 3642 RAMSEY STREET | FAYETTEVILLE | NC | 28311 |
| WSB-851 | Badcock | Dealer-S | 2507 REDMOND CIRCLE | ROME | GA | 30165 |
| WSB-854 | Badcock | Dealer-S | 219-B E. PLAZA DRIVE | MOORESVILLE | NC | 28115 |
| WSB-855 | Badcock | Dealer-S | 1228 WILSON ROAD | NEWBERRY | SC | 29108 |
| WSB-858 | Badcock | Dealer-S | 5900 RIVERS AVENUE | CHARLESTON | SC | 29406 |
| WSB-863 | Badcock | Dealer-S | 1460 EUCLID AVE | BRISTOL | VA | 24201 |
| WSB-866 | Badcock | Dealer-S | 917 EAST MAIN STREET | LAURENS | SC | 29360 |
| WSB-868 | Badcock | Dealer-S | 732 WEST MAIN STREET | LEXINGTON | SC | 29072 |
| WSB-873 | Badcock | Dealer-S | 4610 CLYDE MORRIS BLVD | PORT ORANGE | FL | 32129 |
| WSB-875 | Badcock | Dealer-S | 3108 EAST OAKLAND AVE | JOHNSON CITY | TN | 37601 |
| WSB-876 | Badcock | Dealer-S | 409 SOUTHEAST BLVD | CLINTON | NC | 28328 |
| WSB-878 | Badcock | Dealer-S | 3901 CAPITAL BOULEVARD | RALEIGH | NC | 27604 |
| WSB-879 | Badcock | Dealer-S | 5367 WOODBINE ROAD | MILTON | FL | 32571 |
| WSB-880 | Badcock | Dealer-S | 2501-A W MOODY BLVD | FLAGLER BEA | FL | 32136 |
| WSB-881 | Badcock | Dealer-S | 5810-3 NORMANDY BLVD | JACKSONVILLE | FL | 32205 |
| WSB-882 | Badcock | Dealer-S | 1227 CHEROKEE RD | ALEXANDER C | AL | 35010 |
| WSB-883 | Badcock | Dealer-S | 406 E. MARTINTOWN RD | NORTH AUGUS | SC | 29841 |
| WSB-884 | Badcock | Dealer-S | 234 COLE AVE | RAEFORD | NC | 28376 |
| WSB-885 | Badcock | Dealer-S | 375 W LINCOLN ST | TULLAHOMA | TN | 37388 |
| WSB-891 | Badcock | Dealer-S | 2614 ENTERPRISE RD | ORANGE CITY | FL | 32763 |
| WSB-892 | Badcock | Dealer-S | 1704 N FRONTAGE RD | MERIDIAN | MS | 39301 |
| WSB-893 | Badcock | Dealer-S | 300 SOUTHWEST HWY 80 | POOLER | GA | 31322 |
| WSB-896 | Badcock | Dealer-S | 1124 S POLLOCK STREET | SELMA | NC | 27576 |
| WSB-897 | Badcock | Dealer-S | 771 SOUTH ORANGE BLOSSOM | APOPKA | FL | 32703 |
| WSB-89B | Badcock | Dealer-S | 2523 OLD VINELAND RD | KISSIMMEE | FL | 34746 |
| 29 | Conn's | Conn's | 1020 WEST NASA ROAD | WEBSTER | TX | 77598 |
| 71 | Conn's | Conn's | 11051 NORTHWEST FREEWAY | HOUSTON | TX | 77092 |
| 81 | Conn's | Conn's | 11250 NORTH CENTRAL EXPY | DALLAS | TX | 75243 |
| 83 | Conn's | Conn's | 2422 S STEMMONS FWY | LEWISVILLE | TX | 75067 |
| 97 | Conn's | Conn's | 4351 DFW TURNPIKE #300 | DALLAS | TX | 75211 |
| 111 | Conn's | Conn's | MIDLAND CENTER SHOPPING C | OKLAHOMA CI | OK | 73112 |
