**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-33357 (ARP)** |
| **CONN'S, INC.,** *et al.,*[1] | § | |
| | § | **Chapter 11** |
| **Debtors.** | § | **(Jointly Administered)** |

**LIMITED OBJECTION AND JOINDER OF CERTAIN LANDLORDS TO DEBTORS'
AMENDED EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING, (B) UTILIZE CASH COLLATERAL, AND (C) GRANT LIENS AND
PROVIDE SUPERPRIORITY ADMINISTRATIVE CLAIMS; (II) GRANTING
ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES; (III)
MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING;
AND (V) GRANTING RELATED RELIEF**

International Speedway Square, Ltd. and KRG Lake Worth Towne Crossing, LLC
(collectively, the "**Landlords**") by their undersigned attorneys, make this objection (the
"**Objection**") to *Debtors' Amended Emergency Motion for Entry of Interim and Final Orders
(I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Utilize Cash Collateral,
and (C) Grant Liens and Provide Superpriority Administrative Claims; (II) Granting Adequate
Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV)
Scheduling a Final Hearing; and (VII) Granting Related Relief* (Docket No. 47) (the "**DIP
Motion**") and in support thereof respectfully state as follows:

Landlords are the owners or agents for the owners of certain shopping centers, described
below in which certain Debtors operate retail stores pursuant to unexpired nonresidential real
property leases, which are affected by the relief sought by the DIP Motion.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification
number, are: Conn's, Inc. (2840), Conn Appliances, Inc. (0706), CAI Holding, LLC (2675), Conn Lending, LLC
(9857), Conn Credit I, LP (0545), Conn Credit Corporation, Inc. (9273), CAI Credit Insurance Agency, Inc. (5846),
New RTO, LLC (6400), W.S. Badcock LLC (2010), W.S. Badcock Credit LLC (5990), and W.S. Badcock Credit I
LLC (6422). The Debtor's service address is 2445 Technology Forest Blvd., Suite 800, The Woodlands, TX 77381.

I. **BACKGROUND**

1.      On July 23, 2024 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**"), which cases have been jointly consolidated for administrative purposes only (the "**Bankruptcy Cases**"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Bankruptcy Cases.

2.      Debtors granted Landlords an extension of the initial deadline to object to the DIP motion through and including August 21, 2024. This Objection is timely filed.

3.      Debtor Conn Appliances, Inc. ("**Tenant Debtor**") leases retail space (the "**Premises**") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "**Lease**," and collectively, the "**Leases**") at the locations (the "**Centers**") listed below:

| Landlord | Shopping Center | City/State |
|---|---|---|
| KRG Lake Worth Towne Crossing, LLC | Lake Worth Towne Crossing | Lake Worth, TX |
| International Speedway Square, Ltd. | International Speedway Square | Daytona, FL |

4.      Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5.      On July 24, 2024, the Debtors filed the DIP Motion. After a hearing held on July 24, 2024 (the "**Interim Hearing**"), the Court entered an interim order approving certain of the relief requested in the DIP Motion on an interim basis (Docket No. 86) (the "**Interim Order**"). The DIP Motion seeks authority for the Debtors to procure DIP financing from various DIP

KC 22755049.3

Lenders (as defined in the DIP Motion and Interim Order) with JPMorgan Chase Bank, N.A. as DIP Agent to (i) fund general working capital; and (ii) fund restructuring and operational expenses.

6.      On July 24, 2024, the Court also approved the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Approving and Authorizing the Debtors to Assume and Perform Under the Store Closing Consulting Agreement, (II) Approving Procedures for Store Closing Sales, (III) Approving Modifications to Certain Customer Programs, (IV) Authorizing Bonuses for Non-Insider Employees of Closing Stores, and (V) Granting Related Relief* (Docket No. 10) (the "**Store Closing Motion**") on an interim basis, and approved the immediate commencement of the Store Closing Sales.[2]

7.      The budget attached to the DIP Motion (the "**Initial DIP Budget**") does not contemplate the payment of any portion of the post-petition rent due to the Landlords under the Leases for the Debtors' use and occupancy of the Premises from and including the Petition Date through July 31, 2024 (the "**Stub Rent**").

