IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CONN'S, INC., *et al.*[1] | Case No. 24- 33357 (ARP) |
| Debtors. | (Jointly Administered) |

NOTICE OF EXAMINATION UNDER FED. R. BANKR. P. 2004 TO
<u>THE DEBTORS</u>

**To:**   **Conn's, Inc.,** *et al.*
  **c/o SIDLEY AUSTIN LLP**
  **1000 Louisiana Street, Suite 5900**
  **Houston, Texas 77002**
  **ATTN: Duston McFaul, Jeri Leigh Miller**
  **and Maegan Quejada**

  -and-

  **c/o SIDLEY AUSTIN LLP**
  **787 Seventh Avenue**
  **New York, NY 10019**
  **ATTN: William E. Curtin and**
  **Michael Sabino**

  -and-

  **c/o SIDLEY AUSTIN LLP**
  **One South Dearborn**
  **Chicago, IL 60603**
  **ATTN: Jackson T. Garvey**

**PLEASE TAKE NOTICE THAT**, pursuant to Federal Rules of Bankruptcy Procedure 2004 and 7034 and Bankruptcy Local Rule 2004-1, the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>") are directed to produce the documents described in **Schedule A** hereto to the Debtors' Official Committee of Unsecured Creditors (the "<u>Committee</u>"), by and through

---

[1] The Debtors in this chapter 11 case, together with the last four digits of the Debtors' federal tax identification number, are: Conn's, Inc. (2840), Conn Appliances, Inc. (0706), CAI Holding, LLC (2675), Conn Lending, LLC (9857), Conn Credit I, LP (0545), Conn Credit Corporation, Inc. (9273), CAI Credit Insurance Agency, Inc. (5846), New RTO, LLC (6400), W.S. Badcock LLC (2010), W.S. Badcock Credit LLC (5990), and W.S. Badcock Credit I LLC (6422).  The Debtor's service address is 2445 Technology Forest Blvd., Suite 800, The Woodlands, TX 77381.

their undersigned counsel, at the office of Pachulski Stang Ziehl & Jones LLP, 700 Louisiana Street, Suite 4500, Houston, TX 77002, Attn: Theodore S. Heckel (theckel@pszjlaw.com), John Morris (jmorris@pszjlaw.com), and Cia Mackle (cmackle@pszjlaw.com), by October 1, 2024, or at such other time as the parties may agree.

Dated:  September 16, 2024     Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Theodore S. Heckel*
Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar No. 24102623)
Theodore S. Heckel (TX Bar No. 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone:  (713) 691-9385
Facsimile:  (713) 691-9407
Email:  mwarner@pszjlaw.com
  bwallen@pszjlaw.com
  theckel@pszjlaw.com

-and-

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:  rfeinstein@pszjlaw.com
  bsandler@pszjlaw.com
  jmorris@pszjlaw.com

-and-

Cia H. Mackle (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
Email:  cmackle@pszjlaw.com

*Proposed Counsel to the*
*Official Committee of Unsecured Creditors*

**CERTIFICATE OF CONFERENCE**

I, the undersigned, hereby certify that on the 13th day of September, 2024, I personally conferred with counsel to the Debtors by teleconference to discuss the requests for production of documents and to coordinate with Debtors' counsel regarding the same. We were able to reach certain tentative agreements in principle and are continuing to confer and work with the Debtors.

By: */s/ Theodore S. Heckel*
Theodore S. Heckel, Esq.

**CERTIFICATE OF SERVICE**

I certify that on September 16, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Theodore S. Heckel*
Theodore S. Heckel, Esq.

**SCHEDULE A**

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEBTORS**

**INSTRUCTIONS**

1. Unless otherwise indicated, the Documents requested include all Documents that have come into existence or been utilized, read, transcribed, copied, placed in or retrieved from any file during the Relevant Period.

