IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>CONN'S, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-33357 (ARP)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
GLOBAL RESOLUTION AND SETTLEMENT OF CERTAIN DISPUTES
BETWEEN THE DEBTORS AND ASSURANT PURSUANT TO FEDERAL RULE
OF BANKRUPTCY PROCEDURE 9019 AND (II) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days of the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days of the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on February 3, 2025 at 1:30 p.m. (prevailing Central Time) in Courtroom 404, floor four, 515 Rusk Avenue, Houston, TX 77002.**
>
> **You may participate in the hearing either in person or by an audio and video connection. Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Conn's, Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, hereby state as follows in support of this motion (this "Motion"):

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Conn's, Inc. (2840), Conn Appliances, Inc. (0706), CAI Holding, LLC (2675), Conn Lending, LLC (9857), Conn Credit I, LP (0545), Conn Credit Corporation, Inc. (9273), CAI Credit Insurance Agency, Inc. (5846), New RTO, LLC (6400), W.S. Badcock LLC (2010), W.S. Badcock Credit LLC (5990), and W.S. Badcock Credit I LLC (6422). The Debtors' service address is 2445 Technology Forest Blvd., Suite 800, The Woodlands, TX 77381.

**Relief Requested**

1. By this Motion, the Debtors seek entry of an order (the "Order"), substantially in the form attached hereto, among other things: (i) approving the proposed settlement set forth in the term sheet attached to the proposed Order as **Exhibit 1** (the "Term Sheet" and the settlement documented therein, the "Settlement"), between the Debtors, Assurant Service Protection, Inc. and its applicable affiliates (with such affiliates, "Assurant" and, together with the Debtors, the "Parties") regarding the settlement of certain amounts owed to Assurant and payment terms; and (ii) granting related relief.

**Jurisdiction**

2. On July 23, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under sections 101–1532 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 5, 2024, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory and other bases for the relief requested in this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background of the Debtors**

A.  **General Background**

6.  The Debtors have served as a leading retailer offering a broad selection of quality furniture and mattresses, home appliances, consumer electronics, home office products, accessories, and seasonal items from leading global brands across a wide range of price points in addition to proprietary credit solutions for its core consumers. The Debtors operated an integrated and scalable business through their retail stores and websites. The Debtors' credit offerings have historically provided attractive financing solutions to a large population of consumers, including to those with more limited credit alternatives.

7.  As of the Petition Date, the Debtors employed approximately 3,800 full-time employees and 150 part-time employees in the United States, and operated retail facilities in 15 states, totaling 553 retail stores and 22 distribution and service facilities.

8.  Additional information regarding the Debtors' business, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Norman L. Miller, in Support of the Debtors' Chapter 11 Proceedings* [Docket No. 3] (the "First Day Declaration").

B.  **Assurant**

9.  Assurant underwrites and provides certain warranty and insurance products administered by the Debtors. The agreements between the Parties fall generally, but not exclusively, into three groups of programs offered by the Debtors to their customers: (i) the extended service contract program, (ii) the credit insurance program, and (iii) the aftermarket service contract program (each, a "Program" and collectively, the "Programs" and the agreements documenting such Programs, as well as any other agreements among any one or more of the

3

Debtors and Assurant, including any amendments thereto, the "Agreements"). A schedule identifying the Agreements is attached to the Term Sheet as Schedule A.[2]

**The Term Sheet**

10. By the Settlement, as documented in the Term Sheet, the Parties have reached a global resolution of all disputes relating to the Agreements, including, among others: (1) nonpayment of refunds by Assurant related to the Programs; (2) turnover of amounts asserted by Assurant to be held by the Debtors in a fiduciary capacity; and (3) treatment of future profit share and interest income payments. Under the Settlement, among other key terms:[3]

- The Parties will grant one another mutual releases of certain claims arising out of the Agreements, including Assurant's asserted right to turnover of cash alleged to be held by the Debtors on Assurant's behalf;

- The Parties will cooperate in good faith with respect to refunds of unearned premium for contracts financed under the Debtors' financing programs, and Assurant shall make payment of relevant refunds to the servicer of applicable receivable;

- Assurant shall enter into commercially reasonable agreements with purchasers of the Debtors' assets (including Jefferson Capital Systems, LLC ("JeffCap")) for the administration of refunds of unearned premium on a go-forward basis;

- Assurant shall honor credit insurance coverages provided to the Debtors' customers, including honoring the Debtors' and any asset purchaser's (including JeffCap's) interest under such coverages;

- The Debtors will pay $1.5 million to Assurant; and

- Each of the Agreements will be rejected to § 365 of the Bankruptcy Code.

