**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CONN'S, INC., *et al.*[1] | Case No. 24-33357 (ARP) |
| Debtors. | (Jointly Administered) |

**ORDER (I) APPROVING GLOBAL RESOLUTION
AND SETTLEMENT OF CERTAIN DISPUTES BETWEEN
THE DEBTORS AND ASSURANT PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9019 AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (this "Order") (a) approving the proposed settlement set forth in the term sheet attached hereto as **Exhibit 1** (the "Term Sheet"), between the Debtors and Assurant Service Protection, Inc. and its applicable affiliates ("Assurant") and (b) granting related relief, all as more fully described in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Conn's, Inc. (2840), Conn Appliances, Inc. (0706), CAI Holding, LLC (2675), Conn Lending, LLC (9857), Conn Credit I, LP (0545), Conn Credit Corporation, Inc. (9273), CAI Credit Insurance Agency, Inc. (5846), New RTO, LLC (6400), W.S. Badcock LLC (2010), W.S. Badcock Credit LLC (5990), and W.S. Badcock Credit I LLC (6422).  The Debtors' service address is 2445 Technology Forest Blvd., Suite 800, The Woodlands, TX 77381.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      Pursuant to Bankruptcy Rule 9019 and section 363(b) of the Bankruptcy Code, the Term Sheet is approved.

2.      The Debtors and Assurant are authorized and directed to enter into any enter into, perform, execute, and deliver all documents, and take all actions, necessary to implement each of the terms of the Term Sheet and otherwise perform thereunder.

3.      All Agreements are deemed rejected and no longer capable of assumption or assignment.  To the extent there are any agreements among any one or more of the Debtors and Assurant not included in the schedule of Agreements attached as Exhibit B to the Motion, such agreements are likewise deemed rejected and no longer capable of assumption or assignment.

4.      Nothing contained in the Motion, Order, or any actions taken by the parties pursuant to the relief granted in the Order shall be construed as: (i) an admission as to the validity of any claim against the Debtors, or (ii) a waiver or limitation of the parties' rights under the Term Sheet, the Bankruptcy Code, and other applicable law.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2025

_____
Marvin Isgur
United States Bankruptcy Judge

## **Exhibit 1**

**Term Sheet**

IN RE CONN'S, INC., ET AL.
CASE NO. 24-33357 (ARP)

SETTLEMENT TERM SHEET

This term sheet (the "Settlement Term Sheet") describes the principal terms of a settlement (the "Settlement") by and among (i) Conn's, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") under the caption *In re Conn's, Inc. et al.*, Case No. 24-33357 (ARP) (the "Chapter 11 Cases"), (ii) Jefferson Capital Systems, LLC ("JeffCap"), (iii) Federal Warranty Service Corporation, (iv) United Service Protection, Inc., (v) Assurant Service Protection, Inc., (vi) The Signal, L.P., (vii) American Bankers Insurance Company of Florida, (viii) Reliable Lloyds Insurance Company, (ix) Standard Guaranty Insurance Company, (x) Voyager Indemnity Insurance Company, (xi) American Bankers Life Assurance Company of Florida, and (xii) associated affiliates (the foregoing entities in (iii)–(xii), collectively, "Assurant" and, collectively with the Debtors and JeffCap, the "Parties").

This Settlement Term Sheet shall become binding and enforceable on the Parties only upon the Effective Date (defined below).

| Settlement Terms | Description of Terms |
|---|---|
| **Effective Date** | The "Effective Date" means the first business day after which (i) the Bankruptcy Court has entered an order in the Chapter 11 Cases approving this Settlement Term Sheet, in form and substance acceptable to the Parties (the "Settlement Approval Order"), and (ii) the Settlement Approval Order has become a Final Order (as defined below). The Debtors shall file a motion, in form and substance satisfactory to Assurant, seeking entry of the Settlement Approval Order, on or before January 10, 2025 (the "Motion"). |
| **Payment** | The Debtors shall pay Assurant $1,500,000.00 (the "Settlement Payment") out of the proceeds of the sale to JeffCap substantially contemporaneously with the later of (i) the first closing (the "First JeffCap Closing") under the Restated Asset Purchase Agreement dated as of November 4, 2024 by and among JeffCap, as Purchaser, and certain of the Debtors and certain of their affiliates, as Sellers (the "A&R APA") and (ii) the Settlement Approval Order becoming a Final Order. |
| **Rejection of Assurant Contracts** | All agreements, including all agreements listed on **Schedule A** to this Term Sheet, and any amendments thereto, among any one or more of the Debtors and Assurant (the "Assurant Contracts") shall be deemed rejected and no longer capable of assumption or assignment (collectively, the "Rejected Contracts"). |
| **Bankruptcy Claims** | Assurant, on behalf of themselves and any of their affiliates, waive any right to recovery in the Chapter 11 Cases other than as provided by this |

