**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CONN'S, INC, *et al.*[1] | Case No. 24-33357 (ARP) |
| Debtors. | (Jointly Administered) |

**FIRST AMENDED JOINT CHAPTER 11 PLAN OF
DISTRIBUTION OF CONN'S, INC. AND ITS DEBTOR AFFILIATES**

**SIDLEY AUSTIN LLP**
Duston McFaul (TX Bar No. 24003309)
Jeri Leigh Miller (TX Bar No. 24102176)
Maegan Quejada (TX Bar No. 24105999)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
Email: dmcfaul@sidley.com
        jeri.miller@sidley.com
        mquejada@sidley.com

Jackson T. Garvey (admitted *pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: jgarvey@sidley.com

*Counsel to the Debtors and Debtors in Possession*

Dated: June 7, 2025

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Conn's, Inc. (2840), Conn Appliances, Inc. (0706), CAI Holding, LLC (2675), Conn Lending, LLC (9857), Conn Credit I, LP (0545), Conn Credit Corporation, Inc. (9273), CAI Credit Insurance Agency, Inc. (5846), New RTO, LLC (6400), W.S. Badcock LLC (2010), W.S. Badcock Credit LLC (5990), and W.S. Badcock Credit I LLC (6422). The Debtor's service address is 2445 Technology Forest Blvd., Suite 800, The Woodlands, TX 77381.

**TABLE OF CONTENTS**

ARTICLE I.  DEFINED TERMS AND RULES OF INTERPRETATION ................................. 1

  A.  Defined Terms ............................................................................................. 1

  B.  Rules of Interpretation ............................................................................. 18

  C.  Computation of Time ............................................................................... 18

  D.  Reference to Monetary Figures ................................................................ 18

  E.  Controlling Document .............................................................................. 18

ARTICLE II.  ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES ....................................................................................................................... 19

  A.  Administrative Claims ............................................................................. 19

  B.  DIP Claims ............................................................................................... 19

  C.  Professional Fee Claims .......................................................................... 20

    1.  Final Fee Applications and Payment of Professional Fee Claims.............. 20

    2.  Administrative Claims of OCPs ............................................................. 20

    3.  Post-Confirmation Date Fees and Expenses ........................................... 20

    4.  Professional Fee Reserve ....................................................................... 20

  D.  Priority Tax Claims ................................................................................. 21

  E.  U.S. Trustee Statutory Fees .................................................................... 21

ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .... 21

  A.  Classification of Claims and Interests.................................................... 21

  B.  Treatment of Claims and Interests ......................................................... 22

    1.  Class 1 – Other Secured Claims ............................................................ 22

    2.  Class 2 – Other Priority Claims ............................................................. 23

    3.  Class 3 – Prepetition ABL Secured Claims............................................. 23

    4.  Class 4 – Prepetition 2L Secured Claims ............................................... 23

    5.  Class 5 – Prepetition 3L Secured Claims ............................................... 24

    6.  Class 6 – General Unsecured Claims ..................................................... 24

    7.  Class 7 – Intercompany Claims ............................................................. 25

    8.  Class 8 – Section 510(b) Claims ........................................................... 25

    9.  Class 9 – Existing Equity Interests ....................................................... 25

    10.  Class 10 – Intercompany Interests ....................................................... 26

  C.  Reservation of Rights Regarding Claims and Interests .......................... 26

  D.  Elimination of Vacant Classes ................................................................ 26

  E.  Voting Classes, Presumed Acceptance by Non-Voting Classes....................... 27

F.    Controversy Concerning Impairment ................................................................ 27

G.    Subordination of Claims .................................................................................... 27

H.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ................ 27

I.    Postpetition Interest on Claims ......................................................................... 27

J.    Insurance ............................................................................................................ 27

ARTICLE IV.  MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 28

A.    General Settlement of Claims and Interests ...................................................... 28

B.    Sources of Consideration for Plan Distributions .............................................. 28

C.    Sale Transactions ............................................................................................... 28

D.    Settlement of Certain Administrative Claims .................................................... 28

E.    Wind-Down......................................................................................................... 29

      1.    Vesting of the Assets in the Wind-Down Debtors ................................. 29

      2.    Authority of Wind-Down Debtors .......................................................... 29

      3.    Plan Administrator .................................................................................. 30

      4.    Dissolution of Governing Bodies of the Debtors ................................... 30

F.    Distribution Trust ............................................................................................... 31

      1.    Creation and Governance of the Distribution Trust ............................... 31

      2.    Distribution Trust Agreement ................................................................. 32

      3.    Preservation of Privilege ........................................................................ 33

      4.    Distribution Trust Fees and Expenses .................................................... 33

      5.    Dissolution of the Distribution Trust...................................................... 34

      6.    Single-Satisfaction of Claims ................................................................. 34

      7.    Cooperation by the Debtors and the Wind-Down Debtors ..................... 34

      8.    Abandonment of Distribution Trust Assets............................................. 35

      9.    Tax Treatment of Distribution Trust ....................................................... 35

G.    Claims Reconciliation Process........................................................................... 36

      1.    In General ............................................................................................... 36

      2.    Specified Matters Pertaining to the Reconciliation of Administrative Claims ........... 36

H.    Retained Causes of Action................................................................................. 37

I.    Corporate Action ............................................................................................... 37

J.    Cancellation of Existing Securities and Agreements......................................... 38

K.    Effectuating Documents; Further Transactions ................................................. 39

L.    Section 1146 Exemption from Certain Taxes and Fees ..................................... 39

M.    Sale Order .......................................................................................................... 39

N.   Separate Plans ...................................................................................................... 39

O.   Settlement of Claims and Controversies ............................................................... 39

P.   Closing the Chapter 11 Cases ............................................................................... 40

ARTICLE V.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................................................................................... 40

A.   Assumption and Rejection of Executory Contracts and Unexpired Leases .................... 40

B.   Claims Based on Rejection of Executory Contracts or Unexpired Leases ...................... 40

C.   Reservation of Rights .............................................................................................. 41

D.   Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ...................................................................................................... 41

E.   Insurance Policies .................................................................................................... 41

F.   Modifications, Amendments, Supplements, Restatements, or Other Agreements .......... 42

G.   Nonoccurrence of Effective Date ........................................................................... 42

H.   Employee Compensation and Benefits ................................................................... 42

ARTICLE VI.  PROVISIONS GOVERNING DISTRIBUTIONS ................................... 42

A.   Distributions on Account of Claims Allowed as of the Effective Date ........................... 42

B.   Compliance with Tax Requirements ....................................................................... 43

C.   Date of Distributions ............................................................................................... 43

D.   Disbursing Agent ..................................................................................................... 44

E.   Rights and Powers of Disbursing Agent ................................................................ 44

F.   Surrender of Instruments ......................................................................................... 44

G.   Delivery of Distributions and Undeliverable or Unclaimed Distributions ..................... 44

H.   Manner of Payment .................................................................................................. 45

I.    Foreign Currency Exchange Rate ........................................................................... 45

J.    Setoffs and Recoupment ......................................................................................... 45

K.   Minimum Distribution ............................................................................................. 45

L.   Allocations ............................................................................................................... 45

M.   Distributions Free and Clear ................................................................................... 46

N.   Claims Paid or Payable by Third Parties ............................................................... 46

1.   Claims Paid by Third Parties ........................................................................... 46

2.   Claims Payable by Third Parties ...................................................................... 46

3.   Applicability of Insurance Policies .................................................................. 46

ARTICLE VII.  PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND DISPUTED CLAIMS ................................................................................................... 47

A.   Allowance of Claims ................................................................................................ 47

iii

B.  Claims Administration Responsibilities ................................................................ 47

C.  Estimation of Claims and Interests ..................................................................... 47

D.  Adjustment to Claims or Interests Without Objection ....................................... 47

E.  Time to File Objections to Claims ...................................................................... 48

F.  Disallowance of Claims or Interests ................................................................... 48

G.  Disallowance of Late Claims .............................................................................. 48

H.  Disputed Claims Process ..................................................................................... 48

I.  Amendments to Claims ....................................................................................... 48

J.  No Distributions Pending Allowance ................................................................. 49

K.  Distributions After Allowance ............................................................................ 49

ARTICLE VIII.  CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................ 49

A.  Conditions Precedent to the Effective Date ....................................................... 49

B.  Waiver of Conditions .......................................................................................... 50

ARTICLE IX.  RELEASE, INJUNCTION, AND RELATED PROVISIONS ........................... 50

A.  Debtor Releases ................................................................................................... 50

B.  Third Party Releases ........................................................................................... 51

C.  Exculpations ........................................................................................................ 52

D.  Injunction ............................................................................................................ 52

E.  Release of Liens .................................................................................................. 53

F.  Gatekeeper Provision .......................................................................................... 53

ARTICLE X.  RETENTION OF JURISDICTION ................................................................... 54

ARTICLE XI.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..... 56

A.  Modification and Amendment ............................................................................. 56

B.  Effect of Confirmation on Modifications ........................................................... 56

C.  Revocation or Withdrawal of Plan ...................................................................... 56

ARTICLE XII.  MISCELLANEOUS PROVISIONS ................................................................ 57

A.  Immediate Binding Effect ................................................................................... 57

B.  Additional Documents ......................................................................................... 57

C.  Substantial Consummation .................................................................................. 57

D.  Reservation of Rights .......................................................................................... 57

E.  Successors and Assigns ....................................................................................... 57

F.  Determination of Tax Liabilities ......................................................................... 57

G.  Notices ................................................................................................................. 58

H.  Term of Injunctions or Stays ............................................................................... 58

iv

I.      Entire Agreement ............................................................................................... 59

J.      Plan Supplement ................................................................................................ 59

K.      Governing Law .................................................................................................. 59

L.      Nonseverability of Plan Provisions................................................................... 59

**INTRODUCTION**

Conn's, Inc. and certain of its affiliates, along with BRF Finance Co., LLC, as plan sponsor propose this chapter 11 plan under section 1121 of the Bankruptcy Code.  The Debtors and the Plan Sponsor are the co-proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.  Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the Debtors' case information website: http://dm.epiq11.com/case/Conns.

Although proposed jointly for administrative purposes, this Plan constitutes a separate chapter 11 plan for each Debtor for the treatment and resolution of outstanding Claims against and Interests in such Debtor pursuant to the Bankruptcy Code.  Unless otherwise set forth herein, the classification and treatment of Claims against and Interests in the Debtors set forth in Article III of this Plan apply separately with respect to each Debtor.  Each Debtor is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.  This Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made to the Disclosure Statement Filed contemporaneously with the Plan for a discussion of the Debtors' history, business, prepetition capital structure, and liquidation analysis, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

Subject to section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and this Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to substantial consummation.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**ARTICLE I.**
**DEFINED TERMS AND RULES OF INTERPRETATION**

**A.      Defined Terms**

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.      "Accelerated Payment Procedures" means the procedures providing for the settlement and compromise of Allowed Administrative Claims at 30% of the Allowed amount of such claims, which procedures were approved in the Accelerated Payment Procedures Order.

2.      "Accelerated Payment Procedures Order" means the *Order (I) Approving the Accelerated Payment Procedures and (II) Granting Related Relief* [Docket No. 1656]

3.      "Adequate Protection Claims" means those superpriority administrative expense claims granted under the DIP Orders to the Prepetition Agents for the benefit of the applicable

1

Prepetition Secured Parties for the aggregate diminution in the value of their respective interests in the Prepetition Collateral (including Cash Collateral (as defined in the DIP Orders)) from and after the Petition Date for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors of the Prepetition Collateral, the priming of the Prepetition Liens by the DIP Priming Liens (each as defined in the DIP Orders) pursuant to the DIP Documents (as defined in the DIP Orders) and the DIP Orders, the payment of any amounts under the Carve-Out and Professional Fee Reserve Account (each as defined in the DIP Orders), or pursuant to the DIP Orders or any other order of the Court or provision of the Bankruptcy Code or otherwise, and the imposition of the automatic stay.

4.      "<u>Administrative and Priority Claims Reserve</u>" means a reserve created on the Effective Date of the Plan, which amount shall be used to fund the total of Allowed or estimated: (a) Administrative Claims (other than DIP Claims, Professional Fee Claims, Dealer Upside Payments, Adequate Protection Claims, and Claims for U.S. Trustee Statutory Fees); and (b) Other Priority Claims (other than Priority Tax Claims).

5.      "<u>Administrative and Priority Claims Reserve Cap</u>" means $5.1 million.

6.      "<u>Administrative Claim</u>" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code.

7.      "<u>Administrative Claims Bar Date</u>" means the deadline for Filing all requests for allowance and payment of Administrative Claims, which, except in the case of Professional Fee Claims, shall be thirty (30) days after the Effective Date.  Professional Fee Claims shall be filed in accordance with the provisions of Article II.C. herein.

8.      "<u>Affiliate</u>" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such entity was a debtor in a case under the Bankruptcy Code.