| 116 | Conn's | Conn's | 1615 PENN PARK BLVD | OKLAHOMA CI | OK | 73159 |
| 123 | Conn's | Conn's | 5530 E BROADWAY BLVD | TUCSON | AZ | 85711 |
| 127 | Conn's | Conn's | 10143 E 71 ST | TULSA | OK | 74133 |
| 130 | Conn's | Conn's | 5000 S ARIZONA MILLS CIR | TEMPE | AZ | 85282 |
| 135 | Conn's | Conn's | 1190 S. CASTLE DOME AVE | YUMA | AZ | 85364 |
| 136 | Conn's | Conn's | 7081 YOUREE DR | SHREVEPORT | LA | 71105 |
| 143 | Conn's | Conn's | 2820 W. CHANDLER BLVD | CHANDLER | AZ | 85224 |
| 145 | Conn's | Conn's | 80 S ABILENE | AURORA | CO | 80012 |
| 147 | Conn's | Conn's | 7360 W 52ND AV | ARVADA | CO | 80002 |
| 148 | Conn's | Conn's | 3742 W RIVER ROAD | TUCSON | AZ | 85741 |
| 149 | Conn's | Conn's | 3950 RIVER POINT PARKWAY | ENGLEWOOD | CO | 80110 |
| 151 | Conn's | Conn's | 1655 GALLATIN PIKE NORTH | MADISON | TN | 37115 |
| 154 | Conn's | Conn's | 2820 WEST DUNLAP | PHOENIX | AZ | 85051 |
| 157 | Conn's | Conn's | 151 N PETERS RD | KNOXVILLE | TN | 37923 |
| 159 | Conn's | Conn's | 1051 E COUNTY LINE RD | JACKSON | MS | 39211 |
| 161 | Conn's | Conn's | 3525 RIVERDALE ROAD | MEMPHIS | TN | 38115 |
| 164 | Conn's | Conn's | 2530 DAVID MCLEOD | FLORENCE | SC | 29501 |
| 173 | Conn's | Conn's | 120 BCROMAN DR | FORT COLLINS | CO | 80525 |
| 174 | Conn's | Conn's | 345 N ACADEMY BLVD | COLORADO SI | CO | 80909 |
| 177 | Conn's | Conn's | 9567 SOUTH BOULEVARD | CHARLOTTE | NC | 28273 |
| 183 | Conn's | Conn's | 550 E 102ND AVE | DENVER | CO | 80229 |
| 189 | Conn's | Conn's | 3260 AUSTIN PEAY HIGHWAY | MEMPHIS | TN | 38128 |
| 194 | Conn's | Conn's | 6921 E ADMIRAL, PL | TULSA | OK | 74115 |
| 197 | Conn's | Conn's | 5704 E. INDEPENDENCE BLVD | CHARLOTTE | NC | 28212 |
| 199 | Conn's | Conn's | ARCADIA CROSSING | PHOENIX | AZ | 85018 |
| 201 | Conn's | Conn's | 570 MAIN STREET | SOUTHAVEN | MS | 38671 |
| 202 | Conn's | Conn's | 3508 GATE CITY BLVD | GREENSBORO | NC | 27407 |
| 203 | Conn's | Conn's | 3650 MILLHAVEN RD | MONROE | LA | 71203 |
| 205 | Conn's | Conn's | 4960 CENTRE POINTE DRIVE | NORTH CHARL | SC | 29418 |
| 211 | Conn's | Conn's | 3437 MASONIC DR | ALEXANDRIA | LA | 71301 |
| 214 | Conn's | Conn's | 4969 NINE MILE RD | RICHMOND | VA | 23223 |
| 224 | Conn's | Conn's | 2900 E MILLBROOK ROAD | RALEIGH | NC | 27604 |
| 237 | Conn's | Conn's | 2550 AIRLINE BLVD. | PORTSMOUTH | VA | 23703 |