8.      Additionally, the DIP Budget does not appear to provide for the payment of all other additional post-petition rental obligations that may become due under the Leases pursuant to Section 365(d)(3) of the Bankruptcy Code through the rejection of such Leases (together with the Stub Rent, the "**Post-Petition Rent**"), including, but not limited to, any rent for the stores that remain open through and beyond October 19, 2024, real estate taxes to be paid by tenants, and other charges that may arise.

9.      The failure to include all known Post-Petition Rent and other post-petition expenses of these estates in the DIP Budget (and indeed failure to include any specific identification of

---

[2] Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the DIP Motion or the Store Closing Motion, as applicable.

KC 22755049.3

budgeted payments related to the Leases) provides no adequate protection for the ultimate payment of the Post-Petition Rent while the administrative claims against these estates continue to increase. The Debtors and the Lender continue to use the Premises for their direct post-petition benefit, while the Landlords unfairly bear the risk of failure in these cases with respect to the Post-Petition Rent.

10.     Based upon the information available to date, it is unclear whether Debtors' estates will be administratively solvent. There is almost always a prospect of administrative insolvency in retail bankruptcy cases. Without payment of Post-Petition Rent, or adequate assurance of such payment, Landlords will be put in the unenviable position of providing the Debtors with an involuntary, interest-free loan for the use and occupancy of the Premises.

11.     If Stub Rent is not paid or otherwise escrowed for payment, Landlords bear the risk that they will not get paid for the Debtors' post-petition use and occupancy of the Premises during the Stub Rent period and potentially even beyond October 19, 2024. The Debtors are currently operating their stores and generating post-petition sales for the benefit of their Lender, which is an actual and necessary cost of preserving the Debtors' estates. There is no doubt that the Premises are essential to the administration of these estates since the Debtors are utilizing the Premises to conduct the Store Closing Sales. Debtors must provide for all of the post-petition rental obligations owed the Landlords, including Stub Rent, as well as covering rental obligations through the conclusion of the contemplated store closing sales.

12.     The Debtors also seek to waive the protections set forth in sections 506(c) and 552(b) of the Bankruptcy Code; however, such waiver would be inappropriate in these cases.

13.     Section 506(c) of the Bankruptcy Code allows a debtor to surcharge a lender's collateral for the cost of preserving or disposing of that collateral. 11 U.S.C. § 506(c). The

4

provision ensures that the cost of liquidating a secured lender's collateral is not paid from unsecured creditor recoveries. *See also Kivitz v. CIT Group/Sales Fin., Inc.,* 272 B.R. 332, 334 (D. Md. 2000) ("the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"); *In re Codesco Inc.,* 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("[t]he underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs").

14.     In a tenant-debtor context, courts may surcharge lenders for post-petition rents and storage charges for storing lender's collateral, as necessary and directly beneficial to the lender. *See In re Scopetta-Senra Partnership III,* 129 B.R. 700, 701 (Bankr. S.D. Fla. 1991) (determining that landlord who provided post-petition lease space provided benefit to the secured creditor by storing its collateral, and ensuring the debtor's continued operations); *see also In re World Wines, Ltd.,* 77 B.R. 653, 658 (Bankr. N.D. Ill. 1987) (finding that landlord was entitled to payment from the bank for the use and occupancy of its premises for storage of wine pursuant to section 506(c)).

15.     Similarly, the "equities of the case" exception in section 552(b) of the Bankruptcy Code allows a debtor, committee, or other party-in-interest to exclude post-petition proceeds from pre-petition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure. 11 U.S.C. § 552(b).

16.     The Court should not allow the Debtors to utilize the Premises without providing adequate assurance of the Debtors' administrative solvency with respect to the Post-Petition Rent in the form of adequate protection to Landlords. Anything less results in the Debtors and the Lender using the bankruptcy process to gain rent-free use of the Premises, relegating the Landlords to the position of involuntary, unsecured, interest-free lenders to these estates. The

5

Court should not permit the Lender and Debtors to force the Landlords to fund the Debtors' operations without paying for the use and occupancy of the Premises during the post-petition period or providing adequate protection that these costs will be paid.