2. The terms used in these Requests are to be given their most expansive and inclusive interpretation unless otherwise expressly limited in a specific Request. This includes, without limitation, the following:

    a. construing "and" and "or" in the disjunctive or conjunctive as necessary to make a Request more inclusive;

    b. construing the singular form of a word to include the plural and the plural to include the singular;

    c. construing the term "among" to mean between or among;

    d. construing the terms "any" and "each" to mean any, all, each, and every;

    e. construing masculine, feminine, or neuter pronouns to include other genders; and

    f. construing the present tense of a verb to include its past tense and vice-versa.

3. The word "including" is deemed to be followed by "but not limited to."

4. Documents produced in response to these Requests shall include Documents in the possession, custody or control of the Debtors or any other entity or person acting on behalf of the Debtors. Information is deemed to be within Your possession, custody, or control if:

    a. it is within Your actual knowledge or possession;

  b. it is within the possession of Your agents; and/or

  c. it is within the possession of any other Person or entity and You have the right to obtain the Documents from such Person or entity.

5. For each Document withheld by reason of a claim of privilege, provide a categorical privilege log identifying with respect to each such Document:

  a. the date of the Document's creation and most recent modification;

  b. the identity of the author or preparer;

  c. the identity of each person who was sent or furnished with the Document or who received or had possession or custody of the Document;

  d. the subject matter of the Document;

  e. a categorical designation of the basis of the claim of privilege; and

  f. the paragraph of this Request to which each such Document was responsive.

6. The Committee reserves the right to request additional information regarding Documents withheld on the basis of privilege, and reserves the right to request production on a document-by-document basis where necessary.

7. If any objection is made to any Request herein, all Documents and things responsive to the Request not subject to the objection should be produced. Similarly, if any objection is made to production of a Document, the portion(s) of that Document not subject to the objection should be produced with the portion(s) objected to redacted and indicated clearly as such. Otherwise, no Communication, Document, file, or thing requested should be altered, changed or modified in any respect. All Communications, Documents, and files shall be produced in full and unredacted form, including all attachments and enclosures either as they are kept in the ordinary course or organized to correspond with these Requests. No Communication, Document, file, or thing requested should be disposed of or destroyed.

4855-6407-1397.1 15372.00002

8. If a Document cannot be produced in full, produce it to the extent possible, identify the portion that cannot be produced, and specify the reasons for Your inability to produce the remainder.

9. Each Document shall be produced with sufficient metadata or information to indicate the file in which it was located.

10. You are required to produce ESI (as defined below) in Optical Character Recognition (OCR) searchable form via fileshare or other similar medium mutually agreed upon by the parties.

11. Documents must be produced electronically, using .tiff format for all Documents that were not originally in Excel or PowerPoint format, in which case, use .xls, .xlsx, .pptx, .pptm, .ppt format, as appropriate.

12. These Requests shall be deemed continuing and supplemental answers shall be required if You directly or indirectly obtain further information after Your initial response as required by Fed. R. Bank. P. Rule 7026(e).

13. These Requests cover those Documents that are not otherwise publicly available and have not already been produced by the Debtors to the Committee in connection with the chapter 11 cases.

## **DEFINITIONS**

1. "<u>Bankruptcy Code</u>" means Chapter 11 of Title 11 of the United States Code.

2. "<u>Board of Directors</u>" means any board of directors, board of managers, or other similar governing body of any of the Debtors (including any predecessor of any Debtor) and any committee or subcommittee thereof.

3

3. "Board Material" means any materials, notes, reports, analyses, minutes, or presentations prepared, distributed, or recorded in connection with any formal or informal meeting of any Board of Directors.

4. "BRF" means BRF Finance Co., LLC and each of its agents, accountants, auditors, consultants, financial advisors, employees, officers, directors, direct or indirect shareholders, members, representatives, subsidiaries, predecessors and/or successors.