11. Approval of the Term Sheet is critical to the Debtors' estates and these chapter 11 cases. Following closing of the sale to JeffCap, the Debtors retain ownership of residual interests in certain asset-backed securitizations. The consumer receivables included in those securitizations

---

[2] Although Schedule A is intended to be comprehensive, the Parties may have inadvertently omitted certain agreements from Schedule A. The Debtors request relief with respect to all agreements between the Parties, regardless of whether such agreement is specifically identified on Schedule A.

[3] The summary of Settlement terms in this Motion is not intended to be comprehensive, and is qualified in its entirety by reference to the Term Sheet.

4

are now serviced by JeffCap, and the collateral for such receivables includes the consumer borrowers' interests in contracts written under the Programs and the right to refunds of unearned premium thereunder. The Settlement will benefit the Debtors' estates by resolving litigation with Assurant over ownership of certain funds held by the Debtors (alleged by Assurant to be held as fiduciary for Assurant's benefit), securing Assurant's go-forward cooperation in cancellations and refunds under the Programs, and removing uncertainty around underwriting assumptions as the Debtors seek to monetize the remaining assets of their estates. Absent approval of the Settlement, it is likely the Debtors will be mired in time-consuming and value-destructive litigation with Assurant regarding the Programs and the administration of the Programs (and any refunds due thereunder), wasting valuable estate resources.

12. Additionally, Assurant agreed to withdraw its objection to the sale of the Debtors' assets to JeffCap filed at Docket Nos. 399 and 830 (the "Assurant Sale Objections") in exchange for the agreements and concessions from the Debtors and JeffCap under the Settlement, and the Settlement provided JeffCap the necessary comfort to close its purchase of the majority of the Debtors' assets. Accordingly, approval of the Term Sheet greatly enhances the likelihood of a successful outcome for all stakeholders in these chapter 11 cases.

## Basis for Relief Requested

### A. Entry Into and Performance Under the Term Sheet Is a Sound Exercise of the Debtors' Business Judgment

13. The Court should approve the Debtors' entry into and performance under the Term Sheet as a sound exercise of the Debtors' business judgment under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363. Under section

363(b), courts within the Fifth Circuit require only that a debtor "show that a sound business purpose justifies such actions." *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("'[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.'") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)).

14. In addition, the Court may exercise its equitable powers under section 105(a) of the Bankruptcy Code to grant the relief requested herein. Under section 105(a) of the Bankruptcy Code, a court "may issue any order, process, or judgment that is necessary or appropriate to carry out of the provisions of this title." 11 U.S.C. § 105(a).

15. In the Debtors' business judgment, the Settlement is a value maximizing outcome for their estates. The Settlement reduces the estates' potential liabilities with respect to Assurant, creates certainty in the Debtors' efforts to monetize their remaining assets, and enables the Debtors to avoid potential costly and value destructive litigation. Accordingly, entry into and performance under the Term Sheet satisfies the standard set forth in section 363(b) of the Bankruptcy Code and should be approved.

### B. The Term Sheet Satisfies the Standards of Bankruptcy Rule 9019

16. Bankruptcy courts may approve a settlement in accordance with Bankruptcy Rule 9019, which provides that "[o]n motion by the [debtor] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. "Compromises are a normal part of the process of reorganization," *Protective Comm. for Indep. S'holders of TMT Trailer Ferry Inc., v. Anderson*, 390 U.S. 414, 424 (1968) (internal quotations omitted), and are "'desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly.'" *In*

*re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *9 (Bankr. S.D. Tex. June 5, 2009) (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F .2d 599, 602 (5th Cir. 1980)).

17. In determining whether to approve a settlement, the Fifth Circuit directs bankruptcy courts to apply a three-factor test with a focus on comparing "the terms of the compromise with the likely rewards of litigation." *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 607 (5th Cir. 1980)). A bankruptcy court should evaluate: (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (c) all other factors bearing on the wisdom of the compromise. *See In re Age Refining*, 801 F.3d at 540 (citing *Jackson Brewing Co.*, 624 F.2d at 602); *see also In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) (citing same); *In re Superior Offshore Int'l, Inc.*, 2009 WL 1507135, at *2 (S.D. Tex. May 28, 2009). Furthermore, the Fifth Circuit has specified two of the "other" factors that bear on the wisdom of the compromise include (a) "the best interest of creditors, with proper deference to their reasonable views;" and (b) "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *In re Age Refining*, 801 F.3d at 540 (quoting *In re Cajun Elec. Power Coop.*, 119 F.3d at 356).