| | |
|---|---|
| | Settlement Term Sheet, whether on account of prepetition or post-petition claims and regardless of such claims' priority or secured status.<br><br>Notwithstanding the foregoing, Assurant shall retain rejection damages claims with respect to the Rejected Contracts (solely as unsecured claims) in the Debtors' Chapter 11 Cases and Assurant shall have thirty (30) days from the Effective Date to amend its existing claims to assert such rejection damages. |
| **Release of Turnover Claims** | The Debtors agree to waive any right to turnover of funds or other property from Assurant arising on or before the Effective Date, including for any amounts asserted to be held in trust, as agent, as fiduciary, or otherwise.<br><br>Assurant agrees to waive any right to turnover of funds or other property from the Debtors arising on or before the Effective Date, including for any amounts asserted to be held in trust, as agent, as fiduciary, or otherwise. |
| **Effect on Customer Agreements** | No assumption, rejection, or other treatment of the Assurant Contracts in the Chapter 11 Cases will impact (i) Assurant's obligations to the Debtors' customers under the respective agreements between such customers and Assurant or the Debtors or (ii) any asset purchaser (including JeffCap) or successor's rights as a beneficiary under agreements with customers or their right to cancel such contracts on behalf of customers to the extent provided in the underlying loan agreement between the Debtors and such customer and to the extent permitted under the applicable terms of the customer agreements. |
| **Application of Refunds** | Assurant, the Debtors, and applicable purchasers of receivables (including JeffCap) will cooperate in good faith with respect to refunds relating to (i) financed service contracts for which the contract, or any other agreement with the customer, provides that such refunds are payable to the Debtors or any assignee thereof in accordance with such documents, and (ii) unearned credit insurance premiums for contracts financed under the Debtors' financing programs (together, the "<u>Refunds</u>").  The Debtors waive any right to receive any reimbursements from Assurant related to Refunds paid by the Debtors under the service contracts or credit insurance policies related to cancellations requested and effective through September 30, 2024.  Notwithstanding anything else herein, under no circumstances shall Assurant be required to pay any Refund twice.<br><br>Unless already paid by Assurant, Assurant shall pay its pro rata share (sixty-five percent (65%)) of the Refunds resulting from cancellations requested and effective during the period commencing on October 1, 2024 and ending on October 31, 2024 (without respect to the release of |

claims in this Settlement Term Sheet) to the applicable servicer of the financed receivable. For clarity, the refund amounts owed by Assurant for such period shall be reduced by thirty-five percent (35%) which reflects the historically funded unearned premium amounts contributed by the Debtors.

Unless already paid by Assurant, Assurant shall pay one hundred percent (100%) of the Refunds resulting from cancellations requested and effective on or after November 1, 2024 (without respect to the release of claims in this Settlement Term Sheet) to the applicable servicer of the financed receivable, in the full amount of such refund and without any discount for the historically funded unearned premium amounts contributed by the Debtors.

Assurant shall honor its underlying contracts and credit insurance policies with the customers including the customer's right to cancel its contract in accordance with the contract terms. With respect to the credit insurance policies and service contracts, Assurant shall honor any asset purchaser (including JeffCap) or successor's right to cancel such policies or contracts on behalf of customers to the extent provided in the underlying loan agreement between the Debtors and such customer and to the extent provided in the applicable credit insurance policy and service contract.

Assurant, on the one hand, and the Debtors and purchasers of receivables (including JeffCap), on the other hand, shall enter into commercially reasonable agreement(s) for the administration of any Refunds, which agreements shall include, among other things, indemnification of Assurant for refunds paid by Assurant to the applicable purchaser of receivables for claims asserted by the customers relating to such refunds, subject to customary exclusions for fraud, bad faith, gross negligence, and willful misconduct. To the extent Assurant pays or has paid any refunds to the Debtors prior to (i) the closing of the sale of the applicable receivables or (ii) Assurant's receipt of written instructions from the purchaser to pay such refunds to another party, the purchaser shall be deemed to have waived its entitlement to payment of such refunds, it being understood that under no circumstances shall Assurant be required to pay any refund twice.

Assurant shall cooperate in good faith with the Debtors and any successors thereto or purchaser(s) of receivables (including JeffCap) to facilitate the foregoing, including execution of a servicing agreement.

| **Credit Insurance Programs** | Assurant will honor the credit insurance coverages it has agreed to provide to the Debtors' customers under the respective agreements |

| | |
|---|---|
| | between such customers and Assurant, including any asset purchaser's (including JeffCap's) interest as a beneficiary under said insurance for the related loan that was the subject of the credit insurance if that loan was purchased by the asset purchaser (including JeffCap). Assurant and its applicable affiliates, the Debtors, and applicable purchasers of receivables (including JeffCap) will cooperate in good faith with respect to payments on claims owed by Assurant under the credit insurance policies (collectively, "<u>Claim Payments</u>").