9.      "<u>Allowed</u>" means, with respect to any Claim, except as otherwise provided in the Plan:  (a) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed; or (b) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clause (a) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection to the allowance thereof has been Filed by the Debtors, Distribution Trustee, or Plan Administrator, as applicable, or any other party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors.  "<u>Allow</u>" and "<u>Allowing</u>" shall have correlative meanings.

10. "Asset Purchase Agreement" means a negotiated asset purchase agreement (as such may be amended, supplemented, or modified from time to time) by and among any of the Debtors, as seller, and a Purchaser, as buyer for the sale of some or all of the Debtors' assets according to the terms set forth therein.

11. "Assumed Employee Plans" means each of (a) the Blue Cross Blue Shield Medical Plan; (b) the Blue Cross Blue Shield Dental Plan; (c) the EyeMed Vision Plan; (d) the WEX-Cobra Administrator (Medical, Dental, and Vision); and (e) the Known2U – Benefits Data Exchange.

12. "Assumed Insurance Policy" means (a) that certain directors' and officers' insurance policies comprising the program over policy number 01-701-93-02; (b) that certain directors' and officers' insurance policy at policy number DOX10005990208; (c) that certain directors' and officers' insurance policy at policy number ELU194013-23; (d) that certain directors' and officers' insurance policy at policy number USF0022223; (e) that certain directors' and officers' insurance policy at policy number ORPRO12104399; (f) that certain directors' and officers' insurance policy at policy number B0621PCONN010823; (g) that certain directors' and officers' insurance policy at policy number SGC0002-06; (h) that certain directors' and officers' insurance policy at policy number XDO-00001VP-02; (i) that certain directors' and officers' insurance policy at policy number EUW152265504; (j) that certain directors' and officers' insurance policy at policy number 768751494; (k) that certain directors' and officers' insurance policy at policy number 47-EPC-332087-01;  (l) that certain directors' and officers' insurance policy at policy number MLXS2310000851-0; (m) that certain directors' and officers' insurance policy at policy number 01-701-93-04; (n) that certain employment practices liability insurance policy at policy number J05973508; and (o) that certain general commercial liability insurance policy at policy number 20SBABN6D3D.

13. "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent and voidable transfer laws; *provided* that Avoidance Actions does not include any Avoidance Action purchased as part of a Sale Transaction.

14. "Ballots" means ballots provided to each of the Holders of Claims entitled to vote to accept or reject the Plan.

15. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

16. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas.

17. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

18.     "Bar Date" means, as applicable, the Administrative Claims Bar Date, and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date of October 7, 2024 and the bar date for Governmental Units of January 20, 2025, each as set by the *Order (I) Setting Bar Dates for Filing Proofs of Claim; (II) Approving Form and Manner for Filing Proofs of Claim; (III) Approving Notice of Bar Dates, and (IV) Granting Related Relief* [Docket No. 418].  Notwithstanding the foregoing, the Professional Fee Claims shall be Filed in accordance with Article II.C. herein and shall not otherwise be subject to the Bar Date.

19.     "Business Day" means any day other than a Saturday, Sunday, or "Legal Holiday" as such term is defined in Bankruptcy Rule 9006(a).

20.     "Cash" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

21.     "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) claims pursuant to federal securities law; (c) the right to object to or otherwise contest Claims or Interests and any Claims Objections; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any Avoidance Actions; and (g) claims pursuant to section 505 of the Bankruptcy Code.

22.     "Chapter 11 Cases" means these chapter 11 cases Filed by the Debtors on the Petition Date in the Bankruptcy Court.

23.     "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates.

24.     "Claim Objection" means an objection to the allowance of a claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any Bankruptcy Court order regarding omnibus claims objections.

25.     "Claim Objection Bar Date" means the date that is three hundred sixty-five (365) days after the Effective Date, which date may be extended upon presentment of an order to the Bankruptcy Court by the Plan Administrator or the Distribution Trustee.

26.     "Claims Register" means the register managed by the Notice and Claims Agent reflecting Filed Proofs of Claim.

27.     "Class" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

28.     "Committee" means the official committee of unsecured creditors appointed in these Chapter 11 Cases by the U.S. Trustee under section 1102(b) of the Bankruptcy Code on August 5, 2024 [Docket No. 230].

29.     "Committee Professionals" means (a) Pachulski Stang Ziehl & Jones LLP, as counsel to the Committee; and (b) Province, LLC, as financial advisors to the Committee.

30.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket in these Chapter 11 Cases.

31.     "Confirmation Hearing" means a hearing conducted by the Bankruptcy Court to consider confirmation of the proposed Plan under section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

32.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

33.     "Consummation" means the occurrence of the Effective Date.

34.     "Cure" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed or assumed and assigned by the Debtors.

35.     "*De Minimis* Sale Transactions" means the sales of certain *de minimis* assets conducted pursuant to procedures approved in the *Order Approving Procedures for the Sale, Transfer, and/or Abandonment of* De Minimis *Assets* [Docket No. 414].

36.     "Dealer 9019 Motion" means the *Debtors' Emergency Motion for Entry of an Order (I) Approving Global Resolution and Settlement of Certain Disputes Between the Debtors, BRF Finance Co., LLC and the Ad Hoc Group of Badcock Dealers Pursuant to Federal Rule of Bankruptcy Procedure 9019; (II) Approving Procedures for Dealers that Are Not Members of the Ad Hoc Group to Opt Out of Participation in the Settlement, and (III) Granting Related Relief* [Docket No. 1575].

37.     "Dealer Settlement Order" means the *Order (I) Approving Global Resolution and Settlement of Certain Disputes Between the Debtors, BRF Finance Co., LLC, and the Ad Hoc Group of Badcock Dealers Pursuant to Federal Rule of Bankruptcy Procedure 9019; (II) Approving Procedures for Dealers that Are Not Members of the Ad Hoc Group to Opt Out of Participation in the Settlement; and (III) Granting Related Relief* [Docket No. 1628].

38.     "Dealer Upside Payments" means payment to the Participating Dealers of 50% of the Distributable Cash following the occurrence of (a) the Effective Date; and (b) payment of $50 million to the Prepetition 2L Agent on account of the Prepetition 2L Claim, until the Participating

Dealers receive, in the aggregate, up to the full unpaid amount of their respective Allowed Administrative Claims.

39. "<u>Debtors</u>" means Conn's, Inc., Conn Appliances, Inc., CAI Holding, LLC, Conn Lending, LLC, Conn Credit I, LP, Conn Credit Corporation, Inc., CAI Credit Insurance Agency, Inc., New RTO, LLC, W.S. Badcock LLC, W.S. Badcock Credit LLC, and W.S. Badcock Credit I LLC, each as a debtor and debtor in possession.

40. "<u>Debtor-Related Matters</u>" means anything related to the Debtors (including the prepetition capital structure, management, ownership, or operation thereof), the purchase, sale, amendment, or rescission of any Claim against or Interest in the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, including any prepetition financing transactions, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of, as applicable, the Chapter 11 Cases, the DIP Loan Documents, the Accelerated Payment Procedures, the Dealer 9019 Motion, the Dealer Settlement Order, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Sale Orders, the Asset Purchase Agreements, or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the pursuit of confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.

41. "<u>Debtor Releases</u>" means the releases set forth in Article IX herein.

42. "<u>DIP Borrowers</u>" means, collectively, Conn Appliances, Inc., Conn Credit I, LP, Conn Credit Corporation, Inc., and W.S. Badcock LLC, each as a debtor and debtor in possession.

43. "<u>DIP Agent</u>" means (a) prior to the DIP Assignment, JPMorgan Chase Bank, N.A., in its capacity as administrative agent and collateral agent under the DIP Credit Agreement, together with its successors and permitted assigns; and (b) following the DIP Assignment, B. Riley Commercial Capital, LLC, in its capacity as administrative agent and collateral agent under the DIP Credit Agreement, together with its successors and permitted assigns.

44. "<u>DIP Assignment</u>" means that certain Assignment and Acceptance, dated December 17, 2024, by and among JPMorgan Chase Bank, N.A. in its capacity as administrative agent and collateral agent under the DIP Credit Agreement, the DIP Lenders, and B. Riley Commercial Capital, LLC, assigning the outstanding revolver loans to and under the DIP Credit Agreement, along with all obligations owing thereunder, along with the DIP Loan Documents, to B. Riley Commercial Capital, LLC, as assignee, notice of which Assignment and Acceptance was filed at Docket No. 1270 on December 19, 2024.

45. "DIP Budget" means the applicable budget governing the Debtors' operations, as required under the DIP Credit Agreement.

46. "DIP Claim" means a Claim under the DIP Credit Agreement.

47. "DIP Collateral" means the collateral securing the DIP Credit Agreement, as set forth more specifically in the DIP Orders, DIP Credit Agreement, and/or any security documents relating thereto.

48. "DIP Credit Agreement" means that certain senior, secured, superpriority, priming Fifth Amended and Restated Loan and Security Agreement, dated as of July 25, 2024 (as such may be amended, supplemented, or otherwise modified from time to time), by and among the Conn's, Inc., as parent and guarantor, the DIP Borrowers, the DIP Guarantors, the DIP Lenders, and the DIP Agent.

49. "DIP Guarantors" means, collectively, Conn's, Inc., CAI Holding, LLC, Conn Lending, LLC, CAI Credit Insurance Agency, Inc., New RTO, LLC, W.S. Badcock Credit LLC, and W.S. Badcock Credit I LLC, each as a debtor and debtor in possession.

50. "DIP Lenders" means the lenders from time to time party to the DIP Credit Agreement.

51. "DIP Loan Documents" means, collectively, the DIP Orders, the DIP Credit Agreement, the DIP Assignment, and related security agreements and other documents required or requested by the DIP Secured Parties to be executed or delivered by or in connection with the DIP Credit Agreement (each as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

52. "DIP Orders" means the interim and final orders entered by the Bankruptcy Court approving the Debtors entry into the DIP Credit Agreement in these Chapter 11 Cases [Docket Nos. 86 & 482].

53. "DIP Secured Parties" means, collectively, the DIP Lenders and the DIP Agent.

54. "DIP Secured Party Expenses" means all "Extraordinary Expenses," as such term is defined in the DIP Credit Agreement, including any reasonable and documented fees and expenses of the DIP Secured Party Professionals incurred in connection with these Chapter 11 Cases.

55. "DIP Secured Party Professionals" means (a) prior to the DIP Assignment: (i) Simpson Thacher & Bartlett LLP, as counsel to the DIP Secured Parties; and (ii) FTI Consulting, Inc., as financial advisor to the DIP Secured Parties; and (b) following the DIP Assignment: (i) Choate, Hall & Stewart LLP, as counsel to the DIP Secured Parties; (ii) Quinn Emanuel Urquhart & Sullivan, as counsel to the DIP Secured Parties; and (iii) GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services, LLC, as financial advisor to the DIP Secured Parties.

56.     "<u>Disbursing Agent</u>" means, as set forth in Article IV.E herein, the Debtors, or the Person or Entit(ies) selected by the Distribution Trustee, Wind-Down Debtors, or Plan Administrator, as applicable, to make or to facilitate the Plan Distributions.

57.     "<u>Disclosure Statement</u>" means the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Distribution of Conn's, Inc. and its Debtor Affiliates*, dated May 19, 2025 (as such may be amended, supplemented, or modified from time to time thereafter), including all exhibits and schedules thereto.

58.     "<u>Disputed</u>" means, with respect to any Claim or Interest, any Claim or Interest:  (a) listed on the Schedules as unliquidated, disputed or contingent, unless a Proof of Claim has been Filed in a liquidated and non-contingent amount and no objection to such Proof of Claim has been timely filed; (b) included in a Proof of Claim as to which an objection or request for estimation has been timely filed, or as to which the Debtors, Wind-Down Debtors, Distribution Trustee, or Plan Administrator, as applicable, or other parties in interest retain the ability to interpose a timely objection or request for estimation; or € which is otherwise disputed by the Debtors, the Wind-Down Debtors, Distribution Trustee, or the Plan Administrator in accordance with applicable law and for which the objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order.  Claims that are Allowed by the Plan or that have been Allowed by a Final Order shall not be Disputed Claims.

59.     "<u>Distributable Cash</u>" means all Cash held as of the Effective Date or generated by the monetization of the DIP Collateral, Prepetition Collateral, Remaining Real Property, Retained Causes of Action other than Retained Causes of Action against Brian Kahn and his relevant affiliates, and any other assets of the Debtors' estates, including any tax refunds or credits, as applicable, on or after the Effective Date, other than such Cash as is necessary to (without duplication) (a) fund the Administrative and Priority Claims Reserve; (b) pay the DIP Claims; (c) fund the Professional Fee Reserve; (d) pay the U.S. Trustee Statutory Fee (e) pay the Allowed Other Secured Claims; (f) pay the Prepetition ABL Secured Claims; (g) pay the regular installment payments of the Allowed Other Priority Claims; (h) otherwise fund the Wind-Down Budget; and (i) fund the Initial General Unsecured Claims Distribution.