| 238 | Conn's | Conn's | 3421 VIRGINIA BEACH BLVD | VIRGINIA BEAC | VA | 23452 |
| 240 | Conn's | Conn's | 1082 W. MERCURY BLVD | HAMPTON | VA | 23666 |
| 244 | Conn's | Conn's | 10780 N. MALL DRIVE | BATON ROUGE | LA | 70809 |
| 251 | Conn's | Conn's | 120 SOUTHGATE SQUARE | COLONIAL HEI | VA | 23834 |
| 253 | Conn's | Conn's | 9530 PARKWAY EAST ROEBUCK | BIRMINGHAM | AL | 35215 |
| 255 | Conn's | Conn's | 150 NORTHSHORE BOULEVARD | SLIDELL | LA | 70460 |
| 258 | Conn's | Conn's | 4200 S. FREEWAY | FORT WORTH | TX | 76115 |
| 272 | Conn's | Conn's | 4495 14TH STREET W. | BRADENTON | FL | 34207 |
| 280 | Conn's | Conn's | 3908 W HILLSBOROUGH AVE | TAMPA | FL | 33614 |
| 281 | Conn's | Conn's | 105 W VINE STREET | KISSIMMEE | FL | 34741 |
| 284 | Conn's | Conn's | 7407 WEST COLONIAL DRIVE | ORLANDO | FL | 32818 |
| 285 | Conn's | Conn's | 2628 EAST COLONIAL DRIVE | ORLANDO | FL | 32803 |
| 287 | Conn's | Conn's | 3915-A KELL BLVD | WICHITA FALL | TX | 76308 |
| 291 | Conn's | Conn's | 1631 FLORIDA MALL AVE | ORLANDO | FL | 32809 |
| 292 | Conn's | Conn's | 810 SAXON BLVD | ORANGE CITY | FL | 32763 |
| 293 | Conn's | Conn's | 2800 SW 24TH AVE. | OCALA | FL | 34471 |
| 294 | Conn's | Conn's | 8642 US HIGHWAY 19 NORTH | PORT RICHEY | FL | 34668 |
| 295 | Conn's | Conn's | 5431 N INTERSTATE 35 | AUSTIN | TX | 78723 |
| 296 | Conn's | Conn's | 2500 W INTERNATIONAL | DAYTONA BEA | FL | 32114 |
| 297 | Conn's | Conn's | 130 E.ALTAMONTE DRIVE | ALTAMONTE S | FL | 32701 |
| 298 | Conn's | Conn's | 2315 RICHMOND ROAD | TEXARKANA | TX | 75503 |
| 302 | Conn's | Conn's | 7300 US HIGHWAY 19 N | PINELLAS PAR | FL | 33781 |
| 304 | Conn's | Conn's | 1825 ROCKBRIDGE ROAD | STONE MOUNT | GA | 30087 |
| 305 | Conn's | Conn's | 548 JOHN ROSS PARKWAY | ROCK HILL | SC | 29730 |
| 307 | Conn's | Conn's | 3890 WEST 18TH AVE | HIALEAH | FL | 33012 |
| 308 | Conn's | Conn's | 1098 BULLSBORO DRIVE | NEWNAN | GA | 30265 |
| 309 | Conn's | Conn's | 4340 OKEECHOBEE | WEST PALM B | FL | 33409 |
| 311 | Conn's | Conn's | 9278 ARLINGTON EXPRESSWAY | JACKSONVILLE | FL | 32225 |
| 313 | Conn's | Conn's | 1779 MARTIN LUTHER KING | HOUMA | LA | 70360 |
| 318 | Conn's | Conn's | 1433 S BADCOCK STREET | MELBOURNE | FL | 32901 |
| 319 | Conn's | Conn's | 9903 S. MILITARY TRAIL | BOYNTON BEA | FL | 33436 |
| 321 | Conn's | Conn's | 500 N. UNIVERSITY DRIVE | HOLLYWOOD | FL | 33024 |