17.     Accordingly, the Landlords request that the Court require that any Final Order include payment of the Post-Petition Rent, and absent full payment, the Court should require the Debtors to provide adequate protection for the payment of the Post-Petition Rent.

## II.     ARGUMENT AND AUTHORITIES

**A.     Any Final Order must provide Landlords with adequate protection for any unpaid Post-Petition Rent as a result of the Debtors' post-petition use and occupancy of the Premises.**

18.     The Landlords recognize and do not dispute the Debtors' need for DIP financing and the relief requested in the DIP Motion, provided the Landlords receive payment, or adequate protection that they will receive payment, of the Post-Petition Rent, including the Stub Rent, accruing under all Leases, regardless of whether the Leases are ultimately assumed or rejected.

19.     Since the bankruptcy filing, the Landlords have provided and continue to provide critical benefits to the Debtors and the Lender—in terms of their continued use of the Premises in order to operate the Debtors' business and conduct store closing sales to maximize the value of the Lender's collateral, secured storage of the Lender's collateral, and payment of out-of-pocket expenses such as taxes, common area maintenance, utilities, and insurance.

20.     The Debtor's business is entirely dependent on the ongoing use of their leased locations, and the Landlords are critical to their potential success. Nevertheless, the current DIP Budget unfairly fails to budget for Post-Petition Rent, placing Landlords in the position of an involuntary, unsecured, post-petition, interest-free lender to the Debtors in the amount of the unbudgeted Post-Petition Rent, which is the result Section 365(d)(3) was intended to counteract. *See In re Warehouse Club, Inc.*, 184 B.R. 316, 318 (Bankr. N.D. Ill. 1994).

6

21.     This Court should not permit the Debtors to avoid paying the administrative expenses for their post-petition use and occupancy of the Premises, thereby availing themselves of the benefits of the Bankruptcy Code and simultaneously avoiding its obligations. There is ample support for the Landlords' entitlement to adequate protection under the Bankruptcy Code.

22.     Adequate protection for the Post-Petition Rent is warranted as a condition of a sale or plan that involves the use of the Premises under Section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, *the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest*. . . .

11 U.S.C. § 363(e) (emphasis added). *See also, e.g., Matter of Cont'l Airlines, Inc.*, 154 B.R. 176, 180 (Bankr. D. Del. 1993) (finding that adequate protection is available under § 363(e) for a decrease in value due to the use, sale, *or lease* of an entity's interest in property) (emphasis added); *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (providing that a "landlord's right to adequate protection seems to follow clearly from the language of Section 363(e)"); *In re Mr. Gatti's, Inc.,* 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994) (the enactment of § 365(d)(3) abrogated any argument against the entitlement of a landlord to adequate protection); *In re Ernst Home Center, Inc.*, 209 B.R. 955, 966-67 (Bankr. W.D. Wash. 1997) (finding that adequate protection is available to real property lessors under Section 363(e)); *In re RB Furniture, Inc.*, 141 B.R. 706, 713-14 (Bankr. C.D. Cal. 1992) (adequate protection under Section 363(e) may even be broader than the rights encompassed under Section 365(d)(3), given it "is a fluid concept that reflects all the circumstances surrounding a debtor's use of property").

23.     The Stub Rent is an actual and necessary cost of preserving the Debtors' estates. Where an estate may be administratively insolvent, the court may also provide Landlords with

KC 22755049.3

adequate protection under Section 363(e). *See, e.g., In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 819 (3d Cir. 2010). In such circumstances, it is appropriate for adequate protection to take the form of immediate cash payments equal to the Stub Rent for post-petition use of the Premises. *See* 11 U.S.C. § 361; *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 794 (Bankr. D. Del. 2002).