5. "B. Riley" means BRF and its affiliates, including without limitation, B. Riley Financial, Inc. and each of its agents, accountants, auditors, consultants, financial advisors, employees, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

6. "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind including, but not limited to, any ESI (and any attachments thereto), Documents, telephone conversations, discussions, meetings, facsimiles, e-mails, pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

7. "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

8. "Conn's Debtors" means Conn's Inc; Conn Appliances, Inc.; New RTO, LLC; CAI Holding, LLC; Conn Lending, LLC; Conn Credit I, LP; Conn Credit Corporation, Inc.; CAI Credit Insurance Agency, Inc.; and each of their agents, accountants, auditors, consultants, financial advisors, employees, officers, directors, direct or indirect shareholders, members, representatives,

affiliates (excluding the WSB Debtors), subsidiaries (excluding the WSB Debtors and the Non-Debtor Subsidiaries), predecessors and/or successors.

9. "D&O(s)" means any current or former director or officer of any of the Debtors (including any predecessor of any of the Debtors).

10. "D&O Policies" means any director and officer liability insurance policies Concerning the Debtors and any of their D&Os.

11. "Debtors" means, collectively or individually, the debtors and debtors in possession in the above-captioned bankruptcy cases and their agents, accountants, auditors, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries (excluding the Non-Debtor Subsidiaries), predecessors and/or successors.

12. "Document" means and includes all written, recorded, transcribed or graphic matter of every nature, type and kind, however and by whoever produced, reproduced, disseminated or made. This includes, but is not limited to, Communications, ESI, "writings" as defined by Rule 1001 of the Federal Rules of Evidence, copies or drafts, and any tangible or intangible thing or item that contains any information. Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document. "Documents" always includes Communications, whether so stated or not.

13. "ESI" has the meaning ascribed to it in Federal Rules of Civil Procedure 16, 26 and 34(a), as well as any additional meaning given to ESI by the Instructions preceding these Definitions.

14. "Final DIP Order" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority*

*Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 482].

15. "FRG" means Franchise Group, Inc. and its agents, accountants, auditors, consultants, financial advisors, employees, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

16. The term "Insider" has the meaning ascribed to it in section 101(a)(31) of the Bankruptcy Code.

17. "Integration Management Office" has the meaning ascribed to it in Conn's, Inc., Annual Report (Form 10-K) (Jan. 31, 2024) on page 42.

18. "Integration Steering Committee" has the meaning ascribed to it in Conn's, Inc., Annual Report (Form 10-K) (Jan. 31, 2024) on page 42.

19. "Miller Declaration" means the *Declaration of Norman L. Miller in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 3].

20. "Non-Debtor Subsidiaries" means Conn Appliances Receivables Funding, LLC and its agents, accountants, auditors, consultants, financial advisors, employees, officers, directors, direct or indirect shareholders, members, representatives, affiliates (excluding the Debtors), subsidiaries, predecessors and/or successors.

21. "Pathlight" means Pathlight Capital LP and its agents, accountants, auditors, consultants, financial advisors, employees, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

22. "Pathlight Term Loan" means the term loan and security agreement with Pathlight as described in paragraph 27 of the Miller Declaration.

23. "Person" means and includes individuals as well as entities, corporations, partnerships, unincorporated associations, limited liability companies, trusts, firms, cooperatives, fictitious business names and government agencies, and their respective agents, representatives, attorneys and employees.

24. "Petition Date" means July 23, 2024.

25. "Prepetition 2L Facility" means the funded-debt obligation in the approximate amount of $93 million as of the Petition Date as described in the Final DIP Order, at ¶ G(ii).

26. "Prepetition 3L Facility" means the funded-debt obligation in the approximate amount of $50 million as of the Petition Date as described in the Final DIP Order, at ¶ G(iii).

27. "Prepetition 3L Intercreditor Agreement" means the Amended and Restated Third Lien Intercreditor Agreement dated as of December 18, 2023, as described in the Final DIP Order, at ¶ G(v).

28. "Prepetition ABL Facility" means the funded-debt obligation in the approximate amount of $387 million as of the Petition Date as described in the Final DIP Order, at ¶ G(i).