18. "In evaluating a Rule 9019 settlement, a bankruptcy court need not conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *In re Age Refining*, 801 F.3d at 541 (internal quotations omitted). Rather, "[t]he judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision." *In re Cajun Elec. Power Coop.*, 119 F.3d at 356; *see also TMT Trailer Ferry*, 390 U.S. at 425 (noting that a court should "compare the terms of the compromise with the likely rewards of

7

litigation"). The court must canvas the issues and determine only whether the settlement "falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

### 2. Probability of Success in Litigation is Uncertain in Fact and Law

19. *First,* the probability of success in any litigation between the Parties is unknown, given the various disputes over both factual and legal issues between the Debtors and Assurant. Litigation, by its nature, leads to an inherently uncertain outcome, which is compounded here by the destructive financial ramifications the consumers under the relevant contracts could potentially face if Assurant were to cease honoring its obligations under the agreements. The Term Sheet reaches a negotiated resolution of all of these disputes, thus avoiding the cost and time of litigation as well as any potential exposure from an adverse ruling, all of which inure to the benefit of the estates.

### 3. Complexity and Likely Duration of the Litigation and Any Attendant Expense, Inconvenience and Delay Would Be High

20. *Second*, the Debtors and their management team would need to spend significant time and expend valuable estate resources to litigate the issues between the Parties. The Assurant settlement resolves disputes arising from a web of agreements between the parties, all with different terms, termination dates, and damage provisions. Resolving such issues would necessarily involve drawn out litigation, which would take months, if not years, that the Debtors do not have the capacity to carry out at this stage of these chapter 11 cases (nor would the Debtors' debtor-in-possession financing support). Accordingly, the Debtors submit that the resolution embodied in the Term Sheet weighs in favor of compromise under the circumstances of these chapter 11 cases.

8

### 4. All of the Other Relevant Factors Support Approval of the Term Sheet

21. *Finally,* all of the other relevant factors support approval of the Term Sheet, including that the Term Sheet is in the best interest of creditors and was negotiated in good faith and at arms' length. The Term Sheet both allowed the Debtors to consummate a value maximizing transaction for the sale of the majority of their assets, and will assist the Debtors in monetizing their remaining assets at the highest possible price. The Term Sheet was negotiated in good faith and at arms'-length between sophisticated parties and was not the product of fraud or collusion. Accordingly, this factor supports approval of the Term Sheet.

22. For the foregoing reasons, the Debtors submit that the resolution embodied in the Term Sheet is beneficial to the estates, falls above the lowest point in the range of reasonableness, and should be approved.

### Request for Bankruptcy Rule 6004 Waivers

23. The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors' ongoing operations. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### Reservation of Rights

24. Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as, other than as explicitly stated in the Term Sheet, (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest

under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

## Notice

25. Notice of this Motion has been provided by email, facsimile, or overnight courier to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) JP Morgan Chase Bank, N.A. and counsel thereto; (d) BRF Finance Co., LLC and counsel thereto; (e) Stephens Investments Holdings LLC and counsel thereto; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the state attorneys general for state in which the Debtors conduct business; (i) Assurant; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: January 10, 2025
Houston, Texas

/s/ *Jeri Leigh Miller*
**SIDLEY AUSTIN LLP**
Duston K. McFaul (TX Bar No. 24003309)
Jeri Leigh Miller (TX Bar No. 24102176)
Maegan Quejada (TX Bar No. 24105999)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone:     (713) 495-4500
Facsimile:     (713) 495-7799
Email:           dmcfaul@sidley.com
                 jeri.miller@sidley.com
                 mquejada@sidley.com
William E. Curtin (admitted *pro hac vice*)
Michael Sabino (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email:           wcurtin@sidley.com
                 msabino@sidley.com

Jackson T. Garvey (admitted *pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone:     (312) 853-7000
Facsimile:     (312) 853-7036
Email:           jgarvey@sidley.com


*Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

      I certify that on January 10, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                            */s/ Jeri Leigh Miller*
                                                            Jeri Leigh Miller