The Debtors waive any right to receive Claim Payments from Assurant for amounts noticed to Assurant related to dates of losses that are prior to September 30, 2024. All Claim Payments owed by Assurant under the credit insurance policies related to dates of losses occurring during the period commencing on October 1, 2024 (without respect to the release of claims above) are to be made to the applicable servicer, <u>without</u> discount, if any, for the historical portion funded by the Debtors. Notwithstanding anything else herein, under no circumstance shall Assurant be required to pay any Claim Payment twice.

Assurant, on the one hand, and the Debtors and purchasers of receivables (including JeffCap), on the other hand, may enter into commercially reasonable agreement(s) for the administration of any Claim Payments related to contracts financed under the Debtors' financing programs, which agreement(s) shall include, among other things, indemnification of Assurant for Claim Payments paid by Assurant to the applicable purchaser of receivables for claims asserted by the customers relating to such Claim Payments, subject to customary exclusions for fraud, bad faith, gross negligence, and willful misconduct. To the extent Assurant pays or has paid any Claims Payments to the Debtors prior to (i) the closing of the sale of the applicable receivables or (ii) Assurant's receipt of written instructions from the purchaser to pay such Claim Payments to another party, the purchaser shall be deemed to have waived its entitlement to payment of such Claim Payments, it being understood that under no circumstances shall Assurant be required to pay any Claim Payment twice.

Assurant shall cooperate in good faith with the Debtors and any successors thereto or purchaser(s) of receivables (including JeffCap) to facilitate the foregoing, including execution of a servicing agreement with JeffCap to ensure servicing of Claim Payments and Refunds in conformity with the relevant contracts, credit insurance policies, and law ("<u>Servicing Agreement</u>"). |
| **Allocation of Payments by Assurant** | Except where provided otherwise, payments made by Assurant under the boxes titled "Application of Refunds" and "Credit Insurance Programs," above, shall be made to the applicable servicer of financed receivables. |

| | |
|---|---|
| | If, at the time of such payment, JeffCap or any of its affiliates is the servicer for any of such receivables, JeffCap shall hold such amounts in trust for the Debtors and promptly turn such amounts over to the Debtors to the extent such amounts constitute Excluded Assets as defined in the A&R APA. |
| **Final Order** | "<u>Final Order</u>" shall mean an order which has not been modified, amended, reversed, vacated or stayed and as to which (A) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, stay, reargument or rehearing shall then be pending or (B) if an appeal, writ of certiorari, new trial, stay, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, stay, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed relating to such order, shall not cause an order not to be a Final Order. |
| **Mutual Releases** | Upon the Effective Date, the Debtors, on the one hand, and Assurant, on the other hand, shall grant to one another (and each of their respective Related Parties) those releases set forth in **Schedule B** hereto (the "<u>Releases</u>"), which Releases in favor of Assurant shall become effective on the Effective Date and which Releases in favor of Debtors shall become effective upon payment by the Debtors to Assurant of the Settlement Payment. |
| **Stand-Down on Discovery and Litigation** | Upon the date the Debtors file a motion with the Bankruptcy Court seeking approval of this Term Sheet and continuing until a Termination Event, the Debtors and Assurant shall refrain from continuing or conducting any discovery or litigation targeted at any other Party or any of their Related Parties as defined in the "Mutual Releases" section above. Any applicable deadlines shall be tolled, and no Party shall use the delay contemplated by this stand-down provision to preclude compliance with such discovery or litigation obligations in the event the Settlement Term Sheet is not approved by the Bankruptcy Court or the order approving the Settlement Term Sheet is reversed or vacated on appeal (any such event, a "<u>Termination Event</u>"). |
| **Support for Settlement Term Sheet** | The Parties agree to support and take all steps reasonably necessary and desirable to consummate the transactions and undertakings contained herein, including, but not limited to preparing and finalizing any |

5

|  | additional documentation and submitting evidence and legal support at any hearing in the Bankruptcy Court to approve the Settlement. |
|---|---|
| **Consent to Jurisdiction** | The Parties consent to the exclusive jurisdiction of the Bankruptcy Court solely for the limited purposes of enforcement of the obligations under this Settlement Term Sheet and resolution of any disputes related thereto and agree venue therein is proper. |
| **Amendments; Effectiveness** | No amendment to the terms hereof may be made without the signed, written consent of each of the Parties, and, to the extent necessary, approval of the Bankruptcy Court.<br><br>No Party shall argue that the absence of signatures to this Settlement renders it unenforceable with its terms. The Parties further stipulate that their consent to the submission of the Settlement and the Motion may be expressed through their respective counsel in writing. |
| **Prohibition on Assignment** | None of the rights of any Party hereunder may be assigned except as ordered by the Bankruptcy Court. |