60.     "<u>Distribution Record Date</u>" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

61.     "<u>Distribution Trust</u>" means the trust, of which the Distribution Trustee shall serve as trustee, formed for the benefit of the Distribution Trust Beneficiaries pursuant to this Plan, the Distribution Trust Agreement, and the Confirmation Order to receive, hold, and administer the Distribution Trust Assets and to reconcile (a) Class 6 General Unsecured Claims and (b) Administrative Claims (in coordination with the Plan Administrator in the manner described in Article IV.G hereof)  in accordance with the terms of Article IV.F hereof.

62.     "<u>Distribution Trust Agreement</u>" means the agreement, to be included in the Plan Supplement, as it may be amended, effective on the Effective Date, that establishes and sets forth the terms and conditions which shall, in conjunction with this Plan and the Confirmation Order,

govern the administration of the Distribution Trust, which agreement shall be in a form reasonable acceptable to the Debtors, the Plan Sponsor, and the Distribution Trustee.

63.     "<u>Distribution Trust Assets</u>" means (a) the Distribution Trust Distributable Cash, less any amount by which the Administrative and Priority Claims Reserve exceeds the Administrative and Priority Claims Reserve Cap assuming the condition precedent to effectiveness contained in Article VIII.A.10 herein is waived; (b) Retained Causes of Action against Brian Kahn and his relevant affiliates; and (c) Avoidance Actions.

64.     "<u>Distribution Trust Beneficiaries</u>" means Holders of  Allowed Class 6 General Unsecured Claims, including Prepetition 3L Deficiency Claims; *provided*, *however*, that the Holders of Class 4 Prepetition 2L Secured Claims shall not be Distribution Trust Beneficiaries, including, without limitation, on account of any deficiency claims arising therefrom or relating thereto.

65.     "<u>Distribution Trust Distributable Cash</u>" means the total of (a) the Initial General Unsecured Claims Distribution; and (b) Cash generated from the monetization of Avoidance Actions and Causes of Action against Brian Kahn, and (c) any Distributable Cash available after satisfaction in full of the Allowed Prepetition 2L Secured Claims, and the Dealer Upside Payments, if applicable, and Allowed Class 5 Prepetition 3L Secured Claims.

66.     "<u>Distribution Trust Expenses</u>" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the Distribution Trust) incurred by the Distribution Trust, any Person or professional retained by the Distribution Trust, and any additional amount determined necessary by the Distribution Trustee to adequately reserve for the operating expenses of the Distribution Trust, all of which shall be paid out of the Distribution Trust Assets, in connection with carrying out the purpose of the Distribution Trust and otherwise in accordance with the Distribution Trust Agreement.

67.     "<u>Distribution Trust Interests</u>" means, collectively, non-certified beneficial interests in the Distribution Trust granted to each Distribution Trust Beneficiary, which shall entitle each Distribution Trust Beneficiary to its *pro rata* share of the Distribution Trust Net Assets, subject to the terms and conditions of this Plan and the Distribution Trust Agreement.

68.     "<u>Distribution Trust Net Assets</u>" means the Distribution Trust Assets *less* the Distribution Trust Expenses.

69.     "<u>Distribution Trustee</u>" means, in its capacity as such, the Person or Entity selected by the Committee (with such Person or Entity to be identified in the Plan Supplement) to serve as the trustee of the Distribution Trust, and any successor thereto, in accordance with the Distribution Trust Agreement.

70.     "<u>Effective Date</u>" means the date that all conditions precedent to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

71.     "<u>Entity</u>" has the meaning set forth in section 101(15) of the Bankruptcy Code.

72.     "Estate" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

73.     "Exculpated Party" means collectively, and in each case, in its capacity as such: (a) the Debtors; (b) the Committee; and (c) the members of the Committee in their capacity as such.

74.     "Executory Contract" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

75.     "Existing Equity Interests" means the existing Interests in Conn's, Inc.

76.     "File," "Filed," or "Filing" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or in the case of a Proof of Claim, the Notice and Claims Agent.

77.     "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

78.     "General Unsecured Claims" means any Claim other than a(n): (a) Administrative Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) DIP Claim; (e) Other Secured Claim; (f) Other Priority Claim; (g) Prepetition ABL Secured Claim; (h) Prepetition 2L Secured Claim; (i) Prepetition 3L Secured Claim; (j) Section 510(b) Claim; or (k) Intercompany Claim. For the avoidance of doubt, any Prepetition 3L Deficiency Claim shall constitute a General Unsecured Claim.

79.     "Governmental Unit" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

80.     "Holder" means a Person or Entity, as applicable, holding a Claim against or an Interest in any of the Debtors.

81.     "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

82.     "<u>Initial General Unsecured Claims Distribution</u>" means an amount equal to $1,250,000, which amount shall voluntarily reduce, *pro rata* and on a dollar for dollar basis, the amount of Allowed Prepetition 2L Secured Claims.

83.     "<u>Insider</u>" has the meaning set forth in section 101(31) of the Bankruptcy Code.

84.     "<u>Insurance Policies</u>" means all Assumed Insurance Policies and Non-Assumed Insurance Policies.

85.     "<u>Intercompany Claim</u>" means any Claim held by a Debtor or an Affiliate against a Debtor or an Affiliate of a Debtor.

86.     "<u>Intercompany Interest</u>" means an Interest in a Debtor that is held by another Debtor or an Affiliate of a Debtor.

87.     "<u>Intercreditor Agreements</u>" means the Prepetition ABL Intercreditor Agreement together with the Prepetition 3L Intercreditor Agreement.

88.     "<u>Interest(s)</u>" means an equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtors, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be grated to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interest in the Debtors that existed immediately before the Petition Date.

89.     "<u>IRS Form</u>" means IRS Form W-9, W-8BEN, any acceptable substitute, or any other tax information form that the Plan Administrator or Wind-Down Debtors, as applicable, may require from a holder of a Claim for a distribution under the Plan.

90.     "<u>Lien</u>" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

91.     "<u>Liquidation Analysis</u>" means the analysis of a liquidation scenario under chapter 7 of the Bankruptcy Code for these Debtors (as such analysis may be updated, amended, or modified from time to time thereafter).

92.     "<u>New Organizational Documents</u>" means the certificates of incorporation, certifications of formation, bylaws, limited liability company agreements, and/or operating agreement, or any other similar organizational or formation documents, as applicable, of the Wind-Down Debtors.

93.     "<u>Non-Assumed Insurance Policy</u>" means all insurance policies that have been issued at any time to or provide coverage to the Debtors, including any directors and officers liability policy or any "tail" policy, and all agreements, documents, or instruments relating thereto that are not an Assumed Insurance Policy, *provided* that it does not include any such policies that are, or have been, assumed and assigned to the Purchasers on or before the Effective Date pursuant to the Asset Purchase Agreements, the Sale Orders, and section 365 of the Bankruptcy Code.

11

94.     "Notice and Claims Agent" means Epiq Corporate Restructuring, LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, or any successor claims and noticing agent.

95.     "Notice of Non-Voting Status Package" means the materials sent to Holders of Claims and Interests not entitled to vote to accept or reject the Plan, including the Release Opt-Out Form.

96.     "OCP" means an ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court by entry of an OCP Order.

97.     "OCP Order" means the *Order (I) Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business; and (II) Granting Related Relief* [Docket No. 419].

98.     "Other Priority Claim" means a Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

99.     "Other Secured Claim" means any Claim against a Debtor where, pursuant to section 506(a) of the Bankruptcy Code, the Claim is secured by a valid, perfected, and enforceable Lien, which is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtor in and to property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date.

100.     "Participating Dealers" means (a) each dealer that is a member of the ad hoc group of individual dealers in the W.S. Badcock Corp. dealer network, as such list is reflected in the *Second Amended Verified Statement and Kean Miller LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Docket No. 841]; (b) any dealer that fails to return a settlement opt-out form in accordance with the opt-out procedures approved by the Court in connection with the Dealer 9019 Motion; and (c) any dealer that otherwise opts into the settlement approved by the Dealer 9019 Motion.

101.     "Person" means a "person" as defined in section 101(41) of the Bankruptcy Code.

102.     "Petition Date" the date on which each of the Debtors Filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 Cases.

103.     "Plan" means this joint plan of distribution under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time, including all exhibits and schedules hereto.

104.     "Plan Administration Agreement" means the agreement, to be included in the Plan Supplement, as it may be amended, effective on the Effective Date, that establishes and sets forth the terms and conditions which shall, in conjunction with this Plan and the Confirmation Order, govern the administration of the Wind-Down Debtors, which agreement shall be in a form reasonable acceptable to the Debtors and the Plan Sponsor.

105.    "Plan Administrator" means the Person or Entity selected by the Debtors, subject to the Plan Sponsor's consent, which consent may be conditioned or withheld in the Plan Sponsor's sole discretion, and appointed on the Effective Date to administer to the wind-up of the Debtors in accordance with the terms of Article IV.E hereof, or any successor thereto appointed in accordance with the terms of the Plan the Confirmation Order, and the Plan Administration Agreement.

106.    "Plan Distribution" means a payment or distribution to holders of Allowed Claims or other eligible Entities under this Plan.

107.    "Plan Sponsor" means BRF Finance Co., LLC.

108.    "Plan Supplement" means a supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be Filed by the Debtors no later than seven (7) days prior to the Voting Deadline.  The Plan Supplement shall include, among other things, (a) the Plan Administration Agreement, (b) the identity and compensation of the Plan Administrator; (c) to the extent known, the identity of any insider that will be employed or retained by the Plan Administrator; (d) the New Organizational Documents; (e) a schedule of the Retained Causes of Action, if any; (f) the Distribution Trust Agreement; (g) the identity and compensation of the Distribution Trustee; (h) to the extent known, the identity of any insider that will be employed or retained by the Distribution Trustee; (i) the Liquidation Analysis; (j) financial projections for the Wind-Down Debtors, and (k) any other documentation necessary to effectuate the Plan or that is contemplated by the Plan.  The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement prior to the Effective Date.

109.    "Prepetition 2L Agent" means BRF Finance Co., LLC, as administrative agent and collateral agent under the Prepetition 2L Credit Agreement.

110.    "Prepetition 2L Credit Agreement" means that certain Term Loan and Security Agreement, dated as of December 18, 2023, by and among the Debtor borrowers and guarantors thereunder, the lenders from time to time party thereto, and the Prepetition 2L Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

111.    "Prepetition 2L Secured Claim" means a Claim under the Prepetition 2L Credit Agreement that is secured by the Prepetition Collateral.

112.    "Prepetition 2L Secured Parties" means, collectively, the Prepetition 2L Agent and those lenders party from time to time to the Prepetition 2L Credit Agreement.

113.    "Prepetition 3L Agent" means Stephens Investments Holdings LLC, as administrative and collateral agent under the Prepetition 3L Credit Agreement.

114.    "Prepetition 3L Credit Agreement" means that certain Delayed Draw Term Loan and Security Agreement, dated as of July 31, 2023, by and among the Debtor borrowers and guarantors thereunder, the lenders from time to time party thereto, and the Prepetition 3L Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

115.    "Prepetition 3L Deficiency Claim" means, to the extent that the value of the collateral securing any Prepetition 3L Secured Claim is less than the Allowed amount of such Prepetition 3L Secured Claim (after taking into account any Allowed Claims that are senior in priority to the Prepetition 3L Secured Claims), the undersecured portion of such Allowed Claim, which, for the avoidance of doubt, shall constitute a General Unsecured Claim.

116.    "Prepetition 3L Intercreditor Agreement" means that certain Amended and Restated Third Lien Intercreditor Agreement, dated as of December 18, 2023, by and among the Prepetition ABL Agent, the Prepetition 2L Agent, the Prepetition 3L Agent, and each of the Debtors party thereto.

117.    "Prepetition 3L Parties" means, collectively, the Prepetition 3L Agent and those lenders party from time to time to the Prepetition 3L Credit Agreement.

118.    "Prepetition 3L Secured Claim" means a Claim under the Prepetition 3L Credit Agreement that is secured by the Prepetition Collateral.

119.    "Prepetition ABL Agent" means (a) prior to the DIP Assignment, JPMorgan Chase Bank, N.A., as administrative and collateral agent under the Prepetition ABL Credit Agreement; and (b) following the DIP Assignment, B. Riley Commercial Capital, LLC, in its capacity as administrative agent and collateral agent under the Prepetition ABL Credit Agreement.