**Conn's Home Plus / Badcock Furniture**
Store List
Exhibit A

| Str | Banner | Type | Address | City | ST | Zip |
|---|---|---|---|---|---|---|
| 269 | Conn's | Conn's | 7171 N. DAVIS, SUITE 300 | PENSACOLA | FL | 32504 |
| 290 | Conn's | Conn's | 5776 Stemmons Dr | San Antonio | TX | 78238 |
| 271 | Conn's | Conn's | 3250 AIRPORT BLVD | MOBILE | AL | 36608 |
| 242 | Conn's | Conn's | 5245 VETERANS MEMORIAL | METAIRIE | LA | 70006 |
| 241 | Conn's | Conn's | 2424 MANHATTAN BLVD | HARVEY | LA | 70058 |
| 11 | Conn's | Conn's | 3316 AMBASSADOR CAFFERY | LAFAYETTE | LA | 70506 |
| 9 | Conn's | Conn's | 8888 AIRLINE HIGHWAY | BATON ROUGE | LA | 70815 |
| 236 | Conn's | Conn's | 3166 S. HIGHWAY 161 | GRAND PRAIRIE | TX | 75052 |
| 86 | Conn's | Conn's | 800 W. 15TH ST | PLANO | TX | 75075 |
| 84 | Conn's | Conn's | 2021 TOWN EAST BLVD | MESQUITE | TX | 75149 |
| 89 | Conn's | Conn's | 3450 BAINBRIDGE DR | DALLAS | TX | 75237 |
| 288 | Conn's | Conn's | 3510 MCCANN RD | LONGVIEW | TX | 75605 |
| 249 | Conn's | Conn's | 4931 S BROADWAY AVE | TYLER | TX | 75703 |
| 94 | Conn's | Conn's | 137 MERCHANTS ROW #125 | ARLINGTON | TX | 76018 |
| 110 | Conn's | Conn's | 12850 S FREEWAY | BURLESON | TX | 76028 |
| 88 | Conn's | Conn's | 900 NE LOOP 820 | HURST | TX | 76053 |
| 92 | Conn's | Conn's | 4617 S HULEN ST | FORT WORTH | TX | 76132 |
| 121 | Conn's | Conn's | 6592 LAKE WORTH BLVD | FORT WORTH | TX | 76135 |
| 274 | Conn's | Conn's | 2201 S INTERSTATE 35 | DENTON | TX | 76205 |
| 139 | Conn's | Conn's | 2510 S. SONCY ROAD | AMARILLO | TX | 79124 |
| 162 | Conn's | Conn's | 6052 MARSHA SHARP FREEWAY | LUBBOCK | TX | 79407 |
| 273 | Conn's | Conn's | 3725 CATCLAW DRIVE | ABILENE | TX | 79606 |
| 267 | Conn's | Conn's | 750 SUNLAND PARK DRIVE | EL PASO | TX | 79912 |
| 118 | Conn's | Conn's | 6101 GATEWAY WEST | EL PASO | TX | 79925 |
| 176 | Conn's | Conn's | 1971 ZARAGOZA ROAD | EL PASO | TX | 79938 |
| 120 | Conn's | Conn's | 700 S TELSHORE BLVD | LAS CRUCES | NM | 88011 |
| 276 | Conn's | Conn's | 8401 FL 33 | LAKELAND | FL | 33809 |
| 6 | Conn's | Conn's | 3401 DEREK DR | LAKE CHARLES | LA | 70607 |
| 79 | Conn's | Conn's | 3047 S JOHN REDDITT DRIVE | LUFKIN | TX | 75904 |
| 26 | Conn's | Conn's | 13337 I-H 10 | HOUSTON | TX | 77015 |
| 27 | Conn's | Conn's | 4446 NORTH FREEWAY | HOUSTON | TX | 77022 |
| 129 | Conn's | Conn's | 9567 S MAIN STREET | HOUSTON | TX | 77025 |
| 17 | Conn's | Conn's | 8201 S. GESSNER | HOUSTON | TX | 77036 |
| 316 | Conn's | Conn's | 9700 N. FREEWAY | HOUSTON | TX | 77037 |
| 25 | Conn's | Conn's | 7736 FM 1960 | HOUSTON | TX | 77070 |