24.     Moreover, where there is a risk of administrative insolvency, simply allowing an administrative expense claim for Stub Rent will not adequately protect Landlords. *See* 11 U.S.C. § 361(3). Only the payment of the Stub Rent and providing for immediate payment up through the completion of the Store Closing Sales will adequately protect Landlord, and the Court should require Debtors to pay Stub Rent and post-petition rent as adequate protection for the continued use of the Premises.

25.     While all parties hope these cases will be administratively solvent, it is too early to tell if this will be true, particularly where the DIP Budget lacks significant detail. Simply allowing an administrative expense claim for the Post-Petition Rent will not adequately protect Landlords. *See* 11 U.S.C. § 361(3). Indeed, Section 361(3) makes clear that adequate protection may not take the form of a deferred administrative claim.

26.     The Debtors are open and operating in all of Landlords' Premises. Unlike other creditors, Landlords have no choice but to allow the Debtors to continue to use and occupy their Premises.

27.     This Court has seen many cases where the Debtors and their professionals have stated (and believed) that there would be money to pay administrative claims at the end of a case, only later to concede that the estates are administratively insolvent. Everyone, including Landlords, is hopeful that the Debtors can achieve their goals, but the outcome remains uncertain at this time and Landlords should not be forced to shoulder the risk of non-payment. The Court

KC 22755049.3

should require the Debtors to provide adequate protection for the continued use of the Premises through the date of the payment of the Post-Petition Rent.

**B.      Adequate protection may take various forms.**

*a.  Immediate payment of all Post-Petition Rent is the best form of adequate protection available.*

28.      Of course, the best form of adequate protection the Debtors could provide, and Landlords' preferred form, is the immediate and timely payment of all the Post-Petition Rent obligations that will accrue through the assumption, assumption and assignment, or rejection of the Leases. *See, e.g., In re ZB Company, Inc.*, 302 B.R. 316, 320 (Bankr. D. Del. 2003) (holding that rent should be paid to landlords on a per diem basis during the pre-rejection period in order to avoid the potential that the landlord could be left with an allowed administrative claim against an administratively insolvent estate).

29.      No provision of the Bankruptcy Code permits the Debtors to receive the benefits and protections of chapter 11 while simultaneously shirking their attendant obligations. In circumstances where there is a risk of administrative insolvency, it is appropriate for adequate protection to take the form of immediate cash payments for post-petition use of the Premises. *See* 11 U.S.C. § 361; *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 794 (Bankr. D. Del. 2002).

30.      At a minimum, these Landlords should not bear the risk of not receiving payment for the post-petition use of their property for store closing sales through the applicable rejection date. Store closing sales are not permitted under the Leases and are only permissible by order of the Bankruptcy Court. According to the Consulting Agreement filed as an Exhibit to the Store Closing Motion, these sales are scheduled to take place through September 30, 2024, but the Sale Term may be extended by the written agreement of Tenant Debtor and the Consultant. To the extent the Debtors do not have sufficient funds to immediately pay the Post-Petition Rent, the

9

Landlords should be paid Post-Petition Rent from the proceeds of those store closing sales (or sufficient funds from those sales should be escrowed), rather than bearing the risk that there will be no money to pay these claims after the sales conclude.

31.     Moreover, the Court may also allow the unpaid Post-Petition Rent as an administrative expense of the Debtors under Section 503(b)(1), and order its payment. Section 503(b)(1) provides for an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate." *See* 11 U.S.C. § 503(b)(1). Section 365(d)(3) does not preclude the Court from ruling that Stub Rent is an administrative expense under Section 503(b)(1). *See In re Goody's Family Clothing Inc.*, 610 F.3d 812, 816-19 (3d Cir. 2010); *In re Garden Ridge Corp.*, 323 B.R. 136, 142-43 (Bankr. D. Del. 2005) (citing *ZB Co. Inc.*, 302 B.R. at 319 (landlords entitled to prorated rent from the Petition Date—despite the fact that the billing date occurred the day before the petition date). A landlord's administrative claim under Section 503(b)(1) is equal to the lease contract rate. *See ZB Co. Inc.*, 302 B.R. at 319 (contract rate is presumed to be the fair rental value).