29. "Prepetition ABL Intercreditor Agreement" means the Intercreditor Agreement dated as of December 18, 2023, as described in the Final DIP Order, at ¶ G(iv).

30. "Prepetition Credit Documents" means the Prepetition ABL Facility, the Prepetition 2L Facility, the Prepetition 3L Facility, the Prepetition ABL Intercreditor Agreement, and the Prepetition 3L Intercreditor Agreement.

31. "Prepetition Lenders" means all Persons who were lenders in connection with the Prepetition Credit Documents and each of their respective agents, accountants, auditors, financial advisors, employees, experts, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors.

4855-6407-1397.1 15372.00002

32. "Relevant Period" means (unless indicated otherwise in any particular Request) the period from January 1, 2023 through the Petition Date.

33. "Request" means an individual request for information included in the Requests.

34. "Requests" means the Official Committee of Unsecured Creditors' First Request for Production of Documents Directed to the Debtors.

35. "Share Repurchase Decision" means the decision or series of decisions that were made prior to and/or during the month of December 2021, pursuant to which the Board of Directors authorized a $150 million share repurchase program for the Company's outstanding stock.

36. "WSB Debtors" means W.S. Badcock LLC; W.S. Badcock Credit LLC; W.S. Badcock Credit I, LLC; and each of their respective agents, accountants, auditors, consultants, financial advisors, employees, officers, directors, direct or indirect shareholders, members, representatives, affiliates (excluding the Conn's Debtors and Non-Debtor Subsidiaries), subsidiaries, predecessors and/or successors.

37. "WSB Merger" means the merger transaction between Conn's Inc. and W.S. Badcock LLC as described in the Miller Declaration at ¶¶ 6–7, 17–19, 32, 36 n. 9, 41, 45–46, and 50.

38. "You" or "Your" means the Debtors.

## DOCUMENT REQUESTS[1]

**Request No. 1.:**

All Board Material.

---

[1] Capitalized terms in this Section not defined in the "Definitions" shall have the meanings ascribed to them in the Miller Declaration and Final DIP Order.

**Request No. 2.:**

All Documents and Communications Concerning the WSB Merger, including without limitation: (i) fairness and solvency opinions; (ii) appraisals, valuations, and financial analyses, and projections; (iii) Communications between the Conn's Debtors and any financial advisor or consultant or other professional Concerning the WSB Merger, (iv) all agreements or engagement letters with such advisors, consultants, and professionals; (v) Communications between the WSB Debtors and any financial advisor or consultant or other professional Concerning the WSB Merger, (vi) agreements or engagement letters with such advisors, consultants, and professionals; and (vii) closing documents and funds flow memoranda Concerning the WSB Merger.

**Request No. 3.:**

All Documents and Communications Concerning any investigation or analysis of the WSB Merger, including (i) any analysis prepared by or for the Integration Management Office and Integration Steering Committee, and (ii) any analysis of the reasonableness of the WSB Merger.

**Request No. 4.:**

All Documents Concerning the capital structure of the Conn's Debtors during the Relevant Period.

**Request No. 5.:**

All Documents Concerning the capital structure of the WSB Debtors during the Relevant Period.

**Request No. 6.:**

All agreements and contracts between B. Riley and at least one of the Debtors.

**Request No. 7.:**

All agreements and contracts between FRG and at least one of the Debtors.

**Request No. 8.:**

All agreements and contracts between Pathlight and at least one of the Debtors.

**Request No. 9.:**

All agreements and contracts between any Non-Debtor Subsidiary and at least one of the Debtors.

**Request No. 10.:**

All agreements and contracts between or among B. Riley, FRG, Pathlight, and/or any Non-Debtor Subsidiary.