**Schedule A**

**Prepetition Assurant Agreements**

| | ESC Program |
|---|---|
| 1 | Administration Agreement (Consumer Products) originally dated July 1, 2011, all amendments thereto, and all related documents |
| 2 | Claims Services Agreement, dated as of July 1, 2011,  all amendments thereto, and all related documents |
| 3 | Agreement to Supplement Service Plan Terms and Conditions dated April 22, 2017, all amendments thereto, and all related documents |
| 4 | Assumption Agreement, effective as of January 31, 2012, all amendments thereto, and all related documents |
| 5 | Authorized Servicer Agreement, effective as of June 1, 2012, all amendments thereto, and all related documents |
| 6 | Conn's Data Protection Agreement, effective as of January 5, 2018, all amendments thereto, and all related documents |
| 7 | Conn's Notice of Non-Renewal, effective December 21, 2023, all amendments thereto, and all related documents |
| 8 | Profit Share Addendum to Administration Agreement, effective July 1, 2011,  all amendments thereto, and all related documents |
| | **Credit Insurance Program** |
| 9 | Service Expense Reimbursement Agreement, dated July 1, 1998, all amendments thereto, and all related documents |
| | **Aftermarket Program** |
| 10 | Administration Agreement (Aftermarket Service Contracts — Consumer Products), effective as of February 29, 2012, and all amendments thereto, including the March 29, 2023 letter of intent, as amended, and all related documents. |

**Schedule B**

**Releases**

| | |
|---|---|
| **Incorporation of Definitions** | Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Term Sheet with which this Schedule is associated. |
| **Assurant Releasing Parties Definition** | "Assurant Releasing Parties" means, Assurant, and, to the maximum extent permitted by law, Assurant's respective affiliates and Related Parties. |
| **Company Releasing Parties Definition** | "Company Releasing Parties" means, each of the Debtors, and, to the maximum extent permitted by law, each of the Debtors on behalf of their respective affiliates and Related Parties. |
| **Related Party Definition** | "Related Party" or "Related Parties"  means, with respect to any Person or Entity, such Person's or Entity's current, former, and future directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, Affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and the respective successors and assigns thereof |
| **Released Parties Definition** | "Assurant Released Parties" means, each of, and in each case in its capacity as such: (i) the Assurant Releasing Parties; (ii) the current and former affiliates of each entity in clause (i); and (iii) each Related Party of each entity in clauses (i) and (ii).<br><br>"Company Released Parties" means, each of, and in each case in its capacity as such: (i)  the Company Releasing Parties; (ii) the current and former affiliates of each entity in clause (i); and (iii) each Related Party of each entity in clauses (i) and (ii). |

| | |
|---|---|
| **Releases by the Company Releasing Parties** | Except as expressly set forth herein or in the Settlement Term Sheet, upon the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Assurant Released Party is hereby deemed released and discharged by each and all of the Company Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who or which may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all causes of action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Company Releasing Parties who would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, a Company Releasing Parties, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the any chapter 11 plan filed by the Debtors, the business or contractual arrangements between any Debtor and any Assurant Released Party, the Debtors' in- or out-of-court restructuring efforts, the Rejected Contracts, the historical nonpayment, turnover of amounts asserted to be held in a fiduciary capacity, future profit share and interest income payments, the chapter 11 cases, the Settlement Term Sheet, the effectuation of the sale to JeffCap pursuant to the A&R APA, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Settlement Term Sheet or the pursuit of approval of the Settlement Term Sheet, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.<br><br>The Releases shall not release any ongoing obligation contemplated by the Debtors' and Assurant's settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Releases shall not be effective as to any claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence of such Related Party. |

| | |
|---|---|
| **Releases by Assurant Releasing Parties** | Except as expressly set forth herein or in the Settlement Term Sheet, effective on the date of Assurant's receipt, in good funds, of the Settlement Payment and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Debtor Released Party is hereby deemed released and discharged by each and all of the Assurant Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all causes of action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Assurant Parties who would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, an Assurant Releasing Party, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the any chapter 11 plan filed by the Debtors, the business or contractual arrangements between any Debtor and any Debtor Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Rejected Contracts, the historical nonpayment, turnover of amounts asserted to be held in a fiduciary capacity, future profit share and interest income payments, the chapter 11 cases, the Settlement Term Sheet, the effectuation of the sale to JeffCap, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Settlement Term Sheet or the pursuit of approval of the Settlement Term Sheet, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.<br><br>The Releases shall not release any ongoing obligation contemplated by the Debtors' and Assurant's settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Releases shall not be effective as to any claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence of such Related Party.  The Releases shall not release any claim by Assurant related to the rejection by the Debtors of all agreements with Assurant, including all agreements listed on Schedule A to this Term Sheet, and any amendments thereto. |