120.    "Prepetition ABL Credit Agreement" means that certain Fifth Amended and Restated Loan and Security Agreement, dated as of March 29, 2021, by and among the Debtor borrowers and guarantors thereunder, the lenders from time to time party thereto, and the Prepetition ABL Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

121.    "Prepetition ABL Intercreditor Agreement" means that certain Intercreditor Agreement, dated as of December 18, 2023, by and among the Prepetition ABL Agent, the Prepetition 2L Agent, and each of the Debtors party thereto.

122.    "Prepetition ABL Secured Claim" means a Claim under the Prepetition ABL Credit Agreement that is secured by the Prepetition Collateral.

123.    "Prepetition ABL Secured Parties" means, collectively, the Prepetition ABL Agent and those lenders party from time to time to the Prepetition 3L Credit Agreement.

124.    "Prepetition Collateral" means, collectively, the Debtors' "Collateral," as defined in the Prepetition ABL Credit Agreement, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.

125.    "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

126.    "Professional" means a Person or Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327,

328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

127.     "Professional Fee Claim" means a Claim (a) by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Confirmation Date under sections 328, 330, 331, or 503(b)(2) of the Bankruptcy Code, as applicable; or (b) by an OCP for compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Confirmation Date pursuant to the OCP Order.

128.     "Professional Fee Reserve" means the reserve established and funded by the Debtors prior to the Effective Date to satisfy the accrued but unpaid Professional Fee Claims of the Professionals.

129.     "Proof of Claim" means a proof of Claim Filed against any of the Debtors in these Chapter 11 Cases.

130.     "Purchasers" means the Persons or Entities who purchase some or all the Debtors' assets pursuant to the Asset Purchase Agreements and the Sale Order.

131.     "Related Party" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, advisory board members, members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, management companies, fund advisors or managers, predecessors, participants, successors, assigns, representatives, subsidiaries, Affiliates, partners, limited partners, general partners, principals, employees, agents, trustees, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an entity), accountants, investment bankers, investment advisors, consultants, and other professionals and advisors and any such Related Party's respective heirs, executors, estates, and nominees.

132.     "Release Opt-Out Form" means the box included in each of the Ballots and Notice of Non-Voting Status Packages, which permit both those Holders of Claims and Interests entitled to vote on the Plan and those not entitled to vote on the Plan the right to opt out of the Third Party Release set forth in Article IX.B. herein.

133.     "Released Party" means, each of, and in each case in its capacity as such: (a) the Debtors and each of the Debtors' Estates; (b) the Wind-Down Debtors; (c) the DIP Lenders; (d) the DIP Agent; (e) the Prepetition ABL Secured Parties; (f) the Prepetition 2L Agent, (g) the Prepetition 2L Secured Parties; (h) the Plan Sponsor,  (i) the Prepetition 3L Agent; (j) the Prepetition 3L Parties; (k) the Committee and its members, each in their capacities as such; (l) any other Releasing Party; (m) each current and former Affiliate of each Entity in clauses (a) through the following clause (l); and (n) each Related Party of each Entity in clauses (a) through this clause (m); *provided*, that, in each case, an Entity shall not be a Released Party if it:  (i) elects to opt out of the releases provided by the Plan or (ii) timely objects to the releases provided by the Plan through a formal objection Filed on the docket of these Chapter 11 Cases that is not resolved before

the Confirmation Hearing.  Notwithstanding the foregoing, any party who is a Released Party shall also be a Releasing Party and any party who is a Releasing Party shall also be a Released Party.

134.    "Releasing Party" means each of, and in each case in its capacity as such: (a) the Debtors and each of the Debtors' Estates; (b) the Wind-Down Debtors; (c) the DIP Lenders; (d) the DIP Agent; (e) the Prepetition ABL Secured Parties; (f) the Prepetition 2L Agent; (g) the Prepetition 2L Secured Parties; (h) the Plan Sponsor; (i) the Prepetition 3L Parties; (j) the Committee and its members, each in their capacities as such; (k) all Holders of Claims or Interests that vote to accept the Plan and who do not affirmatively execute and timely return a Release Opt-Out Form;  (l) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively execute and timely return a Release Opt-Out Form; (m) all Holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not affirmatively execute and timely return a Release Opt-Out Form; (n) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively execute and timely return a Release Opt-Out Form; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clauses (a) through this clause (p) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through clause (n); *provided* that, in each case, an Entity shall not be a Releasing Party if it:  (i) elects to opt out of the Third Party Release; or (ii) timely objects to the Third Party Release through a formal objection Filed on the docket of the Chapter 11 Cases that is not resolved before the Confirmation Hearing.  Notwithstanding the foregoing, any party who is a Released Party shall also be a Releasing Party and any party who is a Releasing Party shall also be a Released Party.

135.    "Remaining Real Property" means any remaining real property owned by one or more of the Debtors that was unencumbered as of the Petition Date.

136.    "Retained Causes of Action" means the Causes of Action, if any, that shall be retained pursuant to the Plan.

137.    "Sale Documents" means, collectively, the Asset Purchase Agreement(s) and all agreements, documents, and instruments related thereto, including the Sale Orders.

138.    "Sale Orders" means any orders of the Bankruptcy Court approving pursuant to section 363 of the Bankruptcy Code one or more sales of, collectively, all or substantially all of the assets of the Debtors to one or more Purchasers.

139.    "Sale Transactions" means each of the sales under section 363(f) of the Bankruptcy Code of all or substantially all of the Debtors' assets, as described in more detail in Article IV herein.

140.    "Schedules" means, collectively, the schedule of assets and liabilities and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

141.    "<u>Section 503(b)(9) Claim(s)</u>" means any Administrative Claim(s) based on or arising from section 503(b)(9) of the Bankruptcy Code.

142.    "<u>Section 510(b) Claim(s)</u>" means any Claim(s) subordinated by order of the Bankruptcy Court pursuant to section 510(b) of the Bankruptcy Code.

143.    "<u>Securities Act</u>" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

144.    "<u>Single Share</u>" shall have the meaning ascribed to it in Article III.B.9.b herein.

145.    "<u>Third Party Release</u>" means the release of Claims or Causes of Action provided by the Releasing Parties to the Released Parties, as set forth in Article IX.B. herein.

146.    "<u>U.S. Trustee</u>" means the Office of the United States Trustee for the Southern District of Texas.

147.    "<u>U.S. Trustee Statutory Fees</u>" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

148.    "<u>Unexpired Lease</u>" means a lease to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

149.    "<u>Unimpaired</u>" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

150.    "<u>Voting Deadline</u>" means the date and time by which all ballots to accept or reject the Plan must be received to be counted, which date shall be July 11, 2025.

151.    "<u>Wind-Down</u>" means the post-Effective Date wind-down process, as described more fully in Article IV.D hereof, by which the Plan Administrator, Wind-Down Debtors, or Distribution Trustee, as applicable, shall seek to (a) liquidate any remaining assets of the Debtors and make distributions relating to the same; (b) complete any tasks required to wind-down the affairs of the Debtors; and (c) otherwise close these Chapter 11 Cases, as described in more detail in Article IV hereof.

152.    "<u>Wind-Down Budget</u>" means a budget for the fees and expenses associated with the Wind-Down.

153.    "<u>Wind-Down Debtors</u>" means, on or after the Effective Date, any Debtor or any successor or assign thereto, by merger, consolidation, or otherwise, including any liquidating trust that may be established pursuant to Article IV of this Plan.

### B.    Rules of Interpretation

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in or exhibit to this Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in this Plan," "of this Plan," "to this Plan," and "under this Plan," respectively. The words "includes" and "including" are not limiting. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (4) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (5) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

### C.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.    Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

### E.    Controlling Document

In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document. In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including DIP Claims and Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

### A.    Administrative Claims

Except to the extent that a Holder of an Allowed Administrative Claim and the Debtors, the Distribution Trustee, the Wind-Down Debtors, or the Plan Administrator, as applicable, agree to a different treatment, including through participation in the settlement approved in the Dealer 9019 Motion or the Accelerated Payment Procedures, each Holder of an Allowed Administrative Claim (other than a DIP Claim or a Professional Fee Claim) shall receive, in full and final satisfaction of such Claim, an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if Allowed on or prior to the Effective Date, then on the Effective Date or as soon as reasonably practicable thereafter, (2) if not Allowed as of the Effective Date, then no later than forty-five (45) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims and Claims paid pursuant to the Accelerated Payment Procedures, and notwithstanding any prior Filing or Proof of Claim, Proofs of Claim seeking the allowance and payment of Administrative Claims must be Filed and served on the Debtors, Distribution Trustee, or Plan Administrator, as applicable, and their counsel by no later than the Administrative Claims Bar Date pursuant to the procedures set forth in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claims.

**Except as otherwise provided herein, holders of Administrative Claims that do not File and serve a Proof of Claim or application for payment of administrative expenses requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Wind-Down Debtors, the Distribution Trustee, the Plan Administrator, the Estates, or the Debtors' assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date unless otherwise ordered by the Bankruptcy Court.**

### B.    DIP Claims

Except to the extent that a Holder of a DIP Claim and the Debtors or the Distribution Trustee, as applicable, agrees to a different treatment, each Holder of a DIP Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such DIP Claim.

The DIP Secured Party Expenses shall constitute Allowed Administrative Claims with priority over all administrative expenses of the kind specified in sections 503(b) and 507 of the

Bankruptcy Code, except for the Professional Fee Claims, and shall be paid in full in Cash no later than the Effective Date and without any requirement to file a fee application with the Bankruptcy Court or for the Bankruptcy Court's review or approval.

## C.   Professional Fee Claims

### 1.   Final Fee Applications and Payment of Professional Fee Claims

All Professional Persons (other than OCPs) seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall: (a) file, on or before the date that is forty five (45) days after the Confirmation Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, from the Professional Fee Reserve, or, if the amount in the Professional Fee Reserve is not sufficient to pay such claims, out of the Debtors' Distributable Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claim.  Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.

### 2.   Administrative Claims of OCPs

All requests for payment of Professional Fee Claims of OCPs shall be made pursuant to the OCP Order.  To the extent any Professional Fee Claims of the OCPs have not been Allowed pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtors, Distribution Trustee, or Plan Administrator, as applicable, as soon as reasonably practicable after such Professional Fee Claims are Allowed pursuant to the OCP Order.

### 3.   Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors, the Plan Administrator, Distribution Trustee (as applicable) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors, the Committee, Distribution Trustee, or Plan Administrator, as applicable.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, Distribution Trustee, or Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### 4.   Professional Fee Reserve

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than two (2) Business

Days before the Confirmation Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professionals' final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The Debtors shall fund and reserve the Professional Fee Reserve until payment in full of all Allowed Professional Fee Claims.  If the Professional Fee Reserve is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims shall be paid by the Plan Administrator from the Debtors' Distributable Cash.  For the avoidance of doubt, the Professional Fee Reserve cannot be used to pay any secured, priority, or Administrative Claims until all Professional Fee Claims are satisfied or otherwise reserved for.

### D.    Priority Tax Claims

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Wind-Down Debtors, Plan Administrator, or the Distribution Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will receive regular installment payments in Cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim over a period ending not later than five (5) years after the Petition Date and in a manner not less favorable than the most favored nonpriority unsecured claim provided for in the Plan.

### E.    U.S. Trustee Statutory Fees

All U.S. Trustee Statutory Fees due and payable, pursuant to 28 U.S.C. § 1930(a), prior to the Effective Date shall be paid by the Debtors (or the Plan Administrator on behalf of each of the Debtors) on the Effective Date.  On and after the Effective Date, the Plan Administrator, shall pay any and all U.S. Trustee Statutory Fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each of the Debtors and the Plan Administrator, as applicable, shall remain obligated to file post-confirmation quarterly reports and to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Classification of Claims and Interests

Except for the Claims addressed in Article II herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Class to the extent that any portion of the Claim or Interest qualifies within the description of such other Class.  A Claim also is classified in a particular Class for the purpose of receiving distributions under the

Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition ABL Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | Prepetition 2L Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Prepetition 3L Secured Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Intercompany Interests | Unimpaired/Impaired | Not Entitled to Vote (Deemed to Accept/ Deemed to Reject) |

      **B.**    <u>**Treatment of Claims and Interests**</u>

          **1.**    **Class 1 – Other Secured Claims**

               a.    *Classification*:  Class 1 consists of all Other Secured Claims against the Debtors.

b.      *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors, Distribution Trustee, or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Secured Claim, each Holder thereof will receive: (i) payment in full in Cash; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) such other treatment rendering such Claim Unimpaired.

c.      *Voting*:   Class 1 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Secured Claims are not entitled to vote to accept or reject the Plan.