| 266 | Conn's | Conn's | 1401 Rankin Rd | Houston | TX | 77073 |
| 18 | Conn's | Conn's | 10025 ALMEDA GENOA ROAD | HOUSTON | TX | 77075 |
| 78 | Conn's | Conn's | 14500 WESTHEIMER | HOUSTON | TX | 77077 |
| 247 | Conn's | Conn's | 6148 HIGHWAY 6, NORTH | HOUSTON | TX | 77084 |
| 70 | Conn's | Conn's | 6888 GULF FREEWAY | HOUSTON | TX | 77087 |
| 73 | Conn's | Conn's | 1420 WEST LOOP 336 NORTH | CONROE | TX | 77301 |
| 24 | Conn's | Conn's | 19611 HWY 59 NORTH STE D | HUMBLE | TX | 77338 |
| 112 | Conn's | Conn's | 19746 INTERSTATE 45 | SPRING | TX | 77373 |
| 21 | Conn's | Conn's | 20051 KATY FREEWAY | KATY | TX | 77450 |
| 76 | Conn's | Conn's | 12730 FOUNTAIN LAKE CIRCL | STAFFORD | TX | 77477 |
| 105 | Conn's | Conn's | 3931 FAIRWAY PLAZA DRIVE | PASADENA | TX | 77505 |
| 77 | Conn's | Conn's | 5010 GARTH ROAD | BAYTOWN | TX | 77521 |
| 102 | Conn's | Conn's | 2800 E BROADWAY | PEARLAND | TX | 77581 |
| 248 | Conn's | Conn's | 3405 PALMER HIGHWAY | TEXAS CITY | TX | 77590 |
| 5 | Conn's | Conn's | 7855 MEMORIAL BLVD | PORT ARTHUR | TX | 77642 |
| 2 | Conn's | Conn's | 108 GATEWAY SHOPPING CTR | BEAUMONT | TX | 77701 |
| 12 | Conn's | Conn's | 4326 DOWLEN ROAD | BEAUMONT | TX | 77706 |
| 282 | Conn's | Conn's | 1502 HARVEY ROAD | COLLEGE STA | TX | 77840 |
| 47 | Conn's | Conn's | 4818 S PADRE ISLAND DR | CORPUS CHRI | TX | 78411 |
| 41 | Conn's | Conn's | 724 E EXPRESSWAY HWY 83 | MCALLEN | TX | 78501 |
| 106 | Conn's | Conn's | 8317 N. 10TH ST | MCALLEN | TX | 78504 |
| 43 | Conn's | Conn's | 4465 N EXPRESSWAY 77/83 | BROWNSVILLE | TX | 78520 |
| 42 | Conn's | Conn's | 706 S DIXIELAND RD | HARLINGEN | TX | 78552 |
| 312 | Conn's | Conn's | 6580 DOUGLAS BLVD | DOUGLASVILL | GA | 30135 |
| 314 | Conn's | Conn's | 123 PAVILION PARKWAY | FAYETTEVILLE | GA | 30214 |
| 303 | Conn's | Conn's | 5555 WHITTLESEY BLVD | COLUMBUS | GA | 31909 |
| 257 | Conn's | Conn's | 251 LAKESHORE PARKWAY | BIRMINGHAM | AL | 35209 |
| 221 | Conn's | Conn's | 6125 UNIVERSITY DR NW | HUNTSVILLE | AL | 35806 |
| 252 | Conn's | Conn's | 2424 EASTERN BOULEVARD | MONTGOMERY | AL | 36117 |
| 184 | Conn's | Conn's | 5330 CANE RIDGE RD STE108 | ANTIOCH | TN | 37013 |
| 219 | Conn's | Conn's | 5844 BRAINERD RD | CHATTANOOG | TN | 37411 |
| 190 | Conn's | Conn's | 3925 OXFORD STATION WAY | WINSTON SAL | NC | 27103 |
| 231 | Conn's | Conn's | 3121 GARDEN ROAD | BURLINGTON | NC | 27215 |
| 306 | Conn's | Conn's | 2580 TIMBER DRIVE | GARNER | NC | 27529 |
| 225 | Conn's | Conn's | 1100 N WESLEYAN BLVD | ROCKY MOUN | NC | 27804 |
| 185 | Conn's | Conn's | 197 SOUTH NEW HOPE RD | GASTONIA | NC | 28054 |