32.     Courts have discretion to determine the timing of the administrative payments. *See, e.g., Garden Ridge Corp.*, 323 B.R. at 143 (citing *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (entering interim orders directing the full contract rent for February 2004 to each landlord)); *ZB Co., Inc.*, 302 B.R. at 320. "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *See Garden Ridge Corp.*, 323 B.R. at 143; *see also HQ Global*, 282 B.R. at 173. The hardship to Landlords outweighs any prejudice to the Debtors or other creditors. Without immediate payment of Post-Petition Rent, including the Stub Rent, or at least providing adequate protection that the Landlords will receive such payment in one of the manners set forth herein, the

KC 22755049.3

Landlords bear the risk of the estates' potential administrative insolvency, while the Debtors and the Lender continue to benefit from the use of their Premises. Critically, other creditors do not provide post-petition services to the Debtors without payment. Forcing Landlords to provide free services while other creditors are not is contrary to the Bankruptcy Code. Directing payment (or adequate protection for payment) of the unpaid Post-Petition Rent, including Stub Rent, is appropriate under the circumstances. *See In re Travel 2000, Inc.*, 264 B.R. 444 (Bankr. W.D. Mich. 2001) (finding that Congress and courts have determined that a landlord should receive the benefit of its bargain to compensate a landlord for being compelled by the Bankruptcy Code to continue providing a debtor with a critical service). Therefore, this Court may allow and require the immediate payment of the Post-Petition Rent under Section 503(b)(1).

> **b.  *If immediate payment of Post-Petition Rent is impossible, sufficient funds for such payment should be escrowed as adequate protection for Landlords.***

33.    Short of immediate payment of the Post-Petition Rent owed to the Landlords, to the extent Debtors are unable to provide such immediate payment, the Debtors could escrow sufficient funds to provide adequate protection for the Post-Petition Rent. This Court did so in *CEC Entertainment, Inc.*, where the debtors' financing budget failed to provide sufficient funds for the payment of stub rent and other outstanding post-petition lease obligations, and the debtors similarly sought a 506(c) waiver before those amounts would be paid to landlords. In that case, the Court directed the debtors to place funds in a segregated account to cover certain unpaid rent due to landlords. Specifically, the order provided:

> **Rent Reserve Account**. As soon as reasonably practicable following the Closing Date, the Debtors shall deposit $13 million in a segregated account (the "**Rent Reserve Account**"), the proceeds of which shall solely be used to pay post-petition claims of the Debtors' landlords as provided in the "Rent" line item of the DIP Budget for the week ending November 8, 2020, subject to adjustment or consensual reduction based upon agreements between the Debtors and the Debtors' landlords (the "**Catch-Up Payments**"). Upon payment in full of the Catch-Up Payments, any funds remaining in the Rent Reserve Account shall become available to the Debtors

KC 22755049.3

for use in any manner that is otherwise consistent with the DIP Order and DIP Documents.

*In re CEC Entertainment, Inc. et al.*, Case No. 20-33163 (MI) (Bankr. S.D. Tex. 2020) (Docket No. 1118) at 39; *see also In re The Sports Authority, Inc., et al.*, Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition Financing) (Docket No. 1699, at § 40) (requiring reserve of stub rent for closing locations).

        **c.  *Absent immediate payment or escrowed funds sufficient to pay all Post-Petition Rent, the Debtors' may not waive their surcharge rights with respect to such Post-Petition Rent.***

34.     Finally, as set forth above, in the Interim Order, the Debtors reserved their right to waive their surcharge rights under Section 506(c), subject to entry of the final DIP Order. Section 506(c) provides that a trustee or debtor in possession may recover from property securing an allowed secured claim the "reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim...." 11 U.S.C. § 506(c). The Debtors and the Lender continue to benefit from the post-petition use and occupancy of the Premises, which is vital to operation of the Debtors' business, and there is no legitimate reason that they should not pay for that benefit.