**Request No. 11.:**

For the period October 1, 2021 through June 30, 2022, all Documents and Communications Concerning the Share Purchase Decision, including without limitation (i) valuations and financial analyses or projections; (ii) all Board Material Concerning the Share Purchase Decision; (iii) Communications between You and B. Riley Concerning the Share Purchase Decision; and (iv) Communications between You and any Non-Debtor Subsidiary Concerning the Share Purchase Decision.

**Request No. 12.:**

For the period October 1, 2021 through June 30, 2022, all Documents and Communications Concerning any investigation or analysis of the Share Purchase Decision, including any analysis of the reasonableness of the Share Purchase Decision.

**Request No. 13.:**

All presentations to any potential lender or investor, including any non-public investor.

**Request No. 14.:**

All monthly, quarterly, and annual audited and unaudited financial statements and reports Concerning the Conn's Debtors' financial performance.

**Request No. 15.:**

All monthly, quarterly, and annual audited and unaudited financial statements and reports Concerning the WSB Debtors' financial performance.

**Request No. 16.:**

Entity-level, consolidating income statements and balance sheets of the Debtors on a monthly basis, including fiscal year end income statements and balance.

**Request No. 17.:**

All Documents and Communications Concerning the Debtors' solvency, including any solvency or surplus opinions or reports, fairness opinions, or quality of earnings reports.

**Request No. 18.:**

All Documents and Communications Concerning valuations, appraisals or estimates of value of the Debtors' business as a going concern or in liquidation.

**Request No. 19.:**

Documents sufficient to identify all fees, principal, and/or interest received directly or indirectly from the Debtors by or on behalf of any of the Prepetition Lenders.

**Request No. 20.:**

Documents sufficient to identify all distributions (including payments of fees, the return of principal, dividends, and the payment of expenses) paid by or behalf of the Debtors to any Prepetition Lender.

4855-6407-1397.1 15372.00002

**Request No. 21.:**

Any compliance certificates, forbearance agreements, or waivers Concerning any obligation under any Prepetition Credit Document.

**Request No. 22.:**

All Documents Concerning the Debtors' liquidity and capital, including but not limited to revolver availability, undrawn credit facilities, ability to refinance, maturing debt, unencumbered and/or non-core assets and the ability to monetize those assets and the ability to raise equity or debt capital.

**Request No. 23.:**

Documents sufficient to identify any off-balance sheet debt for any Debtor.

**Request No. 24.:**

The Debtors' income tax returns.

**Request No. 25.:**

All solicitation or offering memoranda prepared for the purpose of (i) raising debt or equity capital for the Debtors; (ii) refinancing the Debtors' debt; or (iii) the sale of the Debtors.

**Request No. 26.:**

All Documents and Communications Concerning the Debtors' consideration of strategic alternative, including Board Materials, marketing materials, offers, letters of intent, or terms sheets Concerning the sale, acquisition, or merger of any of the Debtors or any of their material assets.

**Request No. 27.:**

All Documents and Communications Concerning the repayment of the Pathlight Term Loan.

**Request No. 28.:**

All Documents and Communications Concerning any litigation commenced against, or threatened, against any of the D&Os.

**Request No. 29.:**

All Documents and Communications Concerning any investigation or analysis of potential or actual claims against any of the D&Os, including any investigation conducted by or on behalf of the Integration Steering Committee.

**Request No. 30.:**

Executed copies of the D&O Policies, including any extension endorsements and tail insurance.

**Request No. 31.:**

Documents sufficient to identify all claims made against the D&O Policies, and the availability of insurance under the D&O Policies as of the Petition Date.

**Request No. 32.:**

Documents sufficient to identify any legal, administrative, or regulatory proceedings brought by any governmental unit or agency against the Debtors or any Insider.

**Request No. 33.:**

Documents sufficient to identify all compensation paid by the Debtors to any Insider, including salary, bonuses, dividends, and stock options.

**Request No. 34.:**

    Documents sufficient to identify all payments and transfers made to any Insider in the four years prior to the Petition Date, including without limitation the date of such payment or transfer, proof of such payment or transfer, and any business justification for such payment or transfer.