**2.      Class 2 – Other Priority Claims**

a.      *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

b.      *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or the Distribution Trustee, as applicable, agree to a different treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, an amount of Cash equal to the amount of such Allowed Other Priority Claim or such other treatment as would render the Claim Unimpaired.

c.      *Voting*:  Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

**3.      Class 3 – Prepetition ABL Secured Claims**

a.      *Classification*:   Class 3 consists of the Prepetition ABL Secured Claims against the Debtors.

b.      *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a holder of an Allowed Prepetition ABL Secured Claim and the Debtors agree to less favorable treatment for such holder, each holder of an Allowed Prepetition ABL Secured Claim shall receive, in full and final satisfaction of such Claim, an amount of Cash equal to the amount of such Allowed Prepetition ABL Secured Claim.

c.      *Voting*:   Class 3 is Unimpaired, and Holders of Prepetition ABL Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 3 Prepetition ABL Secured Claims are not entitled to vote to accept or reject the Plan.

**4.      Class 4 – Prepetition 2L Secured Claims**

        a.     *Classification*:  Class 4 consists of the Prepetition 2L Secured Claims against the Debtors.

        b.     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a holder of an Allowed Prepetition 2L Secured Claim and the Debtors, Distribution Trustee, or Plan Administrator, as applicable, agree to less favorable treatment for such holder, each holder of an Allowed Prepetition 2L Secured Claim shall receive, in full and final satisfaction of such Claim, its share of the Distributable Cash up to the Allowed amount of the Prepetition 2L Secured Claim; *provided* that the treatment hereunder shall remain fully subject to the Prepetition ABL Intercreditor Agreement.  Notwithstanding the foregoing, the Prepetition 2L Secured Claims shall be voluntarily reduced, *pro rata*, on a dollar for dollar basis, by the amount of the Distribution Trust Distributable Cash. Holders of Class 4 Prepetition 2L Secured Claims shall not participate in any distributions from the Distribution Trust.

        c.     *Voting*:  Class 4 is Impaired, and Holders of Prepetition 2L Secured Claims are entitled to vote to accept or reject the Plan.

### 5.      Class 5 – Prepetition 3L Secured Claims

        a.     *Classification*:  Class 5 consists of the Prepetition 3L Secured Claims against the Debtors.

        b.     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Prepetition 3L Secured Claim and the Debtors, the Distribution Trustee, or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, each Holder of an Allowed Prepetition 3L Secured Claim shall receive, in full and final satisfaction of such Claim, its *pro rata* share of any  remaining Distributable Cash after payment of (i) all Allowed Class 4 Prepetition 2L Secured Claims, and (ii) Dealer Upside Payments; provided that the treatment hereunder shall remain fully subject to the Prepetition 3L Intercreditor Agreement; provided, further, that any Prepetition 3L Deficiency Claim shall constitute an Allowed General Unsecured Claim and, as a result, shall receive the same treatment as a Holder of an Allowed General Unsecured Claim in Class 6.

        c.     *Voting*:  Class 5 is Impaired, and Holders of Prepetition 3L Secured Claims are entitled to vote to accept or reject the Plan.

### 6.      Class 6 – General Unsecured Claims

        a.     *Classification*:  Class 6 consists of the General Unsecured Claims against the Debtors, including any Prepetition 3L Deficiency Claim.

        b.     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Distribution Trustee, as applicable, agree to less favorable treatment for such Holder, (i) each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its *pro rata* share of the Distribution Trust Interests and (ii) each Holder of an Allowed Prepetition 3L Deficiency Claim shall receive, in full and final satisfaction

of such Claim, its *pro rata* share of the Distribution Trust Interests on a ratable basis with all Holders of Allowed General Unsecured Claims.

        c.    *Voting*:  Class 6 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

       7.    **Class 7 – Intercompany Claims**

        a.    *Classification*:  Class 7 consists of the Intercompany Claims between and among the Debtors.

        b.    *Treatment*:  On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any distribution, property, or other value under the Plan on account of such Claims.

        c.    *Voting*:  Class 7 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Intercompany Claims are not entitled to vote to accept or reject the Plan.

       8.    **Class 8 – Section 510(b) Claims**

        a.    *Classification*:  Class 8 consists of Section 510(b) Claims against the Debtors.

        b.    *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Section 510(b) Claim agrees to less favorable treatment, in full and final satisfaction and release of, and in exchange for such Section 510(b) Claim, each holder thereof shall receive such treatment so as to be *pari passu* with the treatment afforded to holders of Existing Equity Interests in Class 9.

        c.    *Voting*:  Class 8 is Impaired, and Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 8 Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

       9.    **Class 9 – Existing Equity Interests**

        a.    *Classification*:  Class 9 consists of all Existing Equity Interests in Conn's Inc.

        b.    *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Existing Equity Interest agrees to less favorable treatment, in full and final satisfaction and release of, and in exchange for Existing Equity Interests, each such holder thereof shall receive the following treatment: (i) on the Effective Date, all Existing Equity Interests shall be deemed exchanged for one share of Conn's, Inc. common stock (the "Single Share"), which shall be issued to the Plan Administrator to hold in

25

trust as custodian for the benefit of the former holders of Conn's, Inc. stock consistent with their former relative priority and economic entitlements, and the Single Share shall be recorded on the books and records maintained by the Plan Administrator; (ii) each former holder of Conn's, Inc. stock (through their interest in the Single Share, as applicable) shall neither receive nor retain any property of the estate or direct interest in property of the estate on account of such Conn's stock; *provided*, that in the event that all Allowed Claims, other than Class 8 Claims, have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each former holder of Conn's, Inc. stock may receive its share of any remaining assets of Conn's, Inc. consistent with such holder's rights of payment existing immediately prior to the commencement date *pro rata* with holders of Class 8 Claims unless otherwise determined by the Plan Administrator.  On the date that these chapter 11 cases are closed, the Single Share issued on the Effective Date shall be deemed cancelled and of no further force and effect provided that such cancellation does not adversely impact the Debtors' estate; and (iii) the continuing rights of former holders of Conn's stock (including through their interest in Single Share or otherwise) shall be nontransferable except (A) by operation of law or (B) for administrative transfers where the ultimate beneficiary has not changed, subject to the Plan Administrator's consent.

      c.    *Voting*:  Class 9 is Impaired, and Holders of Existing Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 9 Existing Equity Interests are not entitled to vote to accept or reject the Plan.

      **10.**    **Class 10 – Intercompany Interests**

      a.    *Classification*:  Class 10 consists of all Intercompany Interests in the Debtors.

      b.    *Treatment*:  On the Effective Date, all Intercompany Interests shall be either reinstated, or canceled, released, extinguished, and of no further force or effect without any distribution as determined between the Debtors and the Distribution Trustee, as applicable.

      c.    *Voting*:  Class 10 is Unimpaired/Impaired, and Holders of Intercompany Interests are conclusively deemed to have accepted or rejected the Plan pursuant to sections 1126(f) or 1126(g) of the Bankruptcy Code, respectively.  Therefore, Holders of Class 10 Intercompany Interests are not entitled to vote to accept or reject the Plan.

      **C.**    **Reservation of Rights Regarding Claims and Interests**

Except as otherwise provided in this Plan or in other Final Orders of the Bankruptcy Court, nothing under this Plan shall affect the rights of the Debtors, the Plan Administrator, or the Distribution Trustee, as appliable, with respect to any Claims or Interests, including all legal and equitable defenses to, or setoffs or recoupments against, any such Claims or Interests.

      **D.**    **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to

accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

### E.     Voting Classes, Presumed Acceptance by Non-Voting Classes

With respect to each Debtor, if a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject this Plan, this Plan shall be presumed accepted by the holders of such Claims in such Class.

### F.     Controversy Concerning Impairment

If a controversy arises as to whether any Claim or any Class of Claims is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Hearing.

### G.     Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with the Intercreditor Agreements and any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Distribution Trustee (as applicable) reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### H.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to this Article III of the Plan.  The Debtors hereby request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The Debtors reserve the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any voting Class that votes to reject the Plans.

### I.     Postpetition Interest on Claims

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, postpetition interest will not accrue or be payable on account of any Claim.

### J.     Insurance

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if

any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    General Settlement of Claims and Interests

Pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided pursuant to this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.   The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.   Notwithstanding the entry of the Confirmation Order, the Accelerated Payment Procedures Order shall remain in full force and effect, and the Debtors shall continue to fulfill their obligations thereunder.   The settlement reflected in the Accelerated Payment Procedures shall be incorporated as if fully set forth herein.

### B.    Sources of Consideration for Plan Distributions

Subject to the provisions of the Plan concerning the Professional Fee Reserve or the Wind-Down Budget, distributions under the Plan shall be funded by (1) Cash on hand, including any amounts that may be owed by third parties on account of security deposits or refunds; (2) proceeds from the Sale Transactions; (3) proceeds from the *De Minimis* Sale Transactions; (4) proceeds from the monetization of the Prepetition Collateral following the Effective Date; (5) proceeds from the monetization of the Remaining Real Property; (6) the proceeds, if any, from prosecution or settlement of the Retained Causes of Action, other than Retained Causes of Action against Brian Kahn and his relevant affiliates; and (7) proceeds from any other assets of the Debtors' estates, including any tax credits or refunds.

### C.    Sale Transactions

The Debtors shall sell all or substantially all of their assets pursuant to the Sale Transactions and/or the *De Minimis* Sale Transactions and the entry of one or more corresponding Sale Orders. Following the Effective Date, the Wind-Down Debtors may continue to liquidate their assets and may enter into one or more Sale Transactions without further order of or notice to the Bankruptcy Court.   The proceeds from the Sale Transactions and *De Minimis* Sale Transactions shall be used to fund the Plan Distributions according to the terms set forth in Article III herein.

### D.    Settlement of Certain Administrative Claims

The Debtors have settled certain administrative expense claims through the Court's approval of the Dealer 9019 Motion and the Accelerated Payment Procedures, both of which are

incorporated herein by reference.  Payments to Participating Dealers, including the Dealer Upside Payment, and to those Holders of Claims who elected to opt in to the Accelerated Payment Procedures shall be made as set forth in the Accelerated Payment Procedures Order and the Dealer Settlement Order.

### E.   <u>Wind-Down</u>

Before, on, and after the Effective Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the transactions contemplated by this Plan, including, but not limited to: (1) liquidating any asset, including as set forth in Article IV.C hereofI.C; (2) prosecuting the Retained Causes of Action other than those Retained Causes of Action that constitute Distribution Trust Assets, along with any other claims or causes of action of the Debtors preserved herein; (3) executing and delivering appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (4) completing and filing any tax return required to be filed by the Debtors or Wind-Down Debtors, as applicable; and (5) any and all other actions that the Debtors, the Wind-Down Debtors, or the Distribution Trustee determine are necessary or appropriate to effectuate the Plan.

### 1.   Vesting of the Assets in the Wind-Down Debtors

Except as otherwise provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in this Plan or the Plan Supplement, on the Effective Date, the assets of the Debtors, other than the Distribution Trust Assets, shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided for in this Plan, the Debtors and the Wind-Down Debtors may operate their business and use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action, other than those Causes of Action that are Distribution Trust Assets, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.  The Debtors shall fund the Wind-Down Budget for the benefit of the Wind-Down Debtors on the Effective Date of the Plan.

### 2.   Authority of Wind-Down Debtors

On and after the Effective Date, the Wind-Down Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible, including, but not limited to, surrendering licenses and collecting on remaining assets, (b) funding the Administration and Priority Claims Reserve, making distributions from the same on account of Allowed Other Priority Claims, and making quarterly distributions from the same to the Distribution Trustee for distributions on account of Allowed Claims; (c) enforcing and prosecuting claims, interests, rights, and privileges under the Retained Causes of Action (except for those Retained Causes of Action that constitute Distribution Trust Assets, including, for the avoidance of doubt, Avoidance Actions), if any, in an efficacious manner and only to the extent

the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (d) filing appropriate tax returns, and (e) administering this Plan. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

### 3.      Plan Administrator

On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, sale director, or governing body of the Wind-Down Debtors shall be deemed to have resigned, solely in their capacities as such, and the one or more new boards of directors chosen by the Debtors, subject to the consent of the Plan Sponsor, which consent may be conditioned or withheld in the Plan Sponsor's sole discretion, shall be appointed as the directors of the Wind-Down Debtors, and shall succeed to the powers of the Wind-Down Debtors' directors and other Governing Bodies. On and after the Effective Date, the Plan Administrator shall be deemed the sole remaining officer or manager of the Wind-Down Debtors. From and after the Effective Date, the authority of the Plan Administrator and the new board of the Wind-Down Debtors shall be set forth in the New Organizational Documents. The foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to any transition services agreement or other agreement entered into on or after the Effective Date. Following the Effective Date, the Plan Administrator is given full power of attorney and had the authority to execute and/or endorse documentation on behalf of the Debtors and Wind-Down Debtors in furtherance of the Plan, including but not limited to, the filing of final tax returns and the dissolution of the Wind-Down Debtors.