| 186 | Conn's | Conn's | UNIVERSITY PLAZA | CHARLOTTE | NC | 28262 |
| 175 | Conn's | Conn's | 1748 SKIBO RD, UNIT 100 | FAYETTEVILLE | NC | 28303 |
| 213 | Conn's | Conn's | 1810 US HIGHWAY 70 SE | HICKORY | NC | 28602 |
| 195 | Conn's | Conn's | 106 PEACHWOOD CENTER | SPARTANBUR | SC | 29301 |
| 158 | Conn's | Conn's | 605 HAYWOOD ROAD | GREENVILLE | SC | 29607 |
| 192 | Conn's | Conn's | 596 BOBBY JONES | AUGUSTA | GA | 30907 |
| 131 | Conn's | Conn's | 7333 W. THOMAS RD | PHOENIX | AZ | 85033 |
| 128 | Conn's | Conn's | 1655 SOUTH STAPLEY DRIVE | MESA | AZ | 85204 |
| 141 | Conn's | Conn's | 15305 W MCDOWELL RD | GOODYEAR | AZ | 85338 |
| 206 | Conn's | Conn's | 4208 CENTRAL AVE SW | ALBUQUERQU | NM | 87105 |
| 138 | Conn's | Conn's | 10000 COORS BLVD | ALBUQUERQU | NM | 87114 |
| 119 | Conn's | Conn's | 45 HOTEL CIRCLE SUITE 101 | ALBUQUERQU | NM | 87123 |
| 299 | Conn's | Conn's | 4250 CERRILLOS ROAD | SANTA FE | NM | 87507 |
| 196 | Conn's | Conn's | 2201 CIVIC CENTER DR | NORTH LAS VE | NV | 89030 |
| 140 | Conn's | Conn's | 3185 E. TROPICANA | LAS VEGAS | NV | 89121 |
| 208 | Conn's | Conn's | 120 S RAINBOW BLVD | LAS VEGAS | NV | 89145 |
| 210 | Conn's | Conn's | 1101 S. FORT HOOD STREET | KILLEEN | TX | 76541 |
| 117 | Conn's | Conn's | 230 N NEW ROAD | WACO | TX | 76710 |
| 259 | Conn's | Conn's | 4001 SUNSET DRIVE | SAN ANGELO | TX | 76904 |
| 122 | Conn's | Conn's | 2420 BOB BULLOCK LOOP | LAREDO | TX | 78043 |
| 264 | Conn's | Conn's | 8270 AGORA PARKWAY | SCHERTZ | TX | 78154 |
| 96 | Conn's | Conn's | 25 NE I-410 LOOP | SAN ANTONIO | TX | 78216 |
| 68 | Conn's | Conn's | 7730 I-H 35 NORTH | SAN ANTONIO | TX | 78218 |
| 61 | Conn's | Conn's | 2514 S W MILITARY | SAN ANTONIO | TX | 78221 |
| 75 | Conn's | Conn's | 3143 SE MILITARY DRIVE | SAN ANTONIO | TX | 78223 |
| 64 | Conn's | Conn's | 1339 SW LOOP 410, | SAN ANTONIO | TX | 78227 |
| 62 | Conn's | Conn's | 4999 NW LOOP 410 | SAN ANTONIO | TX | 78229 |
| 262 | Conn's | Conn's | 4807 W COMMERCE ST | SAN ANTONIO | TX | 78237 |
| 46 | Conn's | Conn's | 11650 BANDERA ROAD | SAN ANTONIO | TX | 78250 |
| 233 | Conn's | Conn's | 917 TX-80 | SAN MARCOS | TX | 78666 |
| 66 | Conn's | Conn's | 9900 IH-35 SOUTH, BLDG H | AUSTIN | TX | 78748 |
| 48 | Conn's | Conn's | 12901 NORTH IH35 | AUSTIN | TX | 78753 |
| 137 | Conn's | Conn's | 6976 EAST HWY 191 | ODESSA | TX | 79765 |
| 320 | Conn's | Conn's | 2930-2 Watson Blvd | Centerville | GA | 31028 |
| ECOM - WSB | Badcock | Ecom | https://www.badcock.com/ | | | |
| ECOM - CONN'S | Conn's | Ecom | https://www.conns.com/ | | | |