35.     Courts may surcharge lenders for post-petition rents and storage charges owed to them for storing a lender's collateral, as necessary and directly beneficial to the lender. *See Southwest Sec., FSB v. Segner (In re Domistyle, Inc.),* 811 F.3d 691, 696 (5th Cir. 2015) ("a secured creditor should not reap the benefit of actions taken to preserve the secured creditor's collateral without shouldering the cost"); *In re Scopetta-Senra Partnership III*, 129 B.R. 700 (Bankr. S.D. Fla. 1991) (determining that a landlord that provided post-petition lease space provided benefit to the secured creditor by storing its collateral and ensuring the debtor's

12

continued operations); *In re Gain Electronics Corp.,* 138 B.R. 464, 465 (Bankr. D.N.J. 1992); *In re World Wines, Ltd.*, 77 B.R. at 658 (finding that landlord was entitled to be paid by the bank for the use and occupancy of its premises for storage of wine pursuant to Section 506(c)); *In re Proto-Specialties, Inc.*, 43 B.R. 81 (Bankr. D. Ariz. 1984).

36.    The Debtors and the Lender are requesting a waiver of the Debtors' (and any other party's) ability to surcharge the Lenders under Section 506(c). This places the risk of future administrative insolvency on the Landlords in the amount of the unpaid Post-Petition Rent, as well as any other post-petition obligations that are not provided for in the DIP Budget. Shifting this risk to unsecured creditors—and involuntary unsecured creditors, at that—is contrary to the purpose of Section 506(c) and results in an unwarranted windfall to the Lender. As a result, courts have increasingly required that lenders pay for such benefits, which requirement is sometimes referred to as the "pay to play" concept. *See, e.g., In re The Sports Authority, Inc., et al.,* Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (*Final Order Authorizing Debtors to Obtain Postpetition Financing*) (Docket No. 1699) (preserving Section 506(c) rights for the Debtors or any party with standing absent providing for payment of Stub Rent and Section 503(b)(9) claims); *In re NEC Holdings Corp.*, Case No. 10-11890 (PJW) (Docket No. 224) at p. 100 (relevant pages attached hereto as **Exhibit A**).

37.    As the Bankruptcy Court for the District of Delaware did in *In re Sports Authority Holding,* the advance waivers of sections 506(c) and 552(b) sought by the Debtors and Lender should be denied. In denying the surcharge waiver, Judge Walrath ruled:

> But in a case where the landlords and other administrative claims are clearly not budgeted or being paid while the . . . secured lenders' collateral is being liquidated and their secured claim is being paid, I have a serious problem with that. And I think the fix is no 506(c) waiver for anybody. And to the extent that administrative claims are not paid at the end of this case, there will be a claim against the lenders

13

for those costs under 506(c) to the extent they were necessary for the preservation
or realization of their collateral.

*See In re Sports Authority Holdings, et al.*, Case No. 16-10527 (MFW) (Bankr. D. Del. Apr. 26,

2016) (Docket No. 1415) at 195:6-16 (relevant pages attached hereto as **Exhibit B**).

38.     The Post-Petition Rent owing to Landlords is a reasonable and necessary cost for
the preservation and liquidation of the Lenders' collateral, particularly where the Debtors continue
to use and occupy the Premises. Without that ability, the Debtors would be unable to operate their
business or accomplish any restructuring or sale of their businesses. Allowing the Lenders access
to secure storage and preservation of collateral at no cost would result in a windfall benefit to the
secured creditor to the detriment of a third party, namely, the Landlords. Landlords hope that these
cases proceed quickly to a successful reorganization or sale that provides sufficient funds for
payment of all administrative claims, as well as the assumption or assumption and assignment of
the Debtors' leases, but Landlords should not bear the risk of administrative insolvency.

39.     If the Debtors and their Lenders are unable or unwilling to pay or escrow the Post-
Petition Rent, then any waiver of the Debtors' surcharge rights under Section 506(c) should carve
out Post-Petition Rent to make such waiver applicable to Post-Petition Rent only after such
amounts are escrowed or paid to the Landlords. This conditional 506(c) waiver is another means
of providing Landlords with the adequate protection to which they are entitled under the
Bankruptcy Code.

### III.     JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

40.     To the extent consistent with the objections expressed herein, Landlords also join
in the objections of any other shopping center lessors to the Debtors' proposed relief.

KC 22755049.3

## IV.   <u>RESERVATION OF RIGHTS</u>

41.     Landlords reserve their rights to raise further or other objections to the entry of the

final order on the DIP Motion once a proposed Final Order becomes available.

## V.      <u>CONCLUSION</u>

42.     The Court should require that the any order approving the DIP Motion on a final

basis be modified consistent with this Objection and grant such further relief as the Court deems

proper.

Dated: August 21, 2024.                      **SPENCER FANE LLP**

*/s/ Mark Bogdanowicz*
Megan F. Clontz
State Bar No. 24069703
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: mclontz@spencerfane.com
-and-
Mark Bogdanowicz *admitted pro hac vice*
Missouri Bar No. 75399
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100 – Telephone
(816) 474-3216 – Facsimile
Email: mbogdanowicz@spencerfane.com
-and-
Camber M. Jones *admitted pro hac vice*
Missouri Bar No. 71026
2144 East Republic Road, Suite B300
Springfield, MO 65804
(417) 888-1000 – Telephone
(417) 881-8035 – Facsimile
Email: cjones@spencerfane.com

**COUNSEL FOR INTERNATIONAL
SPEEDWAY SQUARE, LTD. AND
KRG LAKE WORTH TOWNE
CROSSING, LLC**

KC 22755049.3

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2024, a copy of the foregoing was filed electronically through the Court's CM/ECF system and served electronically on all parties registered to receive service of electronic notice, and was also served via First Class, U.S. Mail and electronic mail on the counsel listed below:

**Sidley Austin LLP (Counsel to Debtor)**
Attn: Duston K. McFaul, Jackson T. Garvey, Jeri Leigh Miller, and Maegan Quejada
1000 Louisiana St., Suite 6000
Houston, Texas 77002
***E-mail:*** *dmcfaul@sidley.com; jgarvey@sidley.com; jeri.miller@sidley.com; mquejad@sidley.com*

Attn: Michael Sabino
787 Seventh Avenue
New York, NY 10019
***E-mail:*** *msabino@sidley.com*

**Simpson Thatcher & Bartlett LLP (Counsel to DIP Agent)**
Attn: Elisha D. Graff and Zachary J. Weiner
425 Lexington Ave.
New York, NY 10017
***Email:*** *egraff@stblaw.com; zachary.weiner@stblaw.com*

**Pachulski Stang Ziehl & Jones LLP (Counsel to Committee)**
Attn: Theodore S. Heckel, Michael D. Warner, and Benjamin L. Wallen
700 Louisiana St., Suite 4500
Houston, Texas 77002
***E-mail:*** *mwarner@pszjlaw.com; bwallen@pszjlaw.com; theckel@pszjlaw.com*

Attn: Robert J. Feinstein and Bradford J. Sandler
780 Third Ave., 34th Fl.
New York, NY 10017
***E-mail:*** *rfeinstein@pszjlaw.com; bsandler@pszjlaw.com*

Attn: Shirley Cho and Cia H. Mackle
10100 Santa Monica Blvd, 13th Fl.
Los Angeles, CA 90067
***E-mail:*** *scho@pszjlaw.com; cmackle@pszjlaw.com*

**Holland & Knight LLP (Counsel to Prepetition 3L Agent)**
Attn: Anthony Pirraglia

16

KC 22755049.3

811 Main Street, Suite 3500
Houston, TX 77002
***Email: anthony.pirraglia@hclaw.com***

Attn: Keith Sambur
1801 California St., Suite 5000
Denver, CO 80202
***Email: keith.sambur@hklaw.com***

**Office of the United States Trustee for the Southern District of Texas**
Attn: Jayson B. Ruff and Jana Smith Whitworth
515 Rusk Street, Suite 3516
Houston, Texas 77002
***E-Mail: jayson.b.ruff@usdoj.gov; jana.whitworth@usdoj.gov***

By: */s/ Mark Bogdanowicz*
Mark Bogdanowicz