### 4.      Dissolution of Governing Bodies of the Debtors

As of the Effective Date, the current board shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, members, or governing bodies, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, managers, or governing body, as applicable, of the Debtors, or the members of any Debtor; *provided*, *however*, the Plan Administrator may retain certain officers as required under applicable law, including for regulatory purposes. Subject in all respects to the terms of this Plan, the Wind-Down Debtors shall be dissolved as soon as practicable on or after the Effective Date.

The New Organizational Documents shall be filed in connection with the Plan Supplement and shall name one or more boards of directors who will govern the Wind-Down Debtors. Subject in all respects to the terms of this Plan and the Plan Administration Agreement, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Wind-Down Debtors, and shall be authorized to: (a) file a certificate of dissolution for any of the Wind-Down Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Wind-Down Debtors under the applicable

laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and pay taxes required to be paid for any of the Debtors or Wind-Down Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors, Wind-Down Debtors, or each of their Estates for any tax incurred during the administration of such Debtor's or Wind-Down Debtor's Chapter 11 Case, as determined under applicable tax laws.

### F.    **Distribution Trust**

#### 1.    **Creation and Governance of the Distribution Trust**

On or before the Effective Date, the Debtors shall irrevocably transfer all of their rights, title, and interest in and to the Distribution Trust Assets to the Distribution Trust, which Distribution Trust Assets or interests in the Distribution Trust Assets, shall automatically and irrevocably vest or shall be deemed to automatically and irrevocably vest in the Distribution Trust as of the Effective Date.  The Debtors and the Distribution Trustee shall execute the Distribution Trust Agreement and shall take all steps necessary to establish the Distribution Trust and the Distribution Trust Interests, in each case, in accordance with the Plan and the Distribution Trust Agreement, including on or before the Effective Date, the transfer of the Distribution Trust Distributable Cash to the Distribution Trust.  In the event of any conflict between the terms of the Plan and the terms of the Distribution Trust Agreement, the terms of the Plan shall govern.  The Distribution Trust Assets shall automatically and irrevocably vest in the Distribution Trust as provided herein, without further action by any Person, free and clear of all Claims, Liens, Interests, charges, and other encumbrances, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.

After the Effective Date, neither the Debtors, the Wind-Down Debtors, nor any other party shall have any interest in the Distribution Trust Assets except as expressly set forth herein. To the extent the Debtors or the Wind-Down Debtors are holding or receive any Distribution Trust Assets on or after the Effective Date, they shall hold such Distribution Trust Asset in trust for the benefit of the Distribution Trust and promptly turnover such Distribution Trust Asset to the Distribution Trust in accordance with the Plan.  To the extent that any Distribution Trust Assets cannot be transferred to the Distribution Trust because of a restriction on transferability under applicable non-bankruptcy law or the Plan that is not superseded or preempted by the Bankruptcy Code, the Distribution Trust's interest in any such Distribution Trust Assets shall be a lien upon and security interest in such Distribution Trust Asset, perfected without any need to file financing statements, mortgages, or any similar recordation, and such Distribution Trust Asset shall be deemed to have been retained by the Debtors or Wind-Down Debtors, as applicable, and the Distribution Trustee shall be deemed to have been designated as a representative of the Debtors or Wind-Down Debtors, as applicable, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Distribution Trust Asset on the behalf of the Debtors or Wind-Down Debtors, as applicable.

The Distribution Trustee shall be the exclusive administrator of the assets of the Distribution Trust (including the Distribution Trust Assets) for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as a representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters

involving the allowance, administration, settlement, or compromise of Class 6 General Unsecured Claims and Administrative Claims that were not otherwise Allowed or satisfied by the Debtors on or before the Effective Date, and as a party in interest with respect to each of the Debtors with respect to any matters involving the allowance, administration, settlement, or compromise of Other Security Claims or Other Priority Claims, for the purpose of carrying out the Distribution Trustee's duties under the Distribution Trust Agreement. The Distribution Trustee shall be a party in interest under section 1109(b) of the Bankruptcy Code for the purposes of (x) the claims reconciliation process, including administering, settling, compromising, or objecting to Administrative Claims, Other Security Claims, Other Priority Claims, or Class 6 General Unsecured Claims that were not otherwise Allowed or satisfied by the Debtors on or before the Effective Date and (y) any other matter affecting the Distribution Trust; *provided* that the Distribution Trustee shall not have the right to object to the allowance of the Class 5 Prepetition 3L Secured Claims or any Prepetition 3L Deficiency Claim; *provided further* that the Distribution Trustee may otherwise be a party in interest with the prior written consent of the Wind-Down Debtors or as otherwise ordered by the Bankruptcy Court.

The Distribution Trust shall be governed by the Distribution Trust Agreement and administered by the Distribution Trustee. The powers, rights, and responsibilities of the Distribution Trustee shall be specified in the Distribution Trust Agreement and shall include, without limitation, the authority and responsibility to take the actions set forth in this Article IV.F. Among other things, the Distribution Trustee shall have the sole power and responsibility to distribute and allocate the Distribution Trust Net Assets to the Distribution Trust Beneficiaries on account of such beneficiaries' Distribution Trust Interests in accordance with the treatment set forth in the Plan for Class 6. The Distribution Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Distribution Trust and the Distribution Trustee; *provided* that, for the avoidance of doubt, any such indemnification shall be by the Distribution Trust and the Distribution Trustee alone and shall not implicate the Debtors, the Plan Administrator, the Plan Sponsor, or the Wind-Down Debtors. The Distribution Trust may retain and employ Persons and professionals, in the Distribution Trustee's sole discretion and without the need for approval of the Bankruptcy Court, to aid the Distribution Trust in carrying out its purpose as set forth in the Plan and the Distribution Trust Agreement. The Distribution Trust may, in its sole discretion, retain or employ a disbursing agent, which may be the Disbursing Agent, in accordance with the Distribution Trust Agreement. For the avoidance of doubt, notwithstanding anything in the Plan to the contrary, distributions to the Holders of Distribution Trust Interests shall be governed by the Distribution Trust Agreement.

Any and all of the Distribution Trust Interests shall be non-transferrable other than if transferred by will, intestate, succession, or otherwise by operation of law. In addition, any and all Distribution Trust Interests will not be registered pursuant to the Securities Act or any applicable state or local securities law pursuant to section 1145 of the Bankruptcy Code, and will be exempt from the Investment Company Act of 1940, as amended, pursuant sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

### 2. Distribution Trust Agreement

A substantially final draft of the Distribution Trust Agreement will be filed with the Plan Supplement and generally will provide for, among other things: (i) the automatic and irrevocable

transfer of the Distribution Trust Assets to the Distribution Trust, free and clear of any Claims, Liens, Interests, charges, or other encumbrances; and (ii) the administration of claims according to the terms and conditions set forth in this Article IV.F.  The Distribution Trust Agreement may include reasonable and customary provisions that allow for the limitation of liability of the Distribution Trustee and its professionals, agents, and advisors, among others, and for indemnification of such Persons by the Distribution Trust or the Distribution Trustee.  Any such indemnification shall be the sole responsibility of the Distribution Trust and shall constitute Distribution Trust Expenses payable solely from the Distribution Trust Assets.  The Distribution Trustee shall be responsible for all decisions and duties with respect to the Distribution Trust and the Distribution Trust Assets, except as otherwise expressly provided for in the Plan, the Confirmation Order, or the Distribution Trust Agreement.  Upon the Effective Date, the Distribution Trust Agreement shall conclusively be deemed binding upon and enforceable against each of the Distribution Trust Beneficiaries, without any further action by any Person or Entity.

On a quarterly basis, the Distribution Trustee shall remit to the Plan Administrator a summary of all Administrative Claims Allowed, compromised, or otherwise settled during the prior quarter.  Within five (5) days receipt of such summary, the Plan Administrator shall transfer to the Distribution Trust such amounts as are necessary to satisfy the Administrative Claims from the Administrative and Priority Claims Reserve.

### 3.      Preservation of Privilege

The Wind-Down Debtors and the Distribution Trustee shall enter into a common interest agreement whereby the Wind-Down Debtors will be able to share documents, information, or communications (whether written or oral) relating to the Administrative Claims, Other Priority Claims, Prepetition 3L Secured Claims, and General Unsecured Claims.  The Distribution Trust shall seek to preserve and protect all applicable privileges attaching to any such documents, information, or communications.  The Distribution Trust's receipt of such documents, information or communications shall not constitute a waiver of any privilege.  All privileges shall remain in the control of the Debtors or the Wind-Down Debtors, as applicable, and the Debtors or the Wind-Down Debtors, as applicable, retain the sole right to waive their own privileges.  Reasonable agreements will be made with the Distribution Trustee such that confidential information and privileges are preserved, while permitting the Distribution Trustee to use, as necessary to administer the Distribution Trust, such information and privilege; absent such agreements, either the Distribution Trustee or the Wind-Down Debtors may present the issue to the Bankruptcy Court for resolution.

### 4.      Distribution Trust Fees and Expenses

From and after the Effective Date, the Distribution Trustee, on behalf of the Distribution Trust, shall, in the ordinary course of business and without the necessity of any approval by or notice to the Bankruptcy Court, pay the Distribution Trust Expenses from the Distribution Trust Assets.  The Distribution Trust Expenses shall be payable from Distribution Trust Assets on a consolidated basis without allocation among the Debtors' Estates.  The Debtors, the Wind-Down Debtors, or the Plan Administrator (as applicable) shall not be responsible for any costs, fees, or expenses of the Distribution Trust.

### 5.      Dissolution of the Distribution Trust

The Distribution Trustee and the Distribution Trust shall be discharged or dissolved, as the case may be, at such time as all distributions required to be made by the Distribution Trustee under the Plan have been made; *provided* that in no event shall the Distribution Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions) is necessary to facilitate or complete the recovery on, liquidation and distribution of, the Distribution Trust Net Assets.

Upon dissolution of the Distribution Trust, any remaining Distribution Trust Net Assets shall be distributed to Holders of Allowed General Unsecured Claims in accordance with the Plan and the Distribution Trust Agreement, subject to the terms and conditions set forth herein and in the Confirmation Order; *provided*, *however*, that if the Distribution Trustee reasonably determines that such remaining Distribution Trust Net Assets are insufficient to render a further distribution practicable, the Distribution Trustee may apply to the Bankruptcy Court for authority to: (i) reserve any amount necessary to dissolve the Distribution Trust, (ii) donate any balance to a charitable organization (A) described in Section 501(c)(3) of the Internal Revenue Code, (B) exempt from U.S. federal income tax under Section 501(a) of the Internal Revenue Code, (C) not a "private foundation" as defined in Section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtors, the Wind-Down Debtors, the Distribution Trust, and any insider of the Distribution Trustee, and (iii) dissolve the Distribution Trust.

### 6.      Single-Satisfaction of Claims

Notwithstanding anything to the contrary herein, in no event shall holders of claims administered by the Distribution Trust recover, on account of any such Claim, more than 100% of their Allowed Claim from the Distribution Trust or the Wind-Down Debtors, as applicable.

### 7.      Cooperation by the Debtors and the Wind-Down Debtors

The Debtors or the Wind-Down Debtors, as applicable, upon reasonable notice, shall reasonably cooperate with the Distribution Trustee and any professionals retained by the Distribution Trust in the administration of the Distribution Trust, including by (i) providing reasonable access to officers, directors, employees, personnel, advisors, and, subject to Article IV.F.3, pertinent documents, including books and records, to the extent the Debtors or the Wind-Down Debtors have such information and/or documents, to the Distribution Trustee any professionals retained by the Distribution Trust; *provided*, in each case that the Distribution Trust, acting by and through the Distribution Trustee, agrees upon request to reimburse reasonable out-of-pocket expenses for the collection of documents, copying, or similar expenses, that would not otherwise be borne by the Wind-Down Debtors; and (ii) providing quarterly distributions to the Distribution Trust from the Administrative and Priority Claims Reserve sufficient to satisfy the quarterly distributions of Allowed Administrative Claims and Allowed Other Priority Claims. The Wind-Down Debtors agree to provide not less than thirty (30) days' written notice to the

34

Distribution Trustee and any known professionals retained by the Distribution Trust prior to filing any motion to close these Chapter 11 Cases.

## 8.  Abandonment of Distribution Trust Assets

If, in the Distribution Trustee's reasonable judgment, the Distribution Trustee believes in good faith that any of the Distribution Trust Assets have inconsequential value to the Distribution Trust or the Distribution Trust Beneficiaries, the Distribution Trustee shall have the right to cause the Distribution Trust to abandon or otherwise dispose of such property, including, but not limited to, by way of donation to a non-profit 501(c)(3) organization that the Distribution Trustee may select in its discretion.

## 9.  Tax Treatment of Distribution Trust

In furtherance of this Article IV.E.9 of the Plan, (i) it is intended that the Distribution Trust be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code consistent with the terms of the Plan, and, accordingly, all assets held by the Distribution Trust are intended to be deemed for U.S. federal income tax purposes to have been distributed by the Debtors or the Wind-Down Debtors, as applicable, directly to the Holders of Allowed Class 6 General Unsecured Claims, including any Prepetition 3L Deficiency Claims, in respect of such Claims, and then contributed by such Holders of Allowed Class 6 General Unsecured Claims, including any Prepetition 3L Deficiency Claims, to the Distribution Trust in exchange for their *pro rata* interests in the Distribution Trust; (ii) the Holders of Allowed Class 6 General Unsecured Claims, including any Prepetition 3L Deficiency Claims, shall be treated as the beneficiaries and grantors of the Distribution Trust; (iii) the primary purpose of the Distribution Trust shall be the liquidation and distribution of the Distribution Trust Net Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of General Unsecured Claims, including any Prepetition 3L Deficiency Claims, in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business; (iv) all parties (including, without limitation, the Debtors and the Estates, and Holders of Allowed Class 6 General Unsecured Claims, including any Prepetition 3L Deficiency Claims, receiving interests in the Distribution Trust, and the Distribution Trustee) shall report consistently with such treatment (including the deemed receipt of the Distribution Trust Assets, subject to applicable liabilities and obligations, by the Holders of Class 6 General Unsecured Claims, including any Prepetition 3L Deficiency Claims, followed by the deemed transfer of such Distribution Trust Assets to the Distribution Trust); (v) all parties shall report consistently for federal income tax purposes, and otherwise, with the valuation of the Distribution Trust Assets transferred to the Distribution Trust as determined by the Distribution Trustee (or its designee); (vi) the Distribution Trustee shall be responsible for filing returns for the Distribution Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); (vii) the Distribution Trustee shall annually send to each holder of an interest in the Distribution Trust a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes; (viii) all items of income, deductions, and credit loss of the Distribution Trust shall be allocated for federal income tax purposes to the holders of General Unsecured Claims based on their respective interests in the Distribution Trust, including the holders of General Unsecured Claims holding Disputed Claims, in such manner as

the Distribution Trustee deems reasonable and appropriate; and (viii) subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Distribution Trustee of a private letter ruling if the Distribution Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Distribution Trustee), the Distribution Trustee may timely elect to (x) treat any portion of the Distribution Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (y) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made for all or any portion of the Distribution Trust, all impacted parties (including the Debtors and the Estates, and, to the extent applicable, holders of General Unsecured Claims, and the Distribution Trustee), and solely with respect to the impacts assets, shall report for United States federal, state, and local income tax purposes consistently with such election.

Any taxes (including with respect to earned interest, if any) imposed on the Distribution Trust, including as a result of an election to be treated as a "disputed ownership fund" shall be paid by the Distribution Trustee out of the assets of the Distribution Trust (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). The Distribution Trustee may request an expedited determination of taxes of the Distribution Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Distribution Trust for all taxable periods through the dissolution of the Distribution Trust.

The Distribution Trust shall continue to have all of the rights and powers granted to the Distribution Trust as set forth in this Plan and applicable non-bankruptcy law, and the Distribution Trustee shall also have the rights, powers, and obligations set forth in the Distribution Trust Agreement.

### G.   Claims Reconciliation Process

#### 1.   In General

Pursuant to the powers and authority vested in the Plan Administrator or the Wind-Down Debtors, as applicable, pursuant to this Plan, the Confirmation Order, and the Plan Administration Agreement, the Plan Administrator, acting on behalf of the Wind-Down Debtors, shall be responsible for conducting the claims reconciliation process with respect to any matters involving the allowance, administration, settlement, or compromise of Administrative Claims, Other Secured Claims, Other Priority Claims, and Class 5 Prepetition 3L Secured Claims that were not otherwise Allowed or satisfied by the Debtors on or before the Effective Date. In accordance with Article IV.F hereof, the Distribution Trustee, acting on behalf of the Distribution Trust, shall be a representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving the allowance, administration, settlement, or compromise of Class 6 General Unsecured Claims and Administrative Claims that were not otherwise Allowed or satisfied by the Debtors on or before the Effective Date.

#### 2.   Specified Matters Pertaining to the Reconciliation of Administrative Claims

36

The following shall govern the claims reconciliation process with respect to Administrative Claims, including administering, settling, compromising, or objecting to Administrative Claims: (i) the Plan Administrator, acting on behalf of the Wind-Down Debtors, shall have the primary responsibility of administering, settling, compromising, or objecting to Administrative Claims; (ii) the Distribution Trustee, acting on behalf of the Distribution Trust, shall have the secondary responsibility of administering, settling, compromising, or objecting to Administrative Claims (other than Professional Fee Claims); (iii) the Plan Administrator shall provide no less than five (5) business days' notice to the Distribution Trustee of the terms of any settlement or comprise prior to settling or compromising any Administrative Claim, unless such period is shortened or waived by the Distribution Trustee; (iv) if the Distribution Trustee disagrees with the Plan Administrator's decision to settle or compromise any such Administrative Claim and such disagreement cannot be resolved within a reasonable timeframe, the Distribution Trustee's sole remedy is to elect to undertake the primary responsibility of administering, settling, compromising, or objecting to such Administrative Claim, in which case the Plan Administrator shall no longer bear responsibility for the administration of such Administrative Claim but shall retain the right to consult with the Distribution Trustee regarding the administration of such Administrative Claim, *provided* that any settlement agreed to by the Distribution Trustee must be no less favorable to the Wind-Down Debtors than a settlement or compromise previously agreed to by the Plan Administrator (unless otherwise agreed); and (v) the Plan Administrator and the Distribution Trustee shall work in good faith to collaboratively conduct the claims reconciliation process with respect to Administrative Claims.

### H.   Retained Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator or the Distribution Trust, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action and Causes of Action of the Debtors that are not otherwise transferred or sold pursuant to the Sale Transactions, whether arising before or after the Petition Date, and the Plan Administrator's or Distribution Trust's, as applicable, rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX hereof, which shall be deemed released and waived by the Debtors, the Plan Administrator, and the Distribution Trust as of the Effective Date.  No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Administrator or Distribution Trust, as applicable, will not pursue any and all available Causes of Action of the Debtors against it.

### I.   Corporate Action

On the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall be dissolved for all purposes unless the Plan Administrator determines that dissolution can have any adverse impact Wind-Down; *provided*, that neither the Debtors nor any party released pursuant to Article IX herein shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors; *provided further*, that nothing in the Plan shall be construed as relieving the Debtors or the Plan Administrator (as

applicable) of their duties to pay U.S. Trustee Statutory Fees as required by the Bankruptcy Code and applicable law until such time as a final decree is entered in the Debtors' Chapter 11 Cases or the cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code.  The Plan Administrator shall submit with the appropriate governmental agencies a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the applicable Secretary of State for each State in which a Debtor operates.

Without limiting the foregoing, on the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors and officers of the Debtors shall be deemed to have resigned and the employees of the Debtors terminated.  From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates in accordance with the terms set forth in the Plan or the Confirmation Order.

## J.        Cancellation of Existing Securities and Agreements

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan and subject in all respect to the Intercreditor Agreements, on the Effective Date, all prepetition credit documents, agreements, instruments, notes, certificates, indentures, mortgages, securities, and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator. The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.

Notwithstanding such cancellation and discharge, the Intercreditor Agreements, including any amendments thereto, shall continue in effect solely for purposes of (1) allowing Holders of Prepetition ABL Secured Claims, Prepetition 2L Secured Claims, and Prepetition 3L Secured Claims to receive Plan Distributions under or in connection with this Plan; (2) enforcing the rights, claims, and interests of the Prepetition ABL Agent, the Prepetition 2L Agent, and the Prepetition 3L Agent vis-à-vis any parties other than the Debtors, the Wind-Down Debtors, or the Plan Administrator; (3) permitting the Prepetition ABL Agent, the Prepetition 2L Agent, and the Prepetition 3L Agent to appear and be heard in the Chapter 11 Cases or in any proceedings in the Bankruptcy Court or any other court relating to the Prepetition ABL Credit Agreement, the Prepetition 2L Credit Agreement, and the Prepetition 3L Credit Agreement, as applicable; (4) enforcing any obligations owed to the Prepetition ABL Agent, the Prepetition 2L Agent, or the Prepetition 3L Agent under this Plan; and (5) to permit the Prepetition ABL Agent, the Prepetition 2L Agent, or the Prepetition 3L Agent to perform any function necessary to effectuate the foregoing or the making of any Plan Distributions; *provided* that the cancellation hereunder shall not itself alter the obligations or rights among third parties other than the Debtors and the Wind-Down Debtors.

### K.      Effectuating Documents; Further Transactions

Upon entry of the Confirmation Order, the Debtors, the Wind-Down Debtors, Distribution Trust, or the Plan Administrator (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan.  The Debtor, the Wind-Down Debtors, Distribution Trust, the Plan Administrator, all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### L.      Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

### M.      Sale Order

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair or supersede the Sale Orders or Sale Documents, each of which remains in full force and effect and governs in the event of any inconsistency with the Plan.

### N.      Separate Plans

Notwithstanding the combination of separate plans of distribution for the Debtors set forth in this Plan for purposes of economy and efficiency, this Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm this Plan with respect to one or more Debtors, it may still confirm this Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

### O.      Settlement of Claims and Controversies

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies held by the Debtors, the Committee, and the Holders of Claims and Interests that are settled by this Plan.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors and their Estates, and is fair, equitable and reasonable.  Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed

to them (among any other party who has expressly entered into a written settlement), and the treatment of claims and interests is being afforded pursuant to Confirmation by satisfying the requirements of Section 1129.

## P.     Closing the Chapter 11 Cases

The Wind-Down Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; *provided* that, as of the Effective Date, the Wind-Down Debtors may submit separate orders to the Bankruptcy Court closing certain individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly, *provided further* that matters concerning Claims may be heard and adjudicated in one of the Debtors' Chapter 11 Cases that remains open regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.  Nothing in this Plan shall authorize the closing of any case effective as of a date that precedes the date any such order is entered.  Any request for such relief shall be made on motion served on the U.S. Trustee and the Distribution Trust, and the Bankruptcy Court shall rule on such request after notice and a hearing.  Upon the filing of a motion to close the last Chapter 11 Case remaining open, the Wind-Down Debtors shall file a final report with respect to all of the Chapter 11 Cases.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein (which exclusion includes the Insurance Policies and Assumed Employee Plans), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or this Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

### B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Plan Administrator, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent and served upon counsel to the Plan Administrator within thirty (30) days of the Effective Date.

40

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with the provisions herein.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be disallowed automatically, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Plan Administrator, or any of their respective assets and properties.**

### C.   Reservation of Rights

Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an Executory Contract or Unexpired Lease or that the Debtors, the Plan Administrator, or their respective affiliates has any liability thereunder. Except as explicitly provided in this Plan, nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors or the Plan Administrator under any executory or non-executory contract or unexpired or expired lease. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Debtors or Wind-Down Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### D.   Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases. In particular, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity, or continued maintenance obligations. The Debtors also expressly reserve any and all rights with respect to the applicability (or non-applicability) of any non-bankruptcy laws to the contrary.

### E.   Insurance Policies

Each Assumed Insurance Policy shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. Each Non-Assumed Insurance Policy shall be deemed an Executory Contract and shall be rejected by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code.

For the avoidance of doubt, coverage for defense and indemnity under the Insurance Policies shall remain available to all individuals within the definition of "Insured" in the Insurance Policies. Furthermore, for the avoidance of doubt, no coverage for indemnity under any previous insurance policy shall be assumed pursuant to the Plan. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the Insurance Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the Insurance Policies.

F.    **Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Modifications, amendments, supplements, and restatements to a prepetition Executory Contract and/or Unexpired Lease that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease.

G.    **Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

H.    **Employee Compensation and Benefits**

All employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors other than the Assumed Employee Plans, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under this Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code. Each of the Assumed Employee Plans shall be treated as Executory Contracts under the Plan and, on the Effective Date, shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.    **Distributions on Account of Claims Allowed as of the Effective Date**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests. The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with

those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided further*, that to the extent a Proof of Claim has been filed, the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

### B.     Compliance with Tax Requirements

In connection with this Plan, any Person issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (1) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (2) pay the withholding tax using its own funds and retain such withheld property.  The distributing party shall have the right not to make a distribution under this Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences.  Any amounts withheld pursuant to this Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

Any party entitled to receive any property as an issuance or distribution under this Plan shall, upon request, deliver to the withholding agent or such other Person designated by the Plan Administrator the appropriate IRS Form or other tax forms or documentation requested by the Plan Administrator to reduce or eliminate any required federal, state, or local withholding.  If the party entitled to receive such property as an issuance or distribution fails to comply with any such request for a one hundred eighty (180) day period beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the Plan Administrator and any Claim in respect of such distribution under this Plan shall be forever barred from assertion against such Debtor, the Plan Administrator, or their respective property.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

### C.     Date of Distributions

Distributions made after the Effective Date to holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under this

Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.   Disbursing Agent

Except as may be otherwise provided in the Sale Order, all distributions under this Plan shall be made by the Disbursing Agent on and after the Effective Date and as provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Debtors shall use commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtors' books and records.  The Debtors shall cooperate in good faith with the Disbursing Agent to comply with the reporting and withholding requirements outlined in the Plan.

### E.   Rights and Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### F.   Surrender of Instruments

As a condition precedent to receiving any distribution under this Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Plan Administrator or its designee.  Any holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Plan Administrator and furnish a bond in form, substance, and amount reasonably satisfactory to the Plan Administrator within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G.   Delivery of Distributions and Undeliverable or Unclaimed Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a holder of an Allowed Claim (1) is returned as undeliverable for lack of a current address or otherwise; or (2) is not cashed or otherwise presented for collection by the holder of the Allowed Claim within ninety (90) calendar days after the mailing of such distribution, the Plan Administrator shall be authorized to cancel such distribution check and file with the Bankruptcy Court the name and last known address of the holder of undeliverable distribution or uncashed distribution, as applicable.  If, after the passage of thirty (30) calendar days after such Filing, the payment or distribution on the Allowed Claim still cannot be made, then (1) the holder

of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Plan Administrator; and (2) the Allowed Claim of such holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan.

### H.   <u>Manner of Payment</u>

Except as specifically provided herein, at the option of the Debtors or the Plan Administrator, as applicable, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### I.   <u>Foreign Currency Exchange Rate</u>

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, on the Petition Date.

### J.   <u>Setoffs and Recoupment</u>

The Debtors and the Plan Administrator, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), and applicable bankruptcy and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim, any claims of any nature whatsoever that the Debtors or their Estates may have against the Holder of such Allowed Claim; *provided*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Plan Administrator of any such claim the Debtors or their Estates may have against the holder of such Claim.

### K.   <u>Minimum Distribution</u>

No payment of Cash in an amount of less than one thousand U.S. dollars ($1,000.00) shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and the Wind-Down Budget. If the Cash available for the final distribution is less than the cost to distribute such funds, the Plan Administrator may donate such funds to the unaffiliated charity of its choice.

### L.   <u>Allocations</u>

Except as otherwise provided in this Plan or as otherwise required by law, distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

### M.  Distributions Free and Clear

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan, including distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

### N.  Claims Paid or Payable by Third Parties

#### 1.  Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtors, Wind-Down Debtors, Distribution Trustee, or Plan Administrator, as applicable, on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtors, Wind-Down Debtors, Distribution Trustee, or Plan Administrator, as applicable, then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Plan Administrator without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtors, Wind-Down Debtors, Distribution Trustee, or Plan Administrator, as applicable, on account of such Claim, such Holder shall, within fourteen (14) calendar days of receipt thereof, repay or return the distribution to the Debtors, Wind-Down Debtors, Distribution Trustee, or Plan Administrator, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

#### 2.  Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' or Wind-Down Debtors', as applicable, Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' or Wind-Down Debtors', as applicable, insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

#### 3.  Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Except as set forth in Article IX herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Wind-Down Debtors and the Plan Administrator, may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A.     Allowance of Claims

After the Effective Date, the Plan Administrator or Distribution Trustee, as applicable, shall have and retain any and all rights and defenses that the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

### B.     Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator or Distribution Trustee, as applicable, shall have the sole authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.     Estimation of Claims and Interests

Before or after the Effective Date, the Debtors, Distribution Trustee, or Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors, Distribution Trustee, or Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.     Adjustment to Claims or Interests Without Objection

Any Claim that has been paid, satisfied, or assumed by Purchasers in the Sale Transactions, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, Distribution Trustee, or Plan Administrator, as applicable, without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### E.     Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Bar Date (as such date may be extended upon presentment of an order to the Bankruptcy Court by the Debtors, Distribution Trustee, or Plan Administrator, as applicable).

### F.     Disallowance of Claims or Interests

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors, Distribution Trustee, or Plan Administrator, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (1) the Entity, on the one hand, and the Debtors, Distribution Trustee, or Plan Administrator, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or final order.

### G.     Disallowance of Late Claims

Except as provided herein or otherwise agreed to by the Debtors, Wind-Down Debtors, Distribution Trustee, or the Plan Administrator, as applicable, any holder of a Claim Filed via Proof of Claim after the Bar Date shall not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

### H.     Disputed Claims Process

All Claims held by Persons or Entities against whom or which the Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject this Plan. A Claim deemed Disputed pursuant to this Article VII.I shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors, Wind-Down Debtors, Distribution Trustee, or Plan Administrator, as applicable, from such holder have been paid.

### I.     Amendments to Claims

Except as provided herein, on or after the Effective Date, without the prior authorization of the Bankruptcy Court or the Plan Administrator, a Claim may not be Filed or amended and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

**J.**     **No Distributions Pending Allowance**

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

**K.**     **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

# ARTICLE VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.**     **Conditions Precedent to the Effective Date**

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent:

1.     The Bankruptcy Court shall have entered the DIP Orders, and the DIP Orders shall not have been vacated, stayed, or modified without the prior written consent of the DIP Agent, and there shall be no default or event of default existing under the DIP Credit Agreement.

2.     All of the DIP Claims, including the DIP Secured Party Expenses, shall have been paid in full in accordance with the terms and conditions set forth in the DIP Orders and Article II hereof.

3.     The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

4.     The Bankruptcy Court shall have entered the Confirmation Order, which shall not have been stayed, reversed, vacated, amended, supplemented, or otherwise modified.

5.     The Plan Administrator shall have been appointed and accepted his or her appointment.

6.     The Distribution Trust Agreement shall have been executed and the Distribution Trust Assets shall have irrevocably vested or be deemed to have vested in the Distribution Trust.

7. All requisite filings with governmental authorities and third parties shall have become effective, and all such governmental authorities and third parties shall have approved or consented to the transactions contemplated herein, to the extent required.

8. All documents contemplated hereby to be executed and delivered on or before the Effective Date shall have been executed and delivered.

9. All statutory fees and obligations then due and payable to the U.S. Trustee shall have been paid in full.

10. The Administrative and Priority Claims Reserve shall not exceed the Administrative and Priority Claims Reserve Cap.

11. The Professional Fee Reserve shall have been fully funded pursuant to the terms of this Plan.

## B. <u>Waiver of Conditions</u>

Unless otherwise specifically provided for in this Plan, the conditions set forth in Article VIII.A. may be waived, in whole or in part, in writing by the Debtors and, with respect to VIII.A.1–2, the DIP Agent, and, with respect to VIII.A.10, the Plan Sponsor, each in their respective sole and absolute discretion, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

## ARTICLE IX.
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

## A. <u>Debtor Releases</u>

**Effective as of the Effective Date, pursuant to Section 1123(b) of the Bankruptcy Code, to the fullest extent allowed by applicable law, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, their Estates, and the Wind-Down Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of any of the Debtors, their Estates, or the Wind-Down Debtors, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that the Debtors, their Estates, or the Wind-Down Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtor-Related Matters.  Notwithstanding anything to the contrary in**

the foregoing, the releases set forth above do not release (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Accelerated Payment Procedures, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Causes of Action included as a Retained Cause of Action, including the Avoidance Actions, or (3) any claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted bad faith, fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which include by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Releases; (3) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after reasonable investigation by the Debtors and after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, their Estates, or the Wind-Down Debtors, as applicable, asserting any claim or Cause of Action released pursuant to the Debtor Releases.

### B.    Third Party Releases

Effective as of the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, Causes of Action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or otherwise based on or relating to, or in any manner arising from, in whole or in part, the Debtor-Related Matters.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Accelerated Payment Procedures, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Causes of Action included as a Retained Cause of Action; or (3) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable

51

consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (4) a good faith settlement and compromise of the claims or Causes of Action released by the Third Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third Party Release.

###### C.   Exculpations

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Releases or the Third Party Release, and except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any claim or Cause of Action related to, any act or omission in connection with, relating to, or arising out of the negotiation, solicitation, confirmation, execution, or implementation of, as applicable, the Debtor-Related Matters, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted bad faith, fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date, and the exculpation set forth above does not exculpate (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Accelerated Payment Procedures, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (2) any Causes of Action included as a Retained Cause of Action.

###### D.   Injunction

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan, the Accelerated Payment Procedures, or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to the Plan provisions setting forth the releases granted by the Debtors or the Releasing Parties, or are subject to exculpation pursuant to the article of the Plan which provides for the exculpation of the Exculpated Parties shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, Wind-Down Debtors, or the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities

or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has, on or before the Effective Date, asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the Debtors, the Wind-Down Debtors, the Plan Administrator, and their respective affiliates, employees, advisors, officers and directors, or agents.

### E. <u>Release of Liens</u>

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of an Other Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Other Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such holder) shall take any and all steps requested by the Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Plan Administrator shall be entitled to make any such filings or recordings on such holder's behalf.

### F. <u>Gatekeeper Provision</u>

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Released Parties or the Exculpated Parties that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to Article IX.A, Article IX.B, and Article IX.C without first (1) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against a Released Party or Exculpated Party, and is not a Claim that the Debtors released under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party; and (2) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any such Released Party or Exculpated Party. Any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the

authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action.

## ARTICLE X.
## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in or related to the Chapter 11 Cases for, among other things, the following purposes:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.      Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.      Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.      Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters.

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

10. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan.

11. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13. Determine any other matters that may arise in connection with or related to the DIP Loan Documents, the Sale Documents, the Disclosure Statement, the Plan, and the Confirmation Order.

14. Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan.

15. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any holder for amounts not timely repaid.

16. Adjudicate any and all disputes arising from or relating to distributions under the Plan.

17. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

18. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order.

19. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

20. To recover all assets of the Debtors and property of the Debtors' Estates, wherever located.

21. To hear and determine any Causes of Action that may be brought by the Plan Administrator.

22. To hear and determine any other rights, claims, or Causes of Action held by or accruing to the Debtors, Distribution Trustee, or Plan Administrator, as applicable, pursuant to the Bankruptcy Code or any applicable state or federal statute or legal theory.

23.      Adjudicate, decide, or resolve any and all matters related to the Distribution Trust or the Distribution Trust Assets.

24.      Enter an order or final decree concluding or closing the Chapter 11 Cases.

25.      Enforce all orders previously entered by the Bankruptcy Court.

26.      Hear any other matter over which the Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.    Modification and Amendment

This Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of this Plan, and any Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

### B.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C.    Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date as to any or all of the Debtors.  If, with respect to a Debtor, this Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (3) nothing contained in this Plan shall (a) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person, (b) prejudice in any manner the rights of such Debtor or any other Person, or (c) constitute an admission of any sort by any Debtor or any other Person.

56

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.     Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, Distribution Trustee, or Plan Administrator, as applicable, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

### B.     Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, Distribution Trustee, or Plan Administrator, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### C.     Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### D.     Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### E.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Entity.

### F.     Determination of Tax Liabilities

As of the Effective Date, the Plan Administrator (to the extent not the responsibility of the Purchasers) will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' or Wind-Down Debtors' Estates; *provided*, that the Plan Administrator shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors, but shall

provide such Holders with any information reasonably required to prepare such forms. The Debtors, the Plan Administrator, and the Distribution Trust shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Debtors' or Wind-Down Debtors' Estates for any tax incurred during the administration of these Chapter 11 Cases.

### G. Notices

In order for all notices, requests, and demands to or upon the Debtors, Distribution Trustee, or Plan Administrator, as applicable, to be effective such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtors | Counsel to the Debtors |
| --- | --- |
| Conn's, Inc.<br>10077 Grogan's Mill Road, Suite 303<br>The Woodlands, TX 77380<br>Attention: Mark Renzi<br>Email: mrenzi@thinkbrg.com | Sidley Austin LLP<br>1000 Louisiana Street<br>Suite 5900<br>Houston, TX 77002<br>Attention: Duston McFaul<br>Email: DMcfaul@sidley.com |
| **Plan Administrator** | **Distribution Trustee** |
| To be included in the Plan Supplement. | To be included in the Plan Supplement. |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that Filed such renewed requests.

### H. Term of Injunctions or Stays

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Cases are closed pursuant to a final order of the Bankruptcy Court, or (b) the date that the Chapter 11 Cases are

dismissed pursuant to a final order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

**I.**       **Entire Agreement**

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**J.**       **Plan Supplement**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel or the Plan Administrator's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.  All documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

**K.**       **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

**L.**       **Nonseverability of Plan Provisions**

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, Distribution Trustee, or Plan Administrator, as applicable; and (3) nonseverable and mutually dependent.

Dated: June 7, 2025

Respectfully submitted,

  /s/ *Mark A. Renzi*
By: Mark A. Renzi
Chief Restructuring Officer
Conn's Inc. and its direct and indirect
subsidiaries