**<u>Amended Exhibit B</u>**

**Amended Expense Budget**

Exhibit B
Consultant Expense Budget

| | |
|---|---:|
| Consultant Advertising | 12,300,000 |
| Consultant Supervision | 6,850,000 |
| Misc / Legal | 100,000 |
| **Total Consultant Expense** | **$19,250,000** |

**<u>Exhibit 2</u>**

**Store Closing Procedures**

## Store Closing Procedures[1]

1.  The Store Closing Sales will be conducted during normal business hours or such hours as otherwise permitted by the applicable unexpired lease.

2.  The Store Closing Sales will be conducted in accordance with applicable state and local "Blue Laws," and thus, where such a law is applicable, no Store Closing Sales will be conducted on Sunday unless the Debtors have been operating such stores on Sundays.

3.  On "shopping center" property, neither the Debtors nor, if applicable, the Consultant shall distribute handbills, leaflets, or other written materials to customers outside of any stores' premises, unless permitted by the applicable lease or if distribution is customary in the "shopping center" in which such store is located; provided that the Debtors and, if applicable, the Consultant may solicit customers in the stores themselves. On "shopping center" property, neither the Debtors nor, if applicable, the Consultant shall use any flashing lights or amplified sound to advertise the Store Closing Sales or solicit customers, except as permitted under the applicable lease or agreed in writing by the landlord.

4.  The Debtors and the Consultant shall have the right to use and sell the FF&E. The Debtors and, if applicable, the Consultant may advertise the sale of the FF&E in a manner consistent with these Store Closing Procedures. The purchasers of any FF&E sold during the Store Closing Sales shall be permitted to remove the FF&E either through the back or alternative shipping areas at any time, or through other areas after Store business hours; provided, however, that the foregoing shall not apply to de minimis FF&E sales made whereby the item can be carried out of a Store in a shopping bag.

5.  The Debtors and the Consultant may, but are not required to, advertise the Store Closing Sales as "store closing," "going out of business," "sale on everything," "everything must go," or such other mutually agreed upon themed sale throughout the Sale Term in the Stores and on the Website. The Debtors and, if applicable, the Consultant may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Store Closing Procedures.

6.  The Debtors and the Consultant shall be permitted to utilize sign walkers, displays, hanging signs, and interior banners in connection with the Store Closing Sales; provided that such sign walkers, displays, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. Neither the Debtors nor the Consultant shall use neon or day-glo on its sign walker signs, displays, hanging signs, or interior banners if prohibited by the applicable lease or applicable law. Furthermore, with respect to enclosed mall locations, no exterior signs, or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures. In addition, the Debtors and the Consultant shall be permitted to utilize exterior banners at (a) non-enclosed mall stores and (b) enclosed mall stores to the extent the entrance to the applicable Store does

---

[1] Capitalized terms used but not defined in these Store Closing Procedures have the meanings given to them in the Interim Order to which these Store Closing Procedures are attached as Exhibit 2, or the Motion to which the Interim Order is attached, as applicable.

not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Store Closing Sale is being conducted only at the affected Store and shall not be wider than the storefront of the Store. In addition, the Debtors shall be permitted to utilize sign walkers in a safe and professional manner.  Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

7.  Neither the Debtors nor the Consultant shall make any alterations to the storefront, roof, or exterior walls of any stores or shopping centers, or to interior or exterior store lighting, except as authorized by the applicable lease.  The hanging of in-Store signage shall not constitute an alteration to a Store.

8.  Affected landlords will have the ability to negotiate with the Debtors, or at the Debtors' direction, the Consultant, modifications to the Store Closing Procedures.  The Debtors and the landlord of any Store are authorized to enter into agreements ("Side Letters") without further order of the Court, provided that Side Letters do not have a material adverse effect on the Debtors or their estates.

9.  To the extent relevant, as set forth in more detail in the Consulting Agreement, conspicuous signs will be posted in each of the affected stores to the effect that all Store Closing Sales are "final."

10. The Debtors will keep store premises and surrounding areas clear and orderly, consistent with past practices.

11. An unexpired nonresidential real property lease will not be deemed rejected by reason of a Store Closing or the adoption of these Store Closing Procedures.

12. The rights of landlords against the Debtors for any damages to a store shall be reserved in accordance with the provisions of the applicable lease.

13. If and to the extent that the landlord of any Store contends that the Debtors or the Consultant are in breach of or default under these Store Closing Procedures, such landlord shall provide at least five (5) days' written notice, served by email or overnight delivery, of:

> **If to the Debtors:**
> Conn's, Inc.
> 2445 Technology Forest Blvd., Suite 800,
> The Woodlands, TX 77381
> Attn: Legal Dept.
>
> with copies to:
>
> Sidley  Austin, LLP
> 1000 Louisiana St #6000,
> Houston, TX 77002

Attn: Duston McFaul
Email: dmcfaul@sidley.com
        mquejada@sidley.com
        msabino@sidley.com

**If to the Consultant:**
B. Riley Retail Solutions, LLC
299 Park Avenue, 21st Floor
New York, NY 10171
Attn: Rebecca W. Hollander, Esq.
Email: rhollander@brileyfin.com
        legal@brileyfin